1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2     Including Professional Corporations
   ORI KATZ, Cal. Bar No. 209561
3  JEANNIE KIM, Cal. Bar No. 270713
   GIANNA SEGRETTI, Cal. Bar No. 323645
4  Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4109
5  Telephone:     415.434.9100
   Facsimile:     415.434.3947
6  Email:         okatz@sheppardmullin.com
                  jekim@sheppardmullin.com
7                 gsegretti@sheppardmullin.com

8  [Proposed] Attorneys for Debtors and
   Debtors in Possession,

9
   FINESTONE HAYES LLP
10 Stephen D. Finestone, Cal. Bar No. 125675
   Jennifer C. Hayes, Cal. Bar No. 197252
11 Ryan A. Witthans, Cal. Bar No. 301432
   456 Montgomery Street, 20th Floor
12 San Francisco, California 94104
   Telephone:     (415) 421-2624
13 Facsimile:     (415) 398-2820

14 Attorneys for Secured Creditor,
   Kevin Perkins

15                UNITED STATES BANKRUPTCY COURT

16        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

17

| 18 | In re | Case No.: 20-30748 |
|---|---|---|
| 19 | ☐  SIZZLER USA ACQUISITION, INC., a Delaware corporation | Joint Administration Requested with Case Nos. 20-30746, 20-51400, 20-51401, 20-51402, 20-51403, 20-51404, and 20-51405 |
| 20 | ☐  SIZZLER USA HOLDINGS, INC., a Delaware corporation | |
| 21 | ☐  SIZZLER USA FINANCE, INC., a Delaware corporation | Chapter 11 |
| 22 | ☐  WORLDWIDE RESTAURANT CONCEPTS, INC., a Delaware corporation | **STIPULATION REGARDING USE OF CASH COLLATERAL, PROVISION OF ADEQUATE PROTECTION AND DEBTOR IN POSSESSION FINANCING** |
| 23 | ☐  SIZZLER USA, INC., a Delaware corporation | |
| 24 | ☐  SIZZLER USA FRANCHISE, INC., a Delaware corporation | Judge:     Hon. M. Elaine Hammond |
| 25 | ☐  SIZZLER USA REAL PROPERTY, INC., a Delaware corporation | Date:      September 22, 2020 Time:      9:30 a.m. |
| 26 | ☐  SIZZLER USA RESTAURANTS, INC., a Delaware corporation | Place:     Tele/Videoconference |
| 27 | ☒  ALL DEBTORS | |
| 28 | Debtors and Debtors in Possession | |

-1-

SMRH:4817-7932-3379.8
Case: 20-30748    Doc# 5    Filed: 09/21/20    Entered: 09/21/20 16:30:26    Page 1 of 39
STIPULATION REGARDING USE OF CASH COLLATERAL,
ADEQUATE PROTECTION AND DIP FINANCING

This *Stipulation Regarding Use of Cash Collateral, Provision of Adequate Protection, and Debtor in Possession Financing* (the "Stipulation") is entered into and filed by and between Sizzler USA Acquisition, Inc., Sizzler USA Holdings, Inc., Sizzler USA Finance, Inc., Worldwide Restaurant Concepts, Inc., Sizzler USA, Inc., Sizzler USA Franchise, Inc., Sizzler USA Real Property, Inc., and Sizzler USA Restaurants, Inc., as debtors and debtors in possession (collectively, the "Debtors" or "Sizzler"), on the one hand, and Kevin Perkins, an individual, and his successors, transferees, and/or assigns, on the other hand (defined as both the "Prepetition Lender" and the "DIP Lender"). Together, the Debtors and the DIP Lender may be referenced herein, collectively, as the "Parties."

## INTRODUCTORY STATEMENT[1]

The Debtors operate fourteen company-owned restaurants (all in California and Oregon) and franchise over 90 other non-debtor franchisee- and licensee-owned and operated restaurants in California, Oregon, Washington, Arizona, Nevada, New Mexico, Utah, Idaho, Florida, and Puerto Rico, which other restaurants are only indirectly implicated in these Chapter 11 filings. Since 1958 (first as "Del's Sizzler Family Steak House"), the Debtors (and their respective predecessors in interest) have been in the business of operating, and then franchising, family restaurants. Originally, the Debtors' menu focused on grilled steaks, but later expanded into other items, including their famed "Salad Bar."

This Stipulation provides for the use of Cash Collateral (as defined below) and the Debtor in Possession Credit Facility (as defined below) for the thirteen-week period commencing on the Petition Date and ending the week beginning December 14, 2020. The Debtors anticipate that the agreed-upon thirteen-week period will provide the Debtors with time necessary and sufficient to propose and obtain confirmation of a joint plan of reorganization. Due to declining sales and rising expenses, the Debtors must reorganize their liabilities and obtain an infusion of new operating funds, either in the form of loans or, equity or both. The liabilities to restructure under

---

[1] Background regarding the Debtors' business and their financial challenges are discussed in greater detail the *Declaration of Christopher Perkins in Support of First Day Motions* filed in support of the Debtors' various first day motions.

Case: 20-30748   Doc# 5   Filed: 09/21/20   Entered: 09/21/20 16:30:26   Page 6 of 39

Chapter 11 include business loans, real property leases, certain obligations to former executive employees, and trade debt. The Debtors also intend to close some company-owned restaurants and reject and their related real property leases.

As described in the *Declaration of Christopher Perkins in Support of First Day Motions* (the "Perkins Declaration"), the events leading to the Debtors' Chapter 11 cases are now familiar to many retail and hospitality businesses. The global coronavirus pandemic and resulting orders issued by state, county, and city officials prohibiting restaurants from providing customers with dine-in services has decimated the Debtors' retail dining operations. Due to the pandemic, Sizzler has had to cease operating its company-owned restaurant locations at least twice. Thereafter, once authorized to resume retail dining services, the Debtors have tried to adapt and provide dining services that range from take-out to outdoor dining to third-party delivery services. However, as Sizzler's menu, and in particular its famed self-service Salad Bar (from which Sizzler restaurants derive upwards of 40% of their revenue), is neither targeted toward nor as adaptable to carry-out and delivery, both company- and franchisee-owned restaurant locations have been struggling.

Indeed, the COVID-19 crisis has blighted the restaurant sector of the economy, especially restaurants like Sizzler that rely on serving guests primarily indoors. For the past six months, the Debtors have implemented drastic cost-cutting measures while making every effort to maximize sales as permitted by state and local authorities. Nevertheless, these unprecedented times and resulting economic damage to the American restaurant and hospitality industry have not spared the Debtors.

In addition to the current challenges to the Debtors' traditional fare, however, many of the company-owned restaurant locations were struggling prepandemic. A variety of reasons, including recent increases to labor costs and local taxes have made it difficult for the Debtors to maintain profitability. Unable to operate at full capacity and subject to uncertainty for the foreseeable future, the Debtors have been unable to maintain cash flow sufficient to meet all of their financial obligations. Ultimately, the dramatic decline in revenues forced the Debtors to seek relief under Chapter 11 of the Bankruptcy Code.

SMRH:4817-7032-3379.8

## SUMMARY OF RELEVANT POST-PETITION FINANCING TERMS[2]

As set forth in greater detail below, the Debtors and the DIP Lender have agreed as follows:

- The Debtors' access to financing under the Debtor in Possession Credit Facility is governed by the terms of this Stipulation and is evidenced by a new debtor in possession promissory note between the Debtors and the DIP Lender. The maximum principal amount of the note shall be $2,000,000, with interest accruing at a rate of five percent per annum. The maturity date of the Debtor in Possession Credit Facility is September 21, 2025.

- The Stipulation further provides for the obligations under the Prepetition Lender's prepetition Loan and Security Agreement, and related Secured Promissory Note, both dated September 4, 2020 (together, the "Prepetition Loan Documents"), in the principal sum of $200,000, with the addition of interest and other permitted charges under the Prepetition Loan Documents, shall be repaid via a set off from the Debtor in Possession Credit Facility, upon entry of the Interim Order. Specifically, upon entry of the Interim Order, the DIP Loan will include all loans and any other indebtedness or obligations, contingent or absolute, which may now, or from time to time, be owing by the Debtors to the DIP Lender under the Prepetition Loan Documents, this Stipulation, or the DIP Orders, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed under this Stipulation and the DIP Orders.

- In consideration of the DIP Lender's consent to use of Cash Collateral and for providing post-petition financing, the DIP Lender will receive, a first priority[3] lien

---

[2] This section provides an overview of the relevant terms and conditions of the Stipulation and is not intended to substitute for the specific terms and conditions set forth below. In the event of a conflict between this summary and the terms and conditions of this Stipulation, the terms and conditions of the Stipulation shall control.

[3] This assumes that the Court authorizes repayment in full of the Pre-Petition Loan from the Debtor in Possession Credit Facility, in which case the DIP Lender's pre-petition security interest would be extinguished.

against, and security interests in, all assets and other property of the Debtors' bankruptcy estates, subject to the Carve-Out (as defined below), and other than the proceeds received from any avoidance actions under Chapter 5 of the Bankruptcy Code. For the avoidance of doubt, the DIP Lender also will receive a super-priority claim to the extent permitted by section 507(b) in the amount of any post-petition loss/diminution in the value of the DIP Lender's Collateral.

- The DIP Lender agrees to a Carve-Out for certain administrative expenses, including expenses incurred by the Debtors' estates' professionals, and U.S. Trustee's fees. The amount allocated to the Carve-Out is set forth below.

- Finally, the Stipulation defines certain Events of Default (defined below) and provides that the DIP Lender's consent to the Debtors' use of Cash Collateral and the DIP Lender's obligation to extend credit under the Debtor in Possession Credit Facility shall terminate immediately upon an Event of Default. If an Event of Default is not cured within five business days, the Stipulation allows the DIP Lender to seek *ex parte* relief from stay based upon the declaration of his counsel or representative, while providing Debtors the opportunity to contest the existence of a default or seek continued use of Cash Collateral.

## **RECITALS**

The Debtors and the DIP Lender agree and stipulate as follows, with reference to the following facts:

A. The present bankruptcy cases (collectively, the "Case") was commenced on September 21, 2020 (the "Petition Date"), when the Debtors filed their respective petitions under Chapter 11, Subchapter V of the Bankruptcy Code. On the Petition Date, the Debtors filed an *Ex Parte Application for Joint Administration, which motion the Court granted and entered an Order for Joint Administration* was entered on September [•], 2020. The Debtors continue in control of their assets as debtors in possession and continue to operate their business under sections 117 and 1108 of the Bankruptcy Code. The Subchapter V Trustee for the Case is [•].

Case: 20-30748   Doc# 5   Filed: 09/21/20   Entered: 09/21/20 16:30:26   Page 5 of 39

B.      Prior to the Petition Date, the DIP Lender made a loan (the "Prepetition Loan") to the Debtors as set forth in, and evidenced by, the Prepetition Loan Documents, an authentic copy of which is attached hereto as Exhibit A, by and between Debtors and the Prepetition Lender (who also is the DIP Lender).  The Prepetition Loan Documents and all liabilities and obligations thereunder are secured by all personal property assets of the Debtors under the terms of the Prepetition Loan Documents (the "Prepetition Loan Collateral").  The foregoing security interest has been perfected by the filing of a financial statement with the Delaware Department of State, Initial Filing No. 2020 6183000 (the "Financing Statement," an authentic copy of which is attached as Exhibit B).

C.      This Stipulation and all other documents executed in connection with the Debtor in Possession Credit Facility and this Stipulation are referred to, collectively, as the "Bankruptcy Loan Documents."

D.      All of the Debtors' personal property assets at the time of their bankruptcy filing and wherever now located constitute the cash collateral of the DIP Lender (the "Cash Collateral") under section 363 of the Bankruptcy Code.  This Stipulation is intended to authorize the Debtors to:  (1)  obtain post-petition financing from the DIP Lender in the amount of up to $2,000,000 under sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code (collectively, the "Debtor In Possession Credit Facility"); and (2) use the DIP Lender's Cash Collateral through the end of the Budget Period (described below), while providing adequate protection of the DIP Lender's interests therein under sections 361 and 363 of the Bankruptcy Code.

E.      The Debtors require post-petition financing and the continued use of Cash Collateral in order to maintain the value of their business.  Subject to Court approval of this Stipulation, the DIP Lender is willing to provide post-petition financing and to permit the Debtors to use Cash Collateral for the period beginning on the Petition Date and continuing through and including December 31, 2020 (the "Budget Period"), upon the terms and conditions set forth herein, including the provision of adequate protection under section 361 of the Bankruptcy Code.  Accordingly, the Debtors and the DIP Lender seek authority for the Debtors to:  (1) borrow up to

SMRH:4817-7032-3379.8

Case No. 20-30748

**STIPULATION REGARDING USE OF CASH COLLATERAL, ADEQUATE PROTECTION AND DIP FINANCING**

$2,000,000 under the Debtor in Possession Credit Facility; (2) use Cash Collateral in accordance with the terms set forth herein; and (3) provide for the adequate protection of the security interests of the DIP Lender in the collateral utilized by the Debtors.

F.      In order to provide the DIP Lender with adequate protection from any loss, decrease, diminution or decline in the value of their interests in the Collateral caused by, or resulting from, the use, sale or lease thereof by the Debtors in accordance with section 363(e) of the Bankruptcy Code, or from the consequences of the automatic stay imposed by section 362 of the Bankruptcy Code ("Post-Petition Loss"), the DIP Lender is entitled to adequate protection under sections 361 and 363(e) of the Bankruptcy Code in the form of liens against and security interests in all assets and other property of the Debtors, cash payments and other protections contained in this Stipulation, as well as a priority administrative claim under section 507(b), subject to the limitations set forth herein.

## **AGREEMENT**

Based on the foregoing, the Debtors and the DIP Lender agree as follows:

1.    Use of Cash Collateral. Subject to the terms and conditions of this Stipulation, the DIP Lender consents to the Debtors' use of Cash Collateral during the Budget Period, and the Debtors are hereby authorized to use Cash Collateral in accordance with the following procedures:

a.    Approved Budget. The Debtors may utilize Cash Collateral only for the purpose of paying the projected expenses of their post-petition operations, including the fees and expenses of the professionals employed by Debtors (subject to the Carve-Out), and the fees owing to the Office of the United States Trustee and the Clerk of the Bankruptcy Court, all as set forth in their budget, an authentic copy of which is attached as Exhibit C and incorporated herein in full by this reference (as the same may be amended from time to time in writing and approved by the DIP Lender and the Debtors, the "Approved Budget"). The Approved Budget specifies, on a weekly basis, by amount, type and kind, all expenses anticipated by the Debtors for the Budget Period. Upon expiration of the Budget Period, (i) the DIP Lender's agreement to make advances under the Debtor

in Possession Credit Facility and the DIP Lender's consent to the Debtors' use of Cash Collateral shall automatically terminate, (ii) the Debtors shall immediately cease their use of Cash Collateral, unless the Budget Period is extended by further stipulation of the DIP Lender and Debtors, or such continued use of Cash Collateral is authorized by the Court, and (iii) the DIP Loans actually used by the Debtors shall become immediately due and payable without notice or demand. The Debtors reserve all rights to seek approval of their continued use of Cash Collateral beyond the expiration of the Budget Period, and the DIP Lender reserves all rights to object to any such request.

b. <u>Compliance with Approved Budget</u>. If the Debtors' actual weekly costs and expenses and sales exceed the weekly costs and expenses and sales set forth in the Approved Budget by more than fifteen percent, on a rolling four-week basis, then the DIP Lender shall not be obligated to permit, and the Debtors shall not be entitled to, the continued use of Cash Collateral, without the prior written consent of the DIP Lender, which may be withheld in the DIP Lender's sole and absolute discretion, or further order of the Court.

c. <u>Waiver of Defaults</u>. The DIP Lender may, in the exercise of his sole discretion, temporarily waive defaults under this Stipulation without affecting such DIP Lender's rights hereunder.

2. <u>DIP Financing/Restricted Funds</u>. Subject to the terms of the Interim Order and any Final Order (defined below) approving this Stipulation (collectively, the "<u>DIP Orders</u>"), the Debtors may borrow up to $2,000,000 from the DIP Lender under the Post-Petition Promissory Note and Security Agreement (the "<u>DIP Loan</u>" or the "<u>Debtor in Possession Credit Facility</u>"), and the DIP Lender shall make post-petition advances under the DIP Loan, as evidenced by the DIP Loan, authentic copies of which are attached as <u>Exhibit D</u>, only in accordance with the following terms and conditions:

a. <u>Funding Requests</u>.
    i. The DIP Lender shall advance funds to the Debtors, first, in the amount of $1,000,000 as soon as practicable after the Petition Date (the "<u>Initial</u>

SMRH:4817-7032-3379.8

Tranche"), and second, upon the Debtors' request but in no event prior to January 1, 2021, and if and only if (1) the Debtors adhere to the Approved Budget and (2) the Debtors' company-operated restaurants have generated sales of at least 50% more than those same company-operated restaurants generated in 2019. In the event the company-operated restaurants do not meet the profitability requirements set forth in the Bankruptcy Loan Documents, the DIP Lender shall have the discretion, but not be required to fund the balance of the DIP Loan.

ii. To the extent that the Debtors do not have sufficient unrestricted funds to pay expenses as provided in the Approved Budget, the Debtors may request that the DIP Lender make advances under the Debtor in Possession Credit Facility necessary to pay such expenses (each such request, including the request and funding of the Initial Tranche, a "Funding Request"); provided that the Debtors must certify in writing in connection with such Funding Request that, as of the date of such Funding Request, no Event of Default has occurred, no Event of Default is continuing, and no Event of Default will result from the Funding Request.

b. <u>Funding Mechanics</u>. Upon receipt of a Funding Request, and in the absence of an Event of Default, the DIP Lender agrees to make advances under the Debtor in Possession Credit Facility. Notwithstanding anything herein to the contrary, (i) the aggregate amount of funding provided in response to a Funding Request shall not exceed the total amount of such Funding Request, and (ii) the aggregate amount of all outstanding DIP Loans shall not exceed $2,000,000.

c. <u>No Obligation to Extend Credit</u>. The DIP Lender shall not have any obligation to make any DIP Loan or advance under the Debtor in Possession Credit Facility, unless the conditions precedent under this Stipulation and the DIP Orders have been satisfied in full or waived by the DIP Lender.

SMRH:4817-7032-3379.8                STIPULATION REGARDING USE OF CASH COLLATERAL,
                                     ADEQUATE PROTECTION AND DIP FINANCING

d.      <u>Reporting Requirements</u>.  On the last business day of each week, the Debtors will provide the DIP Lender with (i) budget to actual cash flow reports and (ii) such other information as the DIP Lender may reasonably request.

3.      <u>DIP Collateral</u>.  Effective immediately upon entry of the Interim Order approving this Stipulation, under sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, for the purpose of securing the DIP Loan, the DIP Lender shall have a valid, binding, enforceable, non-avoidable and automatically and properly perfected first priority,[4] post-petition lien on and security interest in all assets currently part of the Debtors' bankruptcy estates or hereinafter acquired (the "<u>Lien</u>"), which assets include without limitation, all of the Debtors' "Collateral" as defined in the Bankruptcy Loan Documents and in the Prepetition Loan Documents, which includes all tangible and intangible personal property of the Debtors (collectively, the "<u>DIP Collateral</u>"); <u>provided</u> that the DIP Collateral shall not include any avoidance causes of action arising under chapter 5 of the Bankruptcy Code.

4.      <u>Validity of DIP Loans</u>.  This Stipulation and the DIP Orders shall constitute and evidence the validity and binding effect of the DIP Loan, which DIP Loan shall be enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Case or in any other proceeding superseding or related to any of the foregoing, though the DIP Lender may take other steps as he deems appropriate to perfect his interests.  The DIP Loan shall be due and payable, without notice or demand, upon the occurrence of an Event of Default.

5.      <u>Repayment of Prepetition Loan</u>.  Upon entry of the Interim Order, the DIP Loan will include all loans and any other indebtedness or obligations, contingent or absolute, which may now, or from time to time, be owing by the Debtors to the DIP Lender under the Prepetition Loan Documents, this Stipulation, or the DIP Orders,

_____

[4] *See supra*, note 3.  In addition, the Lender currently holds a blanket lien against all of the Debtors' assets pursuant to a security interest granted by the Debtors in connection with the Pre-Petition Loan Documents.  This blanket lien would be terminated upon repayment of the Pre-Petition Loan.

Case No. 20-30748

SMRH:4817-7923-3339.8

STIPULATION REGARDING USE OF CASH COLLATERAL, ADEQUATE PROTECTION AND DIP FINANCING

Case: 20-30748    Doc# 5    Filed: 09/21/20    Entered: 09/21/20 18:20:25    Page 10 of 39

including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed under this Stipulation and the DIP Orders.

6.      <u>Adequate Protection</u>.  Without constituting an admission by the DIP Lender of the adequacy of such protection, the Debtors have agreed to provide the DIP Lender with the following forms of adequate protection:

a.      <u>Adequate Protection</u>.  Subject to the Carve-Out, the DIP Lender shall have a post-petition lien against, and security interest in (collectively, the "<u>Adequate Protection Liens</u>") all DIP Collateral under sections 361(2), 362, 363(e)(2), and 363(e) of the Bankruptcy Code to secure any Post-Petition Loss to the same extent, validity, and priority as the DIP Lender's prepetition liens, except as expressly modified in this section 6.

b.      <u>Super-Priority Claim</u>.  Subject to the Carve-Out, to the fullest extent permitted under section 507(b) of the Bankruptcy Code, the DIP Lender shall also have a claim of the highest administrative priority, above all administrative expenses incurred in this Chapter 11 case or subsequent Chapter 7 case, including such administrative expenses of the kind specified in or authorized under sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) and 726 of the Bankruptcy Code in the amount of any Post-Petition Loss.

c.      <u>No Challenges or Modification</u>.  The Debtors shall not in any manner challenge or attempt to avoid or subordinate the DIP Lender's claims against the Debtors under this Stipulation or the Prepetition Loan Documents, nor attempt to avoid the validity, perfection or priority of the Adequate Protection Liens.

7.      <u>Perfection of Lien and Adequate Protection</u>.  The Lien and Adequate Protection Liens (collectively, the "<u>DIP Liens</u>") are hereby deemed effective, valid, and perfected as of the date of the entry of the Interim Order.  The Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing by any person or entity of any additional documents or other instruments or the taking of any additional action otherwise required to be filed or taken under applicable non-bankruptcy law for the perfection of security interests or other liens.  Notwithstanding the foregoing, and

notwithstanding perfection under this section 7, the Debtors shall execute such perfection documents and take such perfection actions as the DIP Lender may reasonably request from time to time.

8.     <u>Good Faith under Section 364(e) of the Bankruptcy Code; No Modification or Stay of Interim Order</u>.  Through the date hereof, the DIP Lender has acted in good faith in connection with negotiating this Stipulation and making the DIP Loan under the Debtor in Possession Credit Facility and consenting to the Debtors' use of Cash Collateral, and his reliance on this Stipulation and the DIP Orders is in good faith.  In the event any or all of the provisions of this Stipulation or the DIP Orders are later reversed, modified, amended, or vacated by a subsequent court order, the DIP Lender is entitled to protections provided in section 364(e) of the Bankruptcy Code.

9.     <u>No Third-Party Rights</u>.  Except as explicitly provided for herein, this Stipulation does not create any rights for the benefit of any third party, including any creditor, equity holder or any direct, indirect, or incidental beneficiary.

10.     <u>Conflicts</u>.  To the extent of any inconsistencies between the terms and provisions of this Stipulation, on the one hand, and the Bankruptcy Loan Documents and the Prepetition Loan Documents, on the other hand, the terms of this Stipulation shall govern.  In all other respects, the Prepetition Loan Documents and the Bankruptcy Loan Documents shall remain in full force and effect, and the DIP Lender shall continue to have all of the interests, rights and remedies provided to him in the Prepetition Loan Documents as modified hereby.

11.     <u>Events of Default</u>.  Any one or more of the following events shall constitute an "Event of Default" hereunder:

a.     the Debtors fail or neglect to perform, keep or observe any of the provisions of this Stipulation;

b.     the Debtors fail to repay the DIP Loan used by them upon the expiration of Budget Period;

c. any representation or warranty herein or in any written statement, report, financial statement or certificate made or delivered under this Stipulation to the DIP Lender by any Debtor is untrue or incorrect in any material respect as of the date when made or deemed made;

d. any material provision of any Bankruptcy Loan Document, including the DIP Loan, for any reason ceases to be valid, binding and enforceable in accordance with its terms (other than as consented to, or caused by, the DIP Lender);

e. the appointment of a trustee or an examiner with enlarged powers (powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code) in this Case (for the avoidance of doubt the appointment of a trustee under section 1183 of the Bankruptcy Code shall not constitute an Event of Default);

f. the conversion of this Case to a case under Chapter 7 of the Bankruptcy Code;

g. if there is any written pleading sustained by the Court under which a party in interest invalidates, subordinates, or avoids any material portion of the DIP Lender lien on or security interest in the DIP Collateral or any material reduction or subordination of the Obligations by reason of avoidance, invalidation, offset or, except as a result of payments, otherwise;

h. if any creditor or party in interest seeks to prime the DIP Lender's security interest under the DIP Loan in the Collateral;

i. except as permitted herein, the use of Cash Collateral under section 363(c) of the Bankruptcy Code without the DIP Lender's prior written consent or the consent of the Court;

j. any party in interest obtaining relief from the automatic stay applicable under section 362 of the Bankruptcy Code in this case to exercise his rights as lienholder or secured party against any portion of the DIP Collateral, unless otherwise consented to by the DIP Lender, in writing;

SMRH:4817-7922-3339.8

Case: 20-30748   Doc# 5   Filed: 09/21/20   Entered: 09/21/20 18:30:25   Page 13 of 39

k. an interim order approving this Stipulation ("Interim Order") is not entered by the Bankruptcy Court within ten business days following the Petition Date;

l. a final order approving this Stipulation ("Final Order") is not entered by the Bankruptcy Court within forty business days following the Petition Date;

m. the entry of an order by the Bankruptcy Court amending, supplementing, staying, vacating, rescinding or otherwise modifying the Prepetition Loan Documents, the Interim Order, the Final Order or a sale procedures order without the DIP Lender' written consent;

n. the sale without the consent of the DIP Lender of all or substantially a material portion of any of the Debtors' assets outside the ordinary course of business either through a sale under section 363 of the Bankruptcy Code, or otherwise;

o. if there is any written objection sustained by the Court to the motion to approve this Stipulation;

p. the filing of any Chapter 11 plan inconsistent with this Stipulation;

q. dismissal of the Case prior to confirmation of a Chapter 11 plan; or

r. any Event of Default specified in the DIP Loan, which is not otherwise covered by the above Events of Default.

12. <u>Rights and Remedies Upon an Event of Default</u>. Upon the occurrence of an Event of Default, (a) all of the DIP Lender's commitments to extend credit under the Debtor in Possession Credit Facility or otherwise make the DIP Loan; and (b) the DIP Lender's consent to the Debtors' use of Cash Collateral shall immediately terminate without notice or presentment. Upon the occurrence of an Event of Default which is not otherwise cured by the Debtors within five business days following the Debtors' receipt of written notice of default from the DIP Lender, the DIP Lender may seek via *ex parte* submission of a declaration by his attorney or authorized representative as to the Event of Default relief from the automatic stay imposed by section 362 of the Bankruptcy Code,

SMRH:4817-7922-3339.8
Case: 20-30748    Doc# 5    Filed: 09/21/20    Entered: 09/21/20 18:30:29    Page 14 of 39

provided, however, that the Debtors shall not be precluded from asserting that they are not in default, seek continued use of Cash Collateral or oppose such relief.

13. <u>Other Modifications to the Automatic Stay</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified, without the need for any further action of the DIP Lender or the Court, to the extent necessary to permit the DIP Lender to give effect to any rights granted in this Stipulation, including, without limitation, to the extent necessary to permit the DIP Lender to pay all fees and expenses of the DIP Lender, including, without limitation, all attorney's fees (without the need to file a fee application or otherwise obtain the approval of this Court).

14. <u>Modification of Stipulation</u>.  The DIP Lender may seek further protection of his security interests if he deems it necessary in these or any superseding proceedings.  Further, the DIP Lender and the Debtors may agree to modifications to the Approved Budget without further Court order.

15. <u>Carve-Out for Professionals</u>.  The DIP Lender consents, notwithstanding his liens, security interests and administrative expense priority, to the payments by the Debtors of the Carve-Out in the amounts set forth in the Approved Budget.  For purposes of this Stipulation, the term "Carve-Out" shall encompass the following expenses: (a) unpaid post-petition professional fees and expenses payable to each professional advisor retained by the Debtors that are incurred or accrued prior to the occurrence of an Event of Default, but subject to the aggregate amount(s) ultimately allowed by the Court under sections 328, 330, 331, and 503 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually incurred prior to the Event of Default) (collectively, the "<u>Debtor Professional Fees</u>"); and (b) fees payable to (1) the Clerk of the Bankruptcy Court or (2) the United States Trustee under 28 U.S.C. § 1930(a)(6) that have or will come due prior to the occurrence of an Event of Default (collectively, the "<u>U.S Trustee and Court Fees</u>"). For the avoidance of doubt, the DIP Lender shall have the right to object to the allowance by the Court of any such professional fees and expenses, but the DIP Lender may not object to the payment of any such professional fees and expenses which are allowed by the Court.  For

Case: 20-30748   Doc# 5   Filed: 09/21/20   Entered: 09/21/20 18:30:25   Page 15 of 39

avoidance of doubt, the amounts set forth above in connection with the Carve-Out are not intended to cap or limit the amounts that may be claimed and paid once the DIP Lender is repaid in full.

16. <u>Reservation of Rights</u>. Nothing herein constitutes consent by the DIP Lender to these proceedings or to the continuation thereof or to the use of Cash Collateral except as provided herein, or constitutes a waiver by the DIP Lender of any right he may have, including, without limitation, to object to the reasonableness of any fees or costs of professionals described herein, to oppose or object to any plan of reorganization, to challenge any impairment of his claims, his security interests, or the DIP Collateral, and incident thereto to introduce such evidence of his claims, his security interests and the value of the DIP Collateral as may be appropriate under the circumstances.

17. <u>Further Assurances</u>. The Debtors shall execute and deliver to the DIP Lender any and all further agreements, instruments and documents which may be reasonably necessary to effectuate the purposes of this Stipulation, including, without limitation, any UCC-1 Financing Statements. The DIP Lender is entitled to reimbursement of all costs of the DIP Lender's searches, title policies or endorsements, recording expenses or other related the DIP Lender's expenses.

18. <u>Binding Stipulation</u>. The parties agree that this Stipulation shall be submitted to the above-named Bankruptcy Court for its approval. Upon such approval, this Stipulation shall be binding upon and shall inure to the benefit of the parties and their respective successors or assigns, including, without limitation, any Chapter 11 or Chapter 7 trustee in these or any superseding bankruptcy proceedings. All of the DIP Lender's rights and remedies hereunder are not exclusive and are in addition to all rights and remedies provided by law, or by any other agreement between Debtors and the DIP Lender, or otherwise. If any or all of the provisions of this Stipulation are hereafter modified, vacated or stayed by order of this or any other court, such stay, modification or vacation shall not affect the validity of any debt to the DIP Lender incurred under this Stipulation and which

Case No. 20-30748
SMRH:4817-7223-3339.8
STIPULATION REGARDING USE OF CASH COLLATERAL,
ADEQUATE PROTECTION AND DIP FINANCING

Case: 20-30748    Doc# 5    Filed: 09/21/20    Entered: 09/21/20 18:30:29    Page 16 of 39

is incurred prior to the effective date of such stay, modification or vacation, or the validity and enforceability of any lien or priority authorized hereby, and notwithstanding such stay, modification or vacation, any use of funds occurring under this Stipulation prior to the effective date of such modification, stay or vacation, to or for the benefit of Debtors, shall be governed in all respects by the original provisions of this Stipulation, and the DIP Lender shall be entitled to all the rights, privileges and benefits, including the liens and security interests and priorities granted herein, with respect to all such advances.

19. <u>Integration</u>. The Bankruptcy Loan Documents and this Stipulation constitute the complete agreement of the parties with respect to the subject matter thereof and may not be modified, altered or amended except by an agreement in writing executed by Debtors and the DIP Lender. No amendment or waiver shall be effective unless the same shall be in writing.

20. <u>Miscellaneous</u>. This Stipulation may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same agreement. The Debtors and the DIP Lender anticipate executing this Stipulation in counterparts in separate locations, delivering a copy of the executed counterpart signature pages hereof to each other by facsimile, and subsequently delivering to each other originals of the executed signature pages. The Debtors and the DIP Lender hereby agree that this Stipulation shall be deemed effective upon the DIP Lender's receipt, by facsimile or electronic copy, of the signature pages hereof executed by the Debtors' counsel, and no subsequent delay or failure by either Party hereto to deliver to the other party hereto such Party's original signature page shall diminish the effectiveness of this Stipulation.

21. <u>Notice</u>. All notices required or permitted under this Stipulation or the DIP Orders shall be sent to the respective party and such party's attorney at the address listed below or such other address provided by the party in writing, by electronic mail, certified mail, return receipt requested, recognized overnight courier, or hand delivery. In the event of notice by certified mail, notice shall be effective upon receipt or refusal of delivery as shown by the return receipt. In the

**STIPULATION REGARDING USE OF CASH COLLATERAL, ADEQUATE PROTECTION AND DIP FINANCING**

event of notice by electronic mail, notice shall be effective upon successful transmission. In the event of notice by hand delivery, notice shall be effective upon receipt. In the event of notice by overnight courier, notice shall be effective upon delivery, without the necessity of acknowledgement of receipt.

If notice is given to the Debtors, it shall be sent to:

> 23352 Madero Road, Suite B
> Mission Viejo, CA 92691
> Attention: Christopher Perkins, President & Chief Services Officer

With a copy to (which shall not constitute notice):

> Ori Katz, Esq.
> c/o Sheppard, Mullin, Richter & Hampton, LLP
> Four Embarcadero Center, 17th Fl.
> San Francisco, CA 94111
> E-mail: okatz@sheppardmullin.com

If notice is given to the Perkins DIP Lender, it shall be sent to:

> Kevin Perkins
> 205 Sugars Rd.
> ANSTEAD QLD 4070
> Australia

With a copy to (which shall not constitute notice):

> Jennifer C. Hayes, Esq.
> c/o Finestone Hayes LLP
> 456 Montgomery Street, 20th Floor
> San Francisco, CA 94104
> E-mail: jhayes@fhlawllp.com

22. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Stipulation and the related DIP Orders according to their terms.

[Signature Pages to Follow]

-18-

Based on the foregoing, the Parties to this Stipulation cause it to be executed as of the date set forth below:

Dated: September 21, 2020

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By       */s/ Ori Katz*
_____
                        ORI KATZ

Proposed Attorneys for Debtors and
Debtors in Possession

Dated: September 21, 2020

FINESTONE HAYES LLP

By       */s/ Jennifer Hayes*
_____
                   JENNIFER C. HAYES

Attorneys for Kevin Perkins

-19-

**STIPULATION REGARDING USE OF CASH COLLATERAL,
ADEQUATE PROTECTION AND DIP FINANCING**

Case: 20-30748    Doc# 5    Filed: 09/21/20    Entered: 09/21/20 18:30:29    Page 20 of
39

**Sizzler USA, Inc. et al. 13-Week Cash Flow Budget**

| | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Starting Day | 9/21/2020 | 9/28/2020 | 10/5/2020 | 10/12/2020 | 10/19/2020 | 10/26/2020 | 11/2/2020 | 11/9/2020 | 11/16/2020 | 11/23/2020 | 11/30/2020 | 12/7/2020 | 12/14/2020 | |
| **Cash Beginning (Inc. DIP Loan)[1]** | **1,000,000** | **802,315** | **696,244** | **547,984** | **649,532** | **643,325** | **750,641** | **584,039** | **690,953** | **713,027** | **820,717** | **538,782** | **655,148** | **1,000,000** |
| Restaurant Sales | 259,151 | 316,418 | 316,418 | 316,418 | 316,418 | 328,385 | 328,385 | 328,385 | 328,385 | 328,385 | 346,103 | 346,103 | 346,103 | 4,205,054 |
| *YoY Restaurant Sales* | *47%* | *47%* | *46%* | *46%* | *46%* | *46%* | *46%* | *46%* | *46%* | *46%* | *48%* | *48%* | *48%* | |
| *Open Stores* | *13* | *13* | *13* | *16* | *19* | *19* | *19* | *19* | *19* | *19* | *19* | *19* | *19* | |
| Franchise Rev | 102,647 | 16,156 | 18,195 | 15,683 | 97,023 | 15,271 | 17,198 | 14,824 | 99,658 | 15,686 | 17,665 | 15,227 | 104,699 | 549,931 |
| *Franchise YoY Sales* | *35%* | *35%* | *35%* | *35%* | *35%* | *35%* | *40%* | *40%* | *40%* | *40%* | *40%* | *40%* | *40%* | |
| *Franchise Units* | *81* | *81* | *81* | *81* | *81* | *81* | *81* | *81* | *81* | *81* | *81* | *81* | *81* | |
| **Total Revenue** | **361,798** | **332,574** | **334,612** | **332,101** | **413,440** | **343,656** | **345,583** | **343,209** | **428,043** | **344,071** | **363,768** | **361,329** | **450,802** | **4,754,985** |
| Cost of Sales | 88,111 | 107,582 | 107,582 | 107,582 | 107,582 | 111,651 | 111,651 | 111,651 | 111,651 | 111,651 | 117,675 | 117,675 | 117,675 | 1,429,718 |
| Labor | 249,543 | | 97,866 | | 180,961 | | 107,744 | | 161,191 | | 107,744 | | 161,191 | 1,066,239 |
| G&A | 29,884 | 29,884 | 29,884 | 29,884 | 29,884 | 29,884 | 29,884 | 29,884 | 29,884 | 29,884 | 29,884 | 29,884 | 29,884 | 388,491 |
| Occupancy Costs | | 29,130 | 134,202 | | | | 167,908 | | | | 292,751 | | | 623,991 |
| Other Operating Expenses[2] | 62,014 | 250,433 | 91,519 | 71,519 | 71,519 | 73,278 | 73,278 | 73,278 | 73,278 | 73,278 | 75,882 | 75,882 | 75,882 | 1,141,039 |
| **Total Operating Expenses** | **429,553** | **417,029** | **461,053** | **208,985** | **389,945** | **214,813** | **490,465** | **214,813** | **376,003** | **214,813** | **623,936** | **223,441** | **384,632** | **4,649,479** |
| **Doubtful Debt[3]** | **10,265** | **1,616** | **1,819** | **1,568** | **9,702** | **1,527** | **1,720** | **1,482** | **9,966** | **1,569** | **1,766** | **1,523** | **10,470** | **54,993** |
| **EBITDA** | **(78,020)** | **(86,071)** | **(128,260)** | **121,548** | **13,792** | **127,316** | **(146,602)** | **126,914** | **42,074** | **127,690** | **(261,935)** | **136,365** | **55,700** | **50,513** |
| First Day Motion Payment[4] | 99,665 | - | - | - | - | - | - | - | - | - | - | - | - | 99,665 |
| Trade Creditor Cure Payments | - | - | - | - | - | - | - | - | - | - | - | - | 186,695 | 186,695 |
| Landlord Cure Payments | - | - | - | - | - | - | - | - | - | - | - | - | 318,660 | 318,660 |
| **Total Payments** | **99,665** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **505,355** | **605,021** |
| **Change in Cash** | **(177,685)** | **(86,071)** | **(128,260)** | **121,548** | **13,792** | **127,316** | **(146,602)** | **126,914** | **42,074** | **127,690** | **(261,935)** | **136,365** | **(449,655)** | **(554,507)** |
| **Cash End** | **822,315** | **716,244** | **567,984** | **669,532** | **663,325** | **770,641** | **604,039** | **710,953** | **733,027** | **840,717** | **558,782** | **675,148** | **205,493** | **445,493** |
| **Debtors Counsel** | **20,000** | **20,000** | **20,000** | **20,000** | **20,000** | **20,000** | **20,000** | **20,000** | **20,000** | **20,000** | **20,000** | **20,000** | **20,000** | **260,000** |
| **Cash End less Debtors Counsel** | **802,315** | **696,244** | **547,984** | **649,532** | **643,325** | **750,641** | **584,039** | **690,953** | **713,027** | **820,717** | **538,782** | **655,148** | **185,493** | **185,493** |

**Notes**

1. The DIP loan will be provide in two tranches of $1.0MM
2. Includes Store operating expenses such as uniforms and utilities
3. Provision for doubtful debt payment from franchisees
4. Payment of employee benefits

1

**Exhibit B**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
RYAN A. WITTHANS  (415) 481-5481

B. E-MAIL CONTACT AT FILER (optional)
RWITTHANS@FHLAWLLP.COM

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

FINESTONE HAYES LLP
456 MONTGOMERY ST, FLOOR 20
SAN FRANCISCO, CA 94104
US

Delaware Department of State
U.C.C. Filing Section
Filed: 02:25 PM 09/08/2020
U.C.C. Initial Filing No: 2020 6183000

Service Request No:   20207155746

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| SIZZLER USA ACQUISITION, INC. | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 23352 MADERO ROAD, SUITE B | MISSION VIEJO | CA / 92691 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| SIZZLER USA HOLDINGS, INC. | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 23352 MADERO ROAD, SUITE B | MISSION VIEJO | CA / 92691 | US |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| PERKINS | KEVIN | | |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 205 SUGARS RD | ANSTEAD | / 4070 | AU |

4. COLLATERAL: This financing statement covers the following collateral:

"Collateral" means all right, title and interest of each Debtor in and to the following property, whether now existing or hereafter acquired, wherever located, and as the same may now and hereafter from time to time be constituted;   (a) All of Debtors' inventory both now owned and hereafter acquired, wherever located, and as the same may now and hereafter from time to time be constituted;   (b) All of Debtors' (i) accounts and (ii) notes, notes receivable, drafts, acceptances, and other instruments and documents, both now owned and hereafter acquired, together with all returned, rejected, or repossessed goods, the sale or lease of which shall have given or shall give rise to an account, instrument or document;   (c) All of Debtors' general intangibles (including, without limitation, all payment intangibles, facility use fees, things in action, contractual rights, goodwill, literary rights, and rights to performance);   (d) All of Debtors' intellectual property, including without limitation all copyrights, patents, trademarks and all applications related thereto, trade secrets, intellectual property licenses and all other industrial, intangible and intellectual property of any type, including mask works, industrial designs and all know-how;   (e) All of Debtors' chattel paper (including both electronic chattel paper and tangible chattel paper), letters of credit, letter-of-credit rights, both now owned and hereafter existing, acquired, or created, together with (i) all moneys due and to become due thereunder, (ii) all returned, rejected, or repossessed goods, the sale or lease

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators

# UCC FINANCING STATEMENT **ADDITIONAL PARTY**

FOLLOW INSTRUCTIONS

**18. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 18a. ORGANIZATION'S NAME |  |  |
|---|---|---|
| **SIZZLER USA ACQUISITION, INC.** |  |  |

OR

| 18b. INDIVIDUAL'S SURNAME |  |  |
|---|---|---|
| FIRST PERSONAL NAME |  |  |
| ADDITIONAL NAME(S)/INITIAL(S) |  | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (19a or 19b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **SIZZLER USA FINANCE, INC.** | | | | |

OR

| 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **23352 MADERO ROAD, SUITE B** | **MISSION VIEJO** | **CA** | **92691** | **US** |

**20. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (20a or 20b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **WORDWIDE RESTAURANT CONCEPTS, INC.** | | | | |

OR

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **23352 MADERO ROAD, SUITE B** | **MISSION VIEJO** | **CA** | **92691** | **US** |

**21. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (21a or 21b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **SIZZLER USA, INC.** | | | | |

OR

| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **23352 MADERO ROAD, SUITE B** | **MISSION VIEJO** | **CA** | **92691** | **US** |

**22.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**23.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**24. MISCELLANEOUS:**

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (Form UCC1AP) (Rev. 08/22/11)    International Association of Commercial Administrators

# UCC FINANCING STATEMENT **ADDITIONAL PARTY**

FOLLOW INSTRUCTIONS

**18. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 18a. ORGANIZATION'S NAME |
|---|
| **SIZZLER USA ACQUISITION, INC.** |

OR

| 18b. INDIVIDUAL'S SURNAME | |
|---|---|
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. ADDITIONAL DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **SIZZLER USA FRANCHISE, INC.** | | | |

OR

| 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **23352 MADERO ROAD, SUITE B** | **MISSION VIEJO** | **CA** | **92691** | **US** |

**20. ADDITIONAL DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **SIZZLER USA REAL PROPERTY, INC.** | | | |

OR

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **23352 MADERO ROAD, SUITE B** | **MISSION VIEJO** | **CA** | **92691** | **US** |

**21. ADDITIONAL DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **SIZZLER USA RESTAURANTS, INC.** | | | |

OR

| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **23352 MADERO ROAD, SUITE B** | **MISSION VIEJO** | **CA** | **92691** | **US** |

**22.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only <u>one</u> name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**23.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only <u>one</u> name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**24. MISCELLANEOUS:**

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (Form UCC1AP) (Rev. 08/22/11)   International Association of Commercial Administrators

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| | 9a. ORGANIZATION'S NAME |
| OR | 9b. INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S)  SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | | | | | |
|---|---|---|---|---|---|
| | 10a. ORGANIZATION'S NAME | | | | |
| OR | 10b. INDIVIDUAL'S SURNAME | | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

**11.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only one name (11a or 11b)

| | | | | |
|---|---|---|---|---|
| | 11a. ORGANIZATION'S NAME | | | |
| OR | 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 11c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE  COUNTRY |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral)**

of which shall have given or shall give rise to chattel paper, and (iii) all property and goods both now owned and hereafter acquired by any Debtor which are sold, leased, secured, are the subject of, or otherwise covered by, any Debtor's chattel paper, and all rights incident to such property and goods;    (f) All of Debtors' personal property, goods, equipment and fixtures, both now owned and hereafter acquired, together with (i) all additions, parts, fittings, accessories, special tools, attachments, and accessions now and hereafter affixed thereto or used in connection therewith, and (ii) all replacements thereof and substitutions therefor;    (g) All of Debtors' commodity accounts, commodity contracts, financial assets, securities (whether certificated or uncertificated), securities entitlements, securities accounts and other

| | | |
|---|---|---|
| **13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | **14.** This FINANCING STATEMENT:  ☐ covers timber to be cut  ☐ covers as-extracted collateral  ☐ is filed as a fixture filing | |
| **15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | **16.** Description of real estate: | |

**17. MISCELLANEOUS:**

Case: 20-30748   Doc# 5   Filed: 09/21/20   Entered: 09/21/20 16:38:38   Page 26 of
39

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| | 9a. ORGANIZATION'S NAME |
| OR | 9b. INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME**: Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | | | | | |
|---|---|---|---|---|---|
| 10a. ORGANIZATION'S NAME | | | | | |
| OR  10b. INDIVIDUAL'S SURNAME | | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

**11.** ☐ **ADDITIONAL SECURED PARTY'S NAME**  <u>or</u>  ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only <u>one</u> name (11a or 11b)

| | | | | |
|---|---|---|---|---|
| 11a. ORGANIZATION'S NAME | | | | |
| OR  11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
investment property, both now owned and hereafter acquired;     (h) All of Debtors' deposit accounts money and any other contract right or rights to payments of money, both now owned and hereafter acquired;     (i) All of Debtors' letter-of-credit rights, both now owned and hereafter acquired; (j) All cash and non-cash proceeds (including insurance proceeds) and products of any of the foregoing, all books and records relating to the forgoing, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to any Debtor from time to time with respect to any of the foregoing;     provided that "Collateral" shall not include any lease, license, contract, or

| | |
|---|---|
| **13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | **14.** This FINANCING STATEMENT: <br> ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing |
| **15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | **16.** Description of real estate: |

**17. MISCELLANEOUS:**

Case: 20-30748   Doc# 5   Filed: 09/21/20   Entered: 09/21/20 16:30:29   Page 27 of
39

International Association of Commercial Administrators

# UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| | 9a. ORGANIZATION'S NAME |
| **OR** | 9b. INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | | | | | |
|---|---|---|---|---|---|
| | 10a. ORGANIZATION'S NAME | | | | |
| **OR** | 10b. INDIVIDUAL'S SURNAME | | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

**11.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only one name (11a or 11b)

| | | | | | |
|---|---|---|---|---|---|
| | 11a. ORGANIZATION'S NAME | | | | |
| **OR** | 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 11c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
agreement to which any Debtor is a party, in each case, if and only if, and solely to the extent
that, the grant of a security interest therein shall constitute or result in a breach, termination or
default or invalidity thereunder or thereof (other than to the extent that any such term would be
rendered ineffective pursuant to Sections 9-406, 9-407, 9-408 or 9-409 of the UCC of any relevant
jurisdiction or any other applicable law or principles of equity and other than Proceeds and
receivables thereof); provided that immediately upon the time at which the foregoing consequences
shall no longer exist, the Collateral shall include, and each Debtor shall be deemed to have granted
a security interest in, all of Debtor's right, title and interest in such lease, license, contract or
agreement.

| | |
|---|---|
| **13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | **14.** This FINANCING STATEMENT: ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing |
| **15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | **16.** Description of real estate: |

**17. MISCELLANEOUS:**

Case: 20-30748   Doc# 5   Filed: 09/21/20   Entered: 09/21/20 16:20:29   Page 28 of
39

## Exhibit A – Description of Collateral

"Collateral" means all right, title and interest of each Debtor in and to the following property, whether now existing or hereafter acquired:

(a)     All of Debtors' inventory both now owned and hereafter acquired, wherever located, and as the same may now and hereafter from time to time be constituted;

(b)     All of Debtors' (i) accounts and (ii) notes, notes receivable, drafts, acceptances, and other instruments and documents, both now owned and hereafter acquired, together with all returned, rejected, or repossessed goods, the sale or lease of which shall have given or shall give rise to an account, instrument or document;

(c)     All of Debtors' general intangibles (including, without limitation, all payment intangibles, facility use fees, things in action, contractual rights, goodwill, literary rights, and rights to performance);

(d)     All of Debtors' intellectual property, including without limitation all copyrights, patents, trademarks and all applications related thereto, trade secrets, intellectual property licenses and all other industrial, intangible and intellectual property of any type, including mask works, industrial designs and all know-how;

(e)     All of Debtors' chattel paper (including both electronic chattel paper and tangible chattel paper), letters of credit, letter-of-credit rights, both now owned and hereafter existing, acquired, or created, together with (i) all moneys due and to become due thereunder, (ii) all returned, rejected, or repossessed goods, the sale or lease of which shall have given or shall give rise to chattel paper, and (iii) all property and goods both now owned and hereafter acquired by any Debtor which are sold, leased, secured, are the subject of, or otherwise covered by, any Debtor's chattel paper, and all rights incident to such property and goods;

(f)     All of Debtors' personal property, goods, equipment and fixtures, both now owned and hereafter acquired, together with (i) all additions, parts, fittings, accessories, special tools, attachments, and accessions now and hereafter affixed thereto or used in connection therewith, and (ii) all replacements thereof and substitutions therefor;

(g)     All of Debtors' commodity accounts, commodity contracts, financial assets, securities (whether certificated or uncertificated), securities entitlements, securities accounts and other investment property, both now owned and hereafter acquired;

(h)     All of Debtors' deposit accounts money and any other contract right or rights to payments of money, both now owned and hereafter acquired;

(i)     All of Debtors' letter-of-credit rights, both now owned and hereafter acquired;

(j)     All cash and non-cash proceeds (including insurance proceeds) and products of any of the foregoing, all books and records relating to the forgoing, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and rents,

profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to any Debtor from time to time with respect to any of the foregoing;

provided that "Collateral" shall not include any lease, license, contract, or agreement to which any Debtor is a party, in each case, if and only if, and solely to the extent that, the grant of a security interest therein shall constitute or result in a breach, termination or default or invalidity thereunder or thereof (other than to the extent that any such term would be rendered ineffective pursuant to Sections 9-406, 9-407, 9-408 or 9-409 of the UCC of any relevant jurisdiction or any other applicable law or principles of equity and other than Proceeds and receivables thereof); provided that immediately upon the time at which the foregoing consequences shall no longer exist, the Collateral shall include, and each Debtor shall be deemed to have granted a security interest in, all of Debtor's right, title and interest in such lease, license, contract or agreement.

**Exhibit C**
**(Postpetition Promissory Note and Security Agreement)**

SMRH:4817-7922-3339.8

Case No. 20-30748

**STIPULATION REGARDING USE OF CASH COLLATERAL,
ADEQUATE PROTECTION AND DIP FINANCING**

# POSTPETITION PROMISSORY NOTE AND SECURITY AGREEMENT

$2,000,000                                                    September 21, 2020

THIS POSTPETITION PROMISSORY NOTE AND SECURITY AGREEMENT (the "Note and Security Agreement") is made as of September 21, 2020, (the "Effective Date") by and between (1) Sizzler USA Acquisition, Inc., a Delaware corporation; (2) Sizzler USA Holdings, Inc., a Delaware corporation; (3) Sizzler USA Finance, Inc., a Delaware corporation; (4) Worldwide Restaurant Concepts, Inc., a Delaware corporation; (5) Sizzler USA, Inc., a Delaware corporation; (6) Sizzler USA Franchise, Inc., a Delaware corporation; (7) Sizzler USA Real Property, Inc., a Delaware corporation; and (8) Sizzler USA Restaurants, Inc., a Delaware corporation (collectively, "Debtors") and Kevin Perkins ("Lender") at 205 Sugars Rd., Anstead, QLD 4070, Australia, and his successors, transferees, and/or assigns. Debtors and Lender are referred to, collectively, as the "Parties."

## RECITALS

A.      Debtors are debtors in possession with bankruptcy cases [Case Nos.] pending in the Bankruptcy Court of the Northern District of California.

B.      The Parties entered into a prepetition *Loan and Security Agreement* and a related *Secured Promissory Note* (together, the "Prepetition Loan") as of September 4, 2020.

C.      As of the date of this *Note and Security Agreement*, Debtors are indebted to Lender in the amount of $200,000 plus interest and fees pursuant to the Prepetition Loan, which is due on the later of December 31, 2020, or fourteen calendar days following entry of an order by the Bankruptcy Court authorizing repayment of the Prepetition Loan.

D.      Debtors require a postpetition extension of credit in an amount up to $2,000,000 (the "DIP Loan") to repay the Prepetition Loan and to cover ongoing liabilities associated with operating their business as debtors in possession.

E.      Debtors and Lender entered into a *Stipulation Regarding Use of Cash Collateral, Provision of Adequate Protection and Debtor In Possession Financing* ("DIP Stipulation") as of September 21, 2020.

F.      Pursuant to the DIP Stipulation and this Agreement, Lender has agreed to lend Debtors $2,000,000, and will receive a Security Interest (defined below) to secure repayment. The Parties contemplate Lender advancing funds to Debtors, first, in the amount of $1,000,000 as soon as practicable after the Petition Date, and second, upon Debtors' request but in no event prior to January 1, 2021, if and only if (1) Debtors adhere to the Approved Budget and (2) Debtors' company-operated restaurants have generated sales of at least 50% more than those same company-operated restaurants generated in 2019. The DIP Stipulation further provides that, in the event the company-operated restaurants do not meet the profitability requirements set forth in the DIP Stipulation and related documents, the DIP Lender shall have the discretion, but not be required, to fund the balance of the DIP Loan.

Case: 20-30748    Doc# 5    Filed: 09/21/20    Entered: 09/21/20 16:30:28    Page 32 of 39

# NOTE AND SECURITY AGREEMENT

The above Recitals are incorporated by reference.

FOR VALUE RECEIVED, Debtors, jointly and severally, unconditionally promise to pay to the order of Lender, and his successors, transferees, and/or assigns, the principal amount of $2,000,000 (or the aggregate unpaid principal amount outstanding of all advances made by Lender to Debtors in accordance with the terms of this Note and Security Agreement, whichever is less) together with interest on so much thereof as is outstanding hereunder from time to time at the Interest Rate (defined below) from the date of this Note and Security Agreement until maturity.

Schedule of Disbursements. The amount of $1,000,000 shall be disbursed to Debtors as soon as practicable after the Petition Date. Disbursements thereafter shall be made upon Debtors' request, but in no event prior to January 1, 2021, if and only if (1) Debtors adhere to the Approved Budget and (2) Debtors' company-operated restaurants have generated sales of at least 50% more than those same company-operated restaurants generated in 2019. In the event the company-operated restaurants do not meet the profitability requirements set forth in the DIP Stipulation and related documents, the DIP Lender shall have the discretion, but not be required to fund the balance of the DIP Loan.

Interest Rate. From and after the date hereof (until maturity or default as hereinafter provided), interest shall accrue at a rate per annum of 5% (the "Interest Rate"), to be computed on each advance from the date of its disbursement as set forth herein.

Maturity Date. The outstanding principal amount of this Note and Security Agreement, the accrued interest thereon, and any other amounts evidenced hereby shall be due and payable in one lump sum five years from the Effective Date of this Note and Security Agreement (*i.e.*, September 21, 2025, the "Maturity Date"), extendable by mutual written agreement of the parties. Any and all payment(s) hereunder received from Debtors by Lender shall be applied first to the payment of late fees and other costs and charges due in connection with this Note and Security Agreement, as Lender determines in its sole discretion, then to the payment of accrued but unpaid interest, and then to reduction of the outstanding principal balance (in inverse order of maturity whether or not then due). All amounts due under this Note and Security Agreement shall be payable without setoff, counterclaim, or any other deduction whatsoever.

Security Interest. As an inducement for Lender to extend the loan as evidenced by this Note and Security Agreement and to secure the complete and timely payment, performance and discharge in full, as the case may be, of all of the obligations hereunder, Debtors hereby unconditionally and irrevocably pledge, grant and hypothecate to Lender a continuing and perfected first-priority security interest in and to, a lien upon and a right of set-off against (the "Security Interest") any and all of their respective right, title, and interest of whatever kind and nature in and to all assets of Debtors and their bankruptcy estates, excluding Causes of Action under Chapter 5 of the Bankruptcy Code (the "Collateral"). This Agreement creates in favor of Lender, without the necessity of executing, filing, or recording any financing statements, security agreements, vehicle lien applications, mortgages or filings with a governmental unit or taking any action whatsoever, a valid first-priority priming and fully perfected security interest in the Collateral securing the payment and performance of the obligations. Debtors hereby authorize Lender to file one or more

Case: 20-30748    Doc# 5    Filed: 09/21/20    Entered: 09/21/20 16:30:28    Page 33 of 39

financing statements under the UCC, with respect to the Security Interest with the proper filing and recording agencies in any jurisdiction deemed proper by them. No such filing or other action shall be necessary, however, to perfect Lender's Security Interest granted herein.

Representations and Warranties. The Representations and Warranties set forth in the Prepetition Loan, and each of them, are incorporated herein by reference. Each Debtor represents and warrants, as to itself only, that each such Representation and Warranty remains true and accurate as of the Effective Date of this Note and Security Agreement.

Covenants (Affirmative and Negative). The Affirmative Covenants and Negative Covenants set forth in the Prepetition Loan, and each of them, are incorporated herein by reference, and each Debtor makes the same Affirmative Covenants and Negative Covenants, as to itself only, until payment in full of all of the liabilities under this Notice and Security Agreement are satisfied.

Bankruptcy Court Approval. On September 21, 2020, Debtors filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Northern (the "Bankruptcy Court"), Case Nos. _____ (the "Bankruptcy Cases"). Debtors are operating as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108. The term Debtors as used in this Note and Security Agreement shall include the definition "debtor in possession" as that term is defined by, and used in, the Bankruptcy Code. This Note and Security Agreement are subject to final approval of the Bankruptcy Court. Funds under this Note and Security Agreement are to be remitted to Debtors upon Bankruptcy Court approval of the initial order (the "Interim Order") authorizing Debtors to borrow and Lender to advance funds pursuant to this Note and Security Agreement.

Event of Default. The occurrence of any of the following shall constitute an "Event of Default" under this Note and Security Agreement: (i) Debtors' failure to pay amounts due under this Note and Security Agreement as and when due; (ii) dismissal of the Bankruptcy Case; (iii) appointment of a Chapter 11 Trustee; (iv) conversion of the Bankruptcy Case to a case arising under Chapter 7 of the Bankruptcy Code, and the appointment of a Chapter 7 Trustee; (v) if any creditor or party in interest seeks to prime Lender's Security Interest in the Collateral; and/or (vi) any Debtor's breach of any Representation, Warranty, Affirmative Covenant, and/or Negative Covenant.

Remedies. Upon the occurrence of any Event of Default, Lender, at his option, may without further notice, motion or application, order or hearing before the Bankruptcy Court, declare all sums of principal and interest outstanding hereunder to be immediately due and payable without presentment, demand, notice of nonperformance, notice of protest, protest or notice of dishonor, all of which are expressly waived by Debtors and the obligation, if any, of the holder to extend any further credit hereunder shall immediately cease and terminate and Lender shall be entitled to enforce all rights and remedies of a secured creditor against the Collateral. Debtors shall pay to Lender immediately upon demand the full amount of all payments, advances, charges, costs and expenses, including reasonable attorneys' fees expended or incurred by Lender in connection with the enforcement of its rights and/or the collection of any amounts which become due to the holder under this Note and Security Agreement. These charges include the prosecution or defense of any action in any way related to this Note and Security Agreement including, without limitation, any action for relief in the Bankruptcy Case relating to Debtors or any other

Case: 20-30748    Doc# 5    Filed: 09/21/20    Entered: 09/21/20 16:30:28    Page 34 of 39

person or entity. Debtors agree to pay such charges, which include attorneys' fees related to Lender's enforcement efforts, in an amount not to exceed the maximum amount allowed by law.

Default Rate. Upon the occurrence of an Event of Default and during the continuance thereof, the outstanding principal of this Note and Security Agreement shall bear interest at the higher of a rate which is 4% per annum in excess of the Interest Rate or the highest interest rate permitted by law ("Default Rate"). Interest calculated at the Default Rate shall be added to the indebtedness evidenced by this Note and Security Agreement and shall be secured by the Collateral. This clause, however, shall not be construed as an agreement or privilege to extend the Maturity Date, or as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

Waiver. The undersigned hereby expressly waives diligence, presentment, demand, protest, notice of protest, notice of intent to accelerate, notice of acceleration, and notice of any other kind.

Enforceability. Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by, unenforceable or invalid under any jurisdiction, such provision shall as to such jurisdiction, be severable and be ineffective to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

Governing Law. This Note and Security Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of California.

Prepayment. Debtors may prepay the outstanding principal amount of this Note and Security Agreement in whole or in part at any time without the prior written consent of Lender and without penalty, premium or unearned interest.

Fees for Preparation of Documentation: Lender and Debtors will be separately responsible for each party's own cost of preparation of documentation for this agreement.

Use of Proceeds. Debtors represent and agree that the proceeds of the loan evidenced by this Note and Security Agreement shall be used solely for business purposes as set forth in the DIP Stipulation.

Maximum Rate of Interest. If, at any time, the rate or amount of interest or any other charge payable under this Note and Security Agreement should exceed the maximum rate or amount permitted by applicable law, then for such time as such rate or amount would be excessive, its application shall be suspended and there shall be charged instead the maximum rate or amount permitted under such law, and any excess interest or other charge paid by Debtors or collected by Lender shall be refunded to Debtors or credited against the principal amount of this Note and Security Agreement, at the election of Lender or as required by applicable law.

Provision Regarding Interest. As used is this Note and Security Agreement and for the purposes of the current California Constitution, California Codes, and any successor provision thereto regarding "interest", the term "interest" does not include any fees or other charges imposed on

Case: 20-30748    Doc# 5    Filed: 09/21/20    Entered: 09/21/20 16:30:28    Page 35 of 39

Debtor in connection with this loan other than the interest described in the provisions with the heading <u>Interest Rate</u>, <u>Default Rate, Maximum Rate of Interest</u>.

<u>Notices</u>. Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Note and Security Agreement shall be given as follows, which the parties contemplate will be further amended in the event that Lender transfers or assigns his interest in this Note and Security Agreement, in whole or in part:

> To Lender:     Kevin Perkins
>                205 Sugars Rd.
>                ANSTEAD QLD 4070
>                Australia
>
>                With a copy to (which shall not constitute notice):
>
>                Jennifer C. Hayes
>                c/o Finestone Hayes LLP
>                456 Montgomery Street, 20th Floor
>                San Francisco, CA 94104
>                E-mail: jhayes@fhlawllp.com
>
> To Debtors:    23352 Madero Road, Suite B
>                Mission Viejo, CA 92691
>                Attention: Chris Perkins, President & Chief Services Officer
>
>                With a copy to (which shall not constitute notice):
>
>                Ori Katz
>                c/o Sheppard Mullin
>                Four Embarcadero Center, 17th Fl.
>                San Francisco, CA 94111
>                E-mail: okatz@sheppardmullin.com

<u>Consent to Jurisdiction</u>. The Parties consent to the jurisdiction of the Bankruptcy Court to enforce this Note and Security Agreement. Notwithstanding the foregoing, Lender shall have the right to bring any action or proceeding against Debtors' or Debtors' property in the courts of any other jurisdiction Lender deems necessary or appropriate in order to enforce the obligations of Debtors under this Note and Security Agreement.

<u>WAIVER OF TRIAL BY JURY</u>. DEBTORS' HEREBY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THIS NOTE AND SECURITY AGREEMENT, THE DEED OR ANY ACTS OR OMISSIONS OF LENDER IN CONNECTION THEREWITH.

<u>Assignability</u>. Lender may at any time assign Lender's rights in this Note and Security Agreement and transfer Lender's rights in any or all of the Collateral and Lender thereafter shall be relieved

from all liability with respect to such Collateral. Lender will give Debtors written notice of any such assignment. Debtors may not sell or assign this Note and Security Agreement, or any other agreement with Lender or any portion thereof, either voluntarily or by operation of law, without the prior written consent of Lender. This Note and Security Agreement shall be binding upon Lender and Debtors and their respective legal representatives and successors.

Headings. The headings of the paragraphs set forth in this Note and Security Agreement are for convenience of reference only, and are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

Time of Essence. Time is of the essence of the payment and performance of this Note and Security Agreement.

[Signature Pages to Follow]

IN WITNESS WHEREOF Debtors have duly caused this Note and Security Agreement to be executed and delivered as of the date first written.

**DEBTOR:**

Sizzler USA Acquisition, Inc.,
a Delaware corporation

By: _____
     Name: Timothy Perkins
     Title: Chief Strategy Office

**DEBTOR:**

Sizzler USA Holdings, Inc.,
a Delaware corporation

By: _____
     Name: Timothy Perkins
     Title: Chief Strategy Office

**DEBTOR:**

Sizzler USA Finance, Inc.,
a Delaware corporation

By: _____
     Name: Timothy Perkins
     Title: Chief Strategy Office

**DEBTOR:**

Worldwide Restaurant Concepts, Inc.,
a Delaware corporation

By: _____
     Name: Timothy Perkins
     Title: Chief Strategy Office

**DEBTOR:**

Sizzler USA, Inc.,
a Delaware corporation

By: _____
        Name: Timothy Perkins
        Title: Chief Strategy Office

**DEBTOR:**

Sizzler USA Franchise, Inc.,
a Delaware corporation

By: _____
        Name: Timothy Perkins
        Title: Chief Strategy Office

**DEBTOR:**

Sizzler USA Real Property, Inc.,
a Delaware corporation

By: _____
        Name: Timothy Perkins
        Title: Chief Strategy Office

**DEBTOR:**

Sizzler USA Restaurants, Inc.,
a Delaware corporation

By: _____
        Name: Timothy Perkins
        Title: Chief Strategy Office

**LENDER:**

By: _____
        Name: Kevin Perkins