SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
JEANNIE KIM, Cal. Bar No. 270713
GIANNA SEGRETTI, Cal. Bar No. 323645
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:      415.434.9100
Facsimile:      415.434.3947
E mail          okatz@sheppardmullin.com
                jekim@sheppardmullin.com
                gsegretti@sheppardmullin.com

[Proposed] Attorneys for
Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 20-30748 |
| ☐ SIZZLER USA ACQUISITION, INC., a Delaware corporation | Joint Administration Requested with Case Nos. 20-30746, 20-51400, 20-51401, 20-51402, 20-51403 |
| ☐ SIZZLER USA HOLDINGS, INC., a Delaware corporation | |
| ☐ SIZZLER USA FINANCE, INC., a Delaware corporation. | Chapter 11 Proceeding |
| ☐ WORLDWIDE RESTAURANT CONCEPTS, INC., a Delaware corporation | **DEBTORS' MOTION FOR ORDER APPROVING STIPULATION REGARDING USE OF CASH COLLATERAL, PROVISION OF ADEQUATE PROTECTION AND DEBTOR IN POSSESSION FINANCING AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| ☐ SIZZLER USA, INC., a Delaware corporation | |
| ☐ SIZZLER USA FRANCHISE, INC., a Delaware corporation | |
| ☐ SIZZLER USA REAL PROPERTY, INC., a Delaware corporation | |
| ☐ SIZZLER USA RESTAURANTS, INC., a Delaware corporation | *[Filed Concurrently with Declaration of Christopher Perkins in Support of First Day Motions]* |
| ☒ ALL DEBTORS, | |
| Debtors and Debtors in Possession. | Judge:    Hon. Elaine Hammond<br>Date:     September 22, 2020<br>Time:     9:30 a.m.<br>Place:    Tele/Videoconference |

# TABLE OF CONTENTS

Page

I. BACKGROUND ........................................................................................................12

II. PREPETITION LOAN OBLIGATIONS ..................................................................13

III. PROPOSED DIP FINANCING ................................................................................13

    A. The DIP Loan and Use of Cash Collateral Are Critical to Facilitate the Debtors' Restructuring. ...........................................................................13

    B. The Debtors' Selection of the DIP Lender as Lender. .............................14

IV. REQUIRED DISCLOSURES FOR CASH COLLATERAL  AND FINANCING MOTIONS .............................................................................................15

V. MEMORANDUM OF POINTS AND AUTHORITIES .......................................18

    A. The DIP Loan Should Be Approved Under Bankruptcy Code Section 364(c), 364(d)(1) ...................................................................................18

    B. The Court Should Grant the Debtors Access to Cash Collateral Under Bankruptcy Code Section 363(c)(1) on a Final Basis. ..............................22

    C. The Automatic Stay Should be Modified on a Limited Basis. .................24

VI. NOTICE .....................................................................................................................24

VII. CONCLUSION .........................................................................................................25

SMRH:4837-8755-0412.3

DIP FINANCING MOTION

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*In re Antico Mfg. Co.*
  31 B.R. 103 (Bankr. E.D.N.Y. 1983) ......................................................................21

*In re Defender Drug Stores*
  126 B.R. 76 (Bankr. D. Ariz. 1991), *aff'd*, 145 B.R. 312 (B.A.P. 9th Cir. 1992).....................21

*In re Green*
  436 B.R. 91 (Bankr. S.D. Ill. 2010) .......................................................................23

*In re McKillips*
  81 B.R. 454 (Bankr. N.D. Ill. 1987).......................................................................23

*Unsecured Creditors' Comm. V. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*
  834 F.2d 599 (6th Cir. 1987)...............................................................................21

*Weinstein, Eisen, Weiss LLP v. Gill (In re Cooper Common, LLC)*
  424 F.3d 963 (9th Cir. 2005)...............................................................................22

<u>Statutes</u>

11 U.S.C. § 363(a) ..........................................................................................23

11 U.S.C. § 363(c)(2)(B) ...................................................................................18

11 U.S.C. § 364 .........................................................................................16, 21

11 U.S.C. §364(c) ...................................................................................16, 19, 21

11 U.S.C. § 506(c) ..................................................................................16, 18, 21

Bankruptcy Code Chapter 11 ........................................................12, 13, 16, 18, 19

Bankruptcy Code § 105...................................................................................25

Bankruptcy Code § 361............................................................................23, 24, 25

Bankruptcy Code § 362...................................................................................25

Bankruptcy Code § 363............................................................................22, 25

Bankruptcy Code § 363(c)(1)......................................................................22, 23

Bankruptcy Code § 363(c)(2)............................................................................23

Bankruptcy Code § 364 ..............................................................................................25

Bankruptcy Code § 364(c) ..........................................................................................22

Bankruptcy Code § 364(d) ..........................................................................................22

Bankruptcy Code § 364(d)(1) ......................................................................................19

Bankruptcy Code § 364(e) ..........................................................................................22

Bankruptcy Code § 503(b) ..........................................................................................14

Bankruptcy Code § 503(b)(1) ................................................................................14, 21

Bankruptcy Code § 507 ..............................................................................................25

Bankruptcy Code § 507(a) ..........................................................................................14

Bankruptcy Code § 507(b) ..........................................................................................14

Bankruptcy Code § 1107(a) ........................................................................................12

Bankruptcy Code § 1108 ............................................................................................12

Other Authorities

1st Sess. (1977) ........................................................................................................24

Bankruptcy Rule 2002 ................................................................................................25

Bankruptcy Rule 4001 ................................................................................................25

Bankruptcy Rule 4001-2 .............................................................................................25

Federal Rules of Bankruptcy Procedure Rule 1007(d) ...................................................25

H.R. Rep. No. 95-595 .................................................................................................24

Sizzler USA Acquisition, Inc. ("SUSAA"), Sizzler USA Holdings, Inc. ("SUSAH"), Sizzler USA Finance, Inc. ("SUSAFI"), Worldwide Restaurant Concepts ("WRC"), Sizzler USA Inc. ("SUSA"), Sizzler USA Franchise, Inc. ("SUSAFR"), Sizzler USA Real Property, Inc. ("SUSARP"), and Sizzler USA Restaurants, Inc. ("SUSAR," and together with SUSAA, SUSAH, SUSAFI, SUSAFR, SUSARP, collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned bankruptcy cases (collectively, the "Case") move the Court (the "Motion") for an order substantially in the form attached to this Motion as **Exhibit A** (the "DIP Order") and, following a final hearing, a final order, among other things:

(a)     approving the *Stipulation Regarding Use of Cash Collateral, Provision of Adequate Protection, and Debtor in Possession Financing* (the "Stipulation") filed with the Court as Docket No. ___;

(b)     authorizing the Debtor to enter into a postpetition loan to obtain credit and other financial accommodations (the "DIP Loan") from Kevin Perkins, an individual, and his successors, transferees, and/or assigns (collectively, the "DIP Lender") substantially in accordance with the terms of that certain Postpetition Promissory Note and Security Agreement dated September 21, 2020 (the "DIP Loan Agreement") attached to this Motion as **Exhibit B** and as supplemented or modified by the DIP Order, secured by security interests and liens on substantially all of the assets of the Debtor, pursuant to sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1) and 364(e) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), senior[1] to all other liens on the Collateral except the Carve-Out;

(c)     authorizing the Debtors to grant to the DIP Lender super-priority administrative claim status to the extent permitted by section 507(b) of the Bankruptcy Code in the amount of any postpetition loss/diminution in the value of the DIP Lender's Collateral (defined herein);

---

[1] This assumes that the Court authorizes repayment in full of the Prepetition Loan from the Debtor in Possession Credit Facility, in which case the Lender's prepetition security interest would be extinguished.

(c)  authorizing the Debtors to use the collateral, including cash collateral, that secures the Debtors' obligations to the DIP Lender, and granting adequate protection as set forth in this Motion; and

(d)  modifying the automatic stay to the extent set forth in this Motion.

In support of the Motion, the Debtor respectfully represents the following:

## I.

## VENUE

The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The Debtors base their request for relief herein on sections 105, 361, 362, 363, 364, 503(b), and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014.

## II.

## INTRODUCTORY STATEMENT

As more fully set forth herein, the Debtors have an urgent and immediate need for access to cash collateral from the DIP Lender (who also is an insider, the Debtors' Prepetition Lender, and the holder of liens against substantially all of the Debtors' personal property assets) in the principal amount of up to $2,000,000 following entry of the DIP Order.

The Debtors filed their Case in order to reorganize their financial affairs by rejecting certain non-essential leases and contracts, reducing and restructuring liabilities, all through the infusion of new capital under the terms of the DIP Loan. The Debtors operate fourteen company-owned restaurants and acts as the franchisor or licensor of more than 90 other Sizzler-branded non-debtor entities in the United States and Puerto Rico. But for the current coronavirus pandemic and resulting limited ability to operate under local, county, and state public health mandates, the Debtors can operate profitably, subject to a successful reorganization and infusion of operating funds. However, the Debtors' ability to operate while they reorganize requires financing in the form of the DIP Loan and immediate access to and use of the Cash Collateral thereunder, the absence of which would immediately and irreparably harm the Debtors, their estate

1   and their creditors.  Without such funds, the Debtors would be forced to liquidate their assets, to

2   the detriment of all creditors.

3          Given the Debtors current financial condition and outstanding loans (the majority of which

4   are unsecured loans), the Debtors were unable to obtain unsecured credit allowable under section

5   503(b)(1) of the Bankruptcy Code.  The Debtors also were unable to obtain secured credit from

6   other sources: (a) having priority over that of administrative expenses of the kind specified in

7   sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by liens against property

8   of the Debtors and their estates that are not otherwise subject to a lien; or (c) secured solely by a

9   junior lien on property of the Debtors and their estates that already are subject to a lien.  As a

10  result, financing on a postpetition basis was not otherwise available without granting the DIP

11  Lender the protections, rights and remedies afforded by the DIP Loan Agreement and the DIP

12  Order.

13         As described in more detail below, all of the Debtors' property is subject to a prepetition

14  lien in favor of the DIP Lender on account of a prepetition loan in the amount of $200,000 (the

15  "Prepetition Loan").  As set forth in the Stipulation, upon the entry of a final order granting this

16  Motion, the Debtors seek Court authority to repay the Prepetition Loan.  Under the terms of the

17  Stipulation and subject to Court approval, until such time that the Court authorizes repayment of

18  the Prepetition Loan, the DIP Lender requires replacement and priming liens as a condition

19  precedent to his consent to the Debtors' use of Cash Collateral.

20         The Debtors have determined that the DIP Loan offered by the DIP Lender not only

21  provides the most favorable terms to the Debtors and their estates, but is the only credit – whether

22  on a secured basis or not – available to the Debtors.  In the sound exercise of their business

23  judgment and fiduciary duty, the Debtors have determined to proceed under the DIP Loan offered

24  by the DIP Lender, subject to the approval of the Court.

25         The relevant provisions of the DIP Loan Agreement and the DIP Order are as follows:[2]

26

27  _____

28  [2] Any summary of the terms of the DIP Loan Agreement, the Stipulation, or the DIP Order
    contained in this Motion is qualified in its entirety by reference to the provisions of the actual DIP

SMRH:4837-8755-0412.3                                                    DIP FINANCING MOTION

| Term | Description | Location in Documents |
|---|---|---|
| Borrowing Limits/New Money | $2,000,000 | DIP Loan Agreement, Recital F, p. 2; Stipulation, Summary of Relevant Postpetition Financing Terms, Recital D; and Agreement ¶ 2; DIP Order ¶¶ 1, 3 |
| Interest Rate | 5% per annum | DIP Loan Agreement, p. 2; Summary of Relevant Postpetition Financing Terms; DIP Order ¶¶ 1, 3 |
| Maturity Date | September 21, 2025 | DIP Loan Agreement, p. 2; Stipulation, Summary of Relevant Postpetition Financing Terms; DIP Order ¶¶ 1, 3 |
| Use of Proceeds of Postpetition Loan and Cash Collateral | Company's operating needs for the thirteen-week period commencing on the Petition Date – See Budget | Stipulation, Ex. C;  DIP Order, DIP Order ¶¶ A, C, D, 1, 3 |
| Security, Priority, and Adequate Protection | Secured by all Debtors' assets.  First priority lien as adequate protection to Prepetition Lender super-priority administrative claim to the maximum extent allowable by law[3] | Stipulation, Summary of Relevant Postpetition Financing Terms, Recital D, E, Agreement ¶¶ 3, 6, 7, 14; DIP Order ¶¶ 1, 5, 7 |

Loan Agreement, Stipulation, and DIP Order, as applicable.  To the extent the Motion and the DIP Order, the Stipulation, or the DIP Loan Agreement are inconsistent, the documents shall control, as applicable, in the following order:  first, the DIP Loan Agreement, second, the Stipulation, and third the DIP Order, or as applicable, shall control.

[3] *See supra*, note 1.  In addition, the Lender currently holds a blanket lien against all of the Debtors' assets pursuant to a security interest granted by the Debtors in connection with the Prepetition Loan Documents. This blanket lien would be terminated upon repayment of the Prepetition Loan.

| Term | Description | Location in Documents |
|---|---|---|
| Modifications to Automatic Stay | DIP Lender's security interest in and liens against all of Debtors' personal property assets are deemed automatically perfected pursuant to entry of the DIP Order; DIP Lender may obtain relief from stay via *ex parte* submission of a declaration attesting to occurrence of an Event of Default, provided, however, that the Debtors shall not be precluded from asserting that they are not in default, seek continued use of Cash Collateral or oppose such relief | Stipulation, Agreement ¶¶ 3, 4, 7, 12, 13; DIP Order ¶¶ 1, 4 |
| Carve-Out | Incurred fees and expenses of Debtor's estate professionals up to the amounts permitted in the Budget | Stipulation, Summary of Relevant Postpetition Financing Terms, Agreement ¶¶ 1(a), 6, 15; DIP Order ¶¶ 1, 3 |
| Events of Default | (a) the Debtors fail or neglect to perform, keep or observe any of the provisions of this Stipulation; (b) the Debtors fail to repay the DIP Loan used by them upon the expiration of Budget Period; (c) any representation or warranty herein or in any written statement, report, financial statement or certificate made or delivered under this Stipulation to the DIP Lender by any Debtor is untrue or incorrect in any material respect as of the date when made or deemed made; (d) any material provision of any Bankruptcy Loan Document for any reason ceases to be valid, binding and enforceable in accordance with its terms (other than as consented to, or caused by, the DIP Lender); (e) the appointment of a trustee or an examiner with enlarged powers (powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code) in this Case (for the avoidance of doubt the appointment of a trustee under section 1183 of the Bankruptcy Code shall not constitute an Event of Default); (f) the conversion of this Case to a case under Chapter 7 of the Bankruptcy Code; (g) if there is any written pleading sustained by the Court under which a party in interest invalidates, subordinates or avoids any material portion of the DIP Lender lien on or security interest in the DIP Collateral or any material reduction or subordination of the Obligations by reason of avoidance, invalidation, offset or, except as a result of payments, otherwise; (h) if any creditor or party in interest seeks to prime the DIP Lender's security interest under the DIP Loan in the Collateral; (i) except as permitted herein, the use of Cash Collateral under section 363(c) of the Bankruptcy Code without the DIP Lender's prior written consent or the consent of the Court; (j) any party in interest obtaining relief from the automatic stay applicable under section 362 of the Bankruptcy Code in this case to exercise his rights as lienholder or secured party against any portion of the DIP Collateral, unless otherwise | DIP Loan, p. 3; Stipulation, Agreement ¶ 11; DIP Order ¶ 1 |

| Term | Description | Location in Documents |
|---|---|---|
| | consented to by the DIP Lender, in writing; (k) an interim order approving this Stipulation ("<u>Interim Order</u>") is not entered by the Bankruptcy Court within ten business days following the Petition Date; (l) a final order approving this Stipulation ("<u>Final Order</u>") is not entered by the Bankruptcy Court within forty business days following the Petition Date; (m) the entry of an order by the Bankruptcy Court amending, supplementing, staying, vacating, rescinding or otherwise modifying the Prepetition Loan Documents, the Interim Order, the Final Order or a sale procedures order without the DIP Lender' written consent; (n) the sale without the consent of the DIP Lender of all or substantially a material portion of any of the Debtors' assets outside the ordinary course of business either through a sale under section 363 of the Bankruptcy Code, or otherwise; (o) if there is any written objection sustained by the Court to the motion to approve this Stipulation; (p) the filing of any Chapter 11 plan inconsistent with this Stipulation; (q) the dismissal of the Case prior to confirmation of a chapter 11 plan; or (r) any Event of Default specified in the DIP Loan, which is not otherwise covered by the above Events of Default. | |
| Roll-Up | Upon entry of DIP Order, Prepetition Loan shall be repaid via set off from DIP Loan | Stipulation, Summary of Relevant Postpetition Financing Terms at n.3, Agreement, ¶ 3 at n.4, 5; DIP Order ¶¶ 1, 3 |
| Validity, Perfection, Priority, or Amount of Prepetition Secured Claim | Debtors are prohibited from challenging, avoiding, or subordinating the DIP Lender's claims against the Debtors under the Prepetition Loan Documents | Stipulation, Agreement ¶¶ 6(c); DIP Order ¶¶ 1, 5, 7 |
| Borrowing Conditions | No event of default, Court has entered interim DIP order within 10 days of the Petition Date, and final DIP Order within 40 days of Petition Date | Stipulation, Agreement ¶¶ 2(a)(ii), 11; DIP Order 1, 3 |

## III.

## <u>CERTIFICATION</u>

The undersigned counsel for the Debtors has read the Motion; to the best of my knowledge, information, and belief, formed after reasonable inquiry, the terms of the relief sought in the motion are in conformity with the Court's *Guidelines for Cash Collateral and Financing Motions and Stipulations,* except as set forth above. I understand and have advised the Debtors

that the Court may grant appropriate relief under Bankruptcy Rule 9024 if it determines that a material element of the Motion was not adequately disclosed in the Introductory Statement.

Dated:  September 21, 2020

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
                  /s/ Ori Katz
                  ORI KATZ
                  JEANNIE KIM
                  GIANNA

Proposed Attorneys for Debtors and Debtors in Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    BACKGROUND

On September 21, 2020 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief pursuant to subchapter V of chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

Since 1958 (first as "Del's Sizzler Family Steak House"), the Debtors (and their respective predecessors in interest) have been in the business of operating, and then franchising, family restaurants. Originally, the Debtors' menu focused on grilled steaks, but later expanded into other items, including their famed "Salad Bar." The Debtors currently operate fourteen company-owned restaurants throughout California and Oregon. The Debtors are also the franchisor of approximately 93 franchisee- and licensee-owned restaurants in California, Oregon, Washington, Arizona, Nevada, New Mexico, Utah, Idaho, Florida and Puerto Rico.

The global coronavirus pandemic and resulting orders issued by state, county, and city officials prohibiting restaurants from providing customers with dine-in services has decimated the Debtors' retail dining operations. For the past six months, the Debtors have implemented drastic cost-cutting measures while making every effort to maximize sales as permitted by state and local authorities. Even before the pandemic, however, recent increases to labor costs and local taxes have made it difficult for the Debtors to maintain profitability. Unable to operate at full capacity and subject to uncertainty for the foreseeable future, the Debtors have been unable to maintain cash flow sufficient to meet all of their financial obligations. Ultimately, the dramatic decline in revenues forced the Debtors to seek chapter 11 relief to reorganize their liabilities and obtain an infusion of new operating funds, either in the form of loans or, equity or both. The liabilities to restructure under chapter 11 include business loans, real property leases, certain obligations to former executive employees, and trade debt. The Debtors also intend to close some company-owned restaurants and reject and their related real property leases.

The DIP Loan and Cash Collateral use of which the Debtors seek Court approval by this Motion will provide the necessary runway for the Debtors to operate while they restructure their financial affairs.

## II.

## PREPETITION LOAN OBLIGATIONS

As described in the *Declaration of Christopher Perkins in Support of First Day Motions* filed concurrently with this Motion, the Debtors' capital structure consists of eight unsecured loans in favor of: the Collins Family Trust, Perkins US Investment Corporation Pty Ltd, Kevin Perkins, Carson Sizz, LLC, and the DIP Lender (collectively, the "Unsecured Lenders"). The sum total of outstanding obligations to the Unsecured Lenders is $3,092,181.67. Just before the Petition Date, the Debtors also borrowed from the DIP Lender $200,000 (the "Prepetition Loan") to act as a "bridge loan" to fund the Debtors' operations prior to seeking relief under subchapter V of chapter 11 of the Bankruptcy Code. As disclosed at the beginning of this Motion, the DIP Lender is an insider of the Debtors. Further, as a condition to making the Prepetition Loan, the DIP Lender required the Debtors to grant to him a security interest in substantially all of the Debtors' personal property assets (the "Prepetition Collateral"). The Prepetition Collateral thus serves to secure all of the Debtors' liabilities and obligations under the Prepetition Loan Documents. The foregoing security interest has been perfected by the filing of a financial statement with the Delaware Department of State, Initial Filing No. 2020 6183000 (the "Financing Statement," an authentic copy of which is attached as Exhibit B to the Stipulation).

## III.

## PROPOSED DIP FINANCING

**A.** **The DIP Loan and Use of Cash Collateral Are Critical to Facilitate the Debtors' Restructuring.**

The Debtors require immediate access to the infusion of cash from the DIP Lender as set forth in the DIP Loan Agreement and Stipulation to continue operating its company-owned restaurants and reorganize their financial affairs. Without immediate funding contemplated by the DIP Loan and use of Cash Collateral, the Debtors would be forced to cease operating their

business and convert this case to chapter 7, which would have an adverse effect on the Debtors' estates, employees, franchisees and licensees, vendors, and other constituents.

Indeed, to meet the Debtors' obligations to employees and other vendors immediately after the commencement of this Case, the Debtors need the DIP Lender to fund at least $280,000 of the DIP Loan. In fact, based on the anticipated timing of the emergency hearing on the Debtors' various requests for relief by the First Day Motions, the Debtors believe that they may not meet the funding deadline for their prepetition employee obligations, including payroll. Therefore, the Debtors requested, and the DIP Lender funded, $280,000 directly into the Debtors' Concentration Account held at JP Morgan Chase Bank, N.A., based upon the agreement of the Debtors to hold such funds in trust for the DIP Lender. These funds are necessary to ensure that the Debtors can meet their prepetition payroll obligations. In the event the Court does not enter interim orders granting relief requested related to the DIP Loan or the prepetition employee obligations, the Debtors immediately will return to the DIP Lender the $280,000.

**B. The Debtors' Selection of the DIP Lender as Lender.**

Given the Debtors' current financial condition, its obligations to former executives, and the current state of the restaurant and hospitality industry, the Debtors were unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code. The Debtors also were unable to obtain secured credit from other sources: (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that are not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estate that is already subject to a lien. As a result, financing on a postpetition basis was not otherwise available without granting the DIP Lender the protections, rights and remedies afforded by the DIP Loan Agreement and Stipulation.

The Debtors have reasonably determined that the DIP Loan offered by the DIP Lender provides favorable terms to the Debtors and their estates. In the sound exercise of their business judgment and fiduciary duties, the Debtors have determined to proceed under the DIP Loan offered by the DIP Lender, subject to the approval of the Court.

## IV.

## REQUIRED DISCLOSURES FOR CASH COLLATERAL

## AND FINANCING MOTIONS

Pursuant to the Court's *Guidelines for Cash Collateral and Financing Stipulations*

("Guidelines"), the Debtor makes the following required disclosures:

| Required Disclosure | Provision | Reason for Provision | Location in Documents |
|---|---|---|---|
| The granting of priority or a lien on property of the estate pursuant to 11 U.S.C. §§ 364(c) or (d) | The DIP Loan is to be secured by all of the Debtors' personal property assets. The DIP Lenders shall have a first priority lien as adequate protection to Prepetition Lender super-priority administrative claim to the maximum extent allowable by law[4], except for the Carve-Out. | The DIP Lender also is the Prepetition Lender. To the extent the Court does not authorize the Debtors to repay the Prepetition Loan via set off against the DIP Loan proceeds, the DIP Lender seeks repayment of the Prepetition Loan first. | Stipulation, Summary of Relevant Postpetition Financing Terms, Recital D, E, Agreement ¶¶ 3, 6, 7, 14; DIP Order ¶¶ 1, 5, 7 |
| The providing of adequate protection or priority with respect to a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under 11 U.S.C. § 364 to make cash payments on account of the claim | Upon entry of the DIP Order, the Prepetition Loan shall be repaid via set off from DIP Loan. | The DIP Lender has consented to cash collateral use and agreed to make the DIP Loan available. | Stipulation, Summary of Relevant Postpetition Financing Terms at n.3, Agreement, ¶ 3 at n.4, 5; DIP Order ¶¶ 1, 5, 7 |
| A determination with respect to the validity, perfection, priority, or amount of a claim that arose | The Debtors have stipulated to the validity, priority, and amount of prepetition lien and will not challenge or attempt | The DIP Lender has consented to cash collateral use and agreed to make the DIP Loan available. | Stipulation, Agreement ¶ 6(c); DIP Order ¶¶ 1, 5, 7 |

---

[4] *See supra*, note 1. In addition, the Lender currently holds a blanket lien against all of the Debtors' assets pursuant to a security interest granted by the Debtors in connection with the Prepetition Loan Documents. This blanket lien would be terminated upon repayment of the Prepetition Loan.

| Required Disclosure | Provision | Reason for Provision | Location in Documents |
|---|---|---|---|
| before the commencement of the case, or of any lien securing such claim | to avoid or subordinate the DIP Lender's claims against the Debtors under Prepetition Loan Documents. | | |
| A waiver or modification of the provisions of the Bankruptcy Code or applicable rules relating to the automatic stay | The DIP Lender's security interest in and liens against all of the Debtors' personal property assets are deemed automatically perfected pursuant to entry of the DIP Order. The DIP Lender has the right to obtain relief from stay via *ex parte* submission of a declaration attesting to occurrence of an Event of Default, provided, however, that the Debtors shall not be precluded from asserting that they are not in default, seek continued use of Cash Collateral or oppose such relief | The Debtors anticipate that this case will be relatively short as it is under Subchapter V of Chapter 11 of the Bankruptcy Code. The DIP Lender has agreed to funding the Debtors' reorganization, including consent to use of cash collateral use. | Stipulation, Agreement ¶¶ 3, 4, 7, 12, 13; DIP Order ¶¶ 1, 4 |
| A waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien | The Debtors have stipulated to automatic perfection of DIP Liens and Adequate Protection Liens upon the entry of the DIP Order. | The DIP Lender's agreement to lend and consent to cash collateral use and agreement to provide the DIP Loan. | Stipulation, Agreement ¶¶ 3, 4, 7, 12, 13; DIP Order ¶¶ 1, 5, 7 |
| A release, waiver, or limitation of any right under 11 U.S.C. § 506(c) | The Debtors have stipulated that their rights under section 506(c) will be subject to the DIP Lender's super-priority claim. | The DIP Lender's agreement to lend and consent to cash collateral use. | Stipulation, Agreement, ¶ 6(b); DIP Order ¶ 1 |
| Provisions for "carve-outs" for professionals' fees and expenses. | Carve-out provided for Debtors' bankruptcy counsel, U.S. Trustee and Clerk of Court fees, and other professionals | Cost of paying for the administration of this case. | Stipulation, Summary of Relevant Postpetition Financing Terms, Agreement ¶¶ 1(a), 6, 15; DIP Order ¶¶ 1, 3 |

SMRH:4837-8755-0412.3

| Required Disclosure | Provision | Reason for Provision | Location in Documents |
|---|---|---|---|
| | employed by the Debtors' estates. | | |

Also pursuant to the Guidelines, the Debtors have listed below each of the provisions that are identified in the Guidelines as provisions that the Court will not ordinarily approve and has identified whether such provisions are applicable here:

| Provision | Description |
|---|---|
| Cross-collateralization clauses and "roll-ups" | Upon entry of the DIP Order, the Prepetition Loan will be repaid in full via set off (Stipulation, Summary of Relevant Postpetition Financing Terms at n.3, Agreement, ¶ 3 at n.4, 5;  DIP Order paragraph 1, 3) |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection, or amount of secured party's lien or debt | Debtors' stipulations to validity of prepetition liens and challenge provisions to said liens (Stipulation, Agreement ¶ 6(c);  DIP Order paragraph 1, 5, 7) |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's lien and liens held by persons who are not party to the stipulation | There provisions of paragraphs 1, 5, and 7 of the DIP Order which provide that the DIP Lender's liens against all of the Debtors' assets shall be first priority, except that if the Court authorizes repayment in full of the Prepetition Loan from the DIP Loan, the Lender's prepetition security interest would be extinguished (Stipulation, Agreement ¶ 6(c);  DIP Order paragraph 1, 5, 7) |
| Waivers of 11 U.S.C. § 506(c), *unless* the waiver is effective only during the period in which the debtor is authorized to use cash collateral or borrow funds | Debtors have agreed that their rights under section 506(c) rights as to collateral for DIP loan and prepetition loans will be subject to the DIP Lender's superpriority lien (Stipulation, Agreement, ¶ 6(b);  DIP Order paragraph 1) |
| Provisions that operate, as a practical matter, to divest the debtor in possession of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable law | Filing of a Chapter 11 plan inconsistent with the Stipulation defined as an event of default (Stipulation, Agreement ¶ 11(q);  DIP Order paragraph 1) |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee | DIP Lender is granted automatic relief from stay as noted above to enforce rights under DIP Loan Agreement/Stipulation and events of default include conversion to chapter 7 and appointment of trustee. (Stipulation, Agreement ¶¶ 3, 4, 7, 12, 13;  DIP Order paragraph 1, 4) |
| Waivers of procedural | Automatic perfection of DIP Liens and Adequate Protection Liens |

| Provision | Description |
|---|---|
| requirements, including those of foreclosure mandated under applicable nonbankruptcy law, and for perfection of replacement liens | (Stipulation, Agreement ¶¶ 3, 4, 7, 12, 13; DIP Order paragraph 1, 5, 7) |
| Waivers, effective on default or expiration, of the debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | N/A |
| Findings of fact on matters extraneous to the approval process | The Debtors believe that the proposed findings in the DIP Order are appropriately tailored to the relief requested |
| Provisions providing unreasonable treatment with respect to fees or professionals retained by a creditors' committee compared to any carve-outs provided for professionals retained by the debtor in possession or trustee | The Carve-Out in Paragraph 15 of the Stipulation and in the Budget attached as Exhibit C thereto include amounts for estate professionals that the Debtors believe are reasonable in light of the facts and expected timeline of this Case |

## V.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

A.     <u>The DIP Loan Should Be Approved Under Bankruptcy Code Section 364(c), 364(d)(1)</u>

     The Debtors need cash to meet ongoing obligations necessary to operate their business and administer their Chapter 11 Case while they reorganize their liabilities and obtain an infusion of new operating funds, either in the form of loans or, equity or both. The liabilities to restructure under chapter 11 include business loans, real property leases, certain obligations to former executive employees, and trade debt. The Debtors also intend to close some company-owned restaurants and reject and their related real property leases. Under section 364(c) and 364(d)(1) of the Bankruptcy Code, the Debtors request authority to enter into the DIP Loan Agreement as an administrative expense, having priority over other administrative expenses and secured by a lien on all of the Debtors' personal assets, except for the Carve-Out, assuming that the Court

authorizes repayment in full of the Prepetition Loan from the DIP Loan, in which case the DIP Lender's prepetition security interest would be extinguished.

Pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interest of the estate. Section 364(c) of the Bankruptcy Code provides, in pertinent part, that:

> (c) If the trustee [or debtor in possession] is unable to obtain unsecured credit allowable-under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
>
> (1) with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title:
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

Section 364(d)(1) of the Bankruptcy Code governs the incurrence of senior secured debt or "priming" loans. Pursuant to section 364(d)(1) of the Bankruptcy Code, the Court may, after notice and a hearing, authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien only if –

> (1)     the trustee is unable to obtain such credit otherwise; and
>
> (2)     there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

The Debtors' execution of the DIP Loan Agreement is an exercise of their sound business judgment that warrants Court approval. The Debtors have analyzed their projected financing needs during the pendency of this Chapter 11 Case and the Debtors' anticipated reorganization process. Based on that analysis, the Debtors determined that they need postpetition financing to continue operating while they restructure their financial affairs under Subchapter V of Chapter 11.

Accordingly, the Debtors began negotiating with the DIP Lender regarding the terms of postpetition financing in as early as August 2020. Prior to commencing negotiations with the DIP Lender, the Debtors explored financing options from third parties (including other non-debtor insiders), but were unsuccessful. Thus, after a series of good faith, arm's-length negotiations with the DIP Lender, the parties agreed to the terms of the DIP Loan Agreement. Based on the advice of their professionals, the Debtors have determined in their sound business judgment that the terms of the DIP Loan provide a greater amount of financing on more favorable terms than any other reasonably available alternative.

Specifically, the DIP Loan will provide the Debtors with access to borrowing availability to pay their immediate operating expenses, including prepetition employee obligations, rent, utilities, and certain vendor payments, as well as restructuring-related expenses. Without the DIP Loan, the Debtors do not have sufficient cash flow to pay for these items. It is especially critical that the Debtors obtain Court approval to enter into the DIP Loan **as soon as possible, but in any event before the close of business on Tuesday, September 22, 2020**. This is because the Debtors' next payroll obligation is due to be funded before 12:01 a.m. on Wednesday, September 23, 2020, to ensure that the Debtors' employees receive their paychecks for services rendered and wages and salaries earned, prepetition, on September 25, 2020, subject to Court approval. Indeed, to ensure that the Debtors' prepetition employee obligations are timely paid, the DIP Lender has pre-funded $280,000 directly into the Debtors' Concentration Account held at JP Morgan Chase Bank, N.A., based upon the agreement of the Debtors to hold such funds in trust for the DIP Lender. Unless these prepetition employee obligations and other essential operating expenses are paid, the Debtors will be forced to cease their business operations, which would result in irreparable harm to the value of their assets. The DIP Loan therefore represents the best chance of survival for the Debtors and should be authorized as a proper exercise of the Debtors' business judgment.

The liens that the Debtors propose to grant to the DIP Lender to secure repayment of the DIP Loan will prime only the existing prepetition secured debt of the DIP Lender on account of the Prepetition Loan that the DIP Lender made to the Debtors as a "bridge loan." Upon Court

approval of the Debtors' full repayment of the Prepetition Loan via set off against the DIP Loan proceeds, the Prepetition Lender's lien will be extinguished.  Despite efforts to locate alternative funding sources, the Debtors do not have access to financing on better terms than the proposed DIP Loan.  Moreover, the Debtors cannot obtain the financing that they requires via unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code.  The DIP Loan is essential for the Debtors to obtain credit from vendors because the existence of this facility will afford vendors a level of comfort that the Debtor will be able to pay for the goods and services that they will receive on credit.

As indicated above, section 364(c) of the Bankruptcy Code enumerates certain incentives that a bankruptcy court may grant to postpetition lenders.  Such incentives are not exhaustive.  Bankruptcy courts frequently have authorized the use of inducements not specified in the statute.  *See, e.g., Unsecured Creditors' Comm. V. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 834 F.2d 599 (6th Cir. 1987) (affirming financing order that prohibited any challenges to the validity of already existing liens); *In re Defender Drug Stores*, 126 B.R. 76 (Bankr. D. Ariz. 1991) (authorizing enhancement fee to postpetition lender), *aff'd*, 145 B.R. 312, 316 (B.A.P. 9th Cir. 1992) ("[b]ankruptcy courts . . . have regularly authorized postpetition financial arrangements containing lender incentives beyond the explicit priorities and liens specified in section 364"); *In re Antico Mfg. Co.*, 31 B.R. 103 (Bankr. E.D.N.Y. 1983) (authorizing lien on prepetition collateral to secure postpetition indebtedness).

The Debtors propose to grant the DIP Lender certain enhancements in the form of liens against the Debtors' prepetition and postpetition assets, debt and security acknowledgements, and limitation of rights under sections 506(c) of the Bankruptcy Code.  The Debtors believe that such enhancements are reasonable in return for the funding available under the DIP Loan and consent to the use of the DIP Lender's cash collateral.

The DIP Loan is the Debtors' best available financing option for a variety of reasons.  First, the availability of the DIP Loan under the DIP Loan Agreement will provide the Debtors with the necessary liquidity and time to conduct and conclude the sale process for substantially all of its assets.  Second, the terms of the DIP Loan Agreement are competitive and substantially less

costly than alternative postpetition financing. Third, while the Debtors will stipulate to the validity of the DIP Lender's Prepetition Lien in exchange for his consent to the DIP Loan and cash collateral use, the DIP Lender is reducing, on a dollar-for-dollar basis, the amount of funding available under the DIP Loan as and for set off of the Prepetition Loan. Moreover, the Subchapter V Trustee appointed in this Case will have the ability to review and challenge said lien.

In light of the Debtors' inability to find postpetition financing and consent to cash collateral use on more favorable terms, the fact that the DIP Lender already holds a lien on all of the Debtors' assets, and the various benefits afforded to all parties in interest by the Debtors' entry into the DIP Loan Agreement, as described above, the Debtors submit that the validation of the DIP Lender's prepetition claims is appropriate and should be approved, subject to Court approval of repayment of the Prepetition Loan with the proceeds of the DIP Loan.

The Debtors respectfully submit that the DIP Loan satisfies section 364(c) and (d) of the Bankruptcy Code. The best credit terms available to the Debtors are those set forth in the DIP Loan Agreement. Thus, the Debtors believe that it is fair, reasonable, and necessary for the Court to approve the DIP Loan and enter the DIP Order. In addition to representing the best terms presently available to Debtors, the DIP Financing is also in the best interests of the Debtors' estates. The DIP Loan will provide the Debtors with funding necessary to maintain and operate their business and restructure their financial affairs. The DIP Loan therefore is plainly in the best interests of Debtors' estates.

Based on the foregoing, the DIP Lender should be accorded the benefits of section 364(e) of the Bankruptcy Code in respect of the DIP Loan because he has offered to extend such financing in good faith. Further, section 364(e) provides a lender with a presumption of good faith. *See Weinstein, Eisen, Weiss LLP v. Gill* (*In re Cooper Common, LLC),* 424 F.3d 963, 969 (9th Cir. 2005).

**B.      The Court Should Grant the Debtors Access to Cash Collateral Under Bankruptcy Code Section 363(c)(1) on a Final Basis.**

The Debtors' use of property of their estates is governed by section 363 of the Bankruptcy Code. Section 363(c)(1) provides, in pertinent part, that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee [or debtor in possession] may enter into transactions, including the sale or lease of property of the estates, in the ordinary course of business, without notice or hearing, and may use property of the estates in the ordinary course of business without notice or hearing.

11 U.S.C. § 363(c)(1).

The Bankruptcy Code establishes a special requirement, however, regarding the debtor in possession's use of "cash collateral," defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estates and an entity other than the estates have an interest . . . ." 11 U.S.C. § 363(a). Section 363(c)(2) of the Bankruptcy Code permits the debtor in possession to use, sell, or lease cash collateral under subsection (c)(1) only if either of two alternative circumstances exists:

> (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

Here, the DIP Lender's consent to the use of cash collateral and such use is absolutely necessary in the Debtors' business judgment to continue operating their company-owned restaurants, subleasing real property, and franchising the Sizzler brand and proprietary restaurant operations process. In addition, the DIP Lenders is being provided adequate protection for the use of his cash collateral.

Section 361 of the Bankruptcy Code specifies the means by which adequate protection may be provided. Adequate protection may include, but is not limited to "periodic cash payments" to the extent that such use "results in a decrease in value of such entity's interest in such property" and "granting such other relief…, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361.

What constitutes adequate protection is determined on a case-by-case basis, and courts have broad flexibility under Bankruptcy Code section 361 in determining what constitutes adequate protection. *See, e.g., In re McKillips*, 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987); *In re*

-23-

*Green*, 436 B.R. 91, 94 (Bankr. S.D. Ill. 2010) ("[W]hether a particular secured creditor is adequately protected is a determination to be made on a case-by-case basis and is within the discretion of the court."). Indeed, section 361 of the Bankruptcy Code merely specifies the means by which adequate protection may be provided. "It does not require the court to provide it. To do so would place the court in an administrative role. Instead, the trustee or debtor in possession will provide or propose a protection method. If the party that is affected by the proposed action objects, the court will determine whether the protection provided is adequate. The purpose of this section is to illustrate means by which it may be provided and to define the contours of the concept." H.R. Rep. No. 95-595, at 338, 95th Cong., 1st Sess. (1977).

As adequate protection for the use of the DIP Lender's cash collateral comes in the form of a first priority lien and super-priority claims granted to the DIP Lender[5]. The Debtors submit that the foregoing adequately protects the DIP Lender in a manner consistent with the requirements of the Bankruptcy Code. Accordingly, the Debtors' use of Cash Collateral should be approved.

**C.      The Automatic Stay Should be Modified on a Limited Basis.**

The relief requested in this Motion contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtors to: (i) grant the lien described above with respect to DIP Lender and to perform such acts as may be requested to assure such priority status and afford the DIP Lender with rights upon default under the DIP Loan Agreement; (ii) execute such other documents as may be required to effectuate the financing and (iii) implement the terms of the proposed DIP Order. Stay modifications of this kind are ordinary features of postpetition financing facilities and, in the Debtors' business judgment, are reasonable under the present circumstances.

## VI.

### NOTICE

Notice of the Motion will provided to the following parties or, in lieu thereof, on their counsel, if known: (a) the Office of the United States Trustee, (b) upon appointment, the

---

[5] *See supra*, notes 1 and 3.

Subchapter V Trustee appointed to this Case, (c) the creditors appearing on the list filed in accordance with Rule 1007(d) of the Federal Rules of Bankruptcy Procedure, (d) the DIP Lender and his counsel, (e) parties that file with the Court and serve upon the Debtor requests for notice of all matters in accordance with Bankruptcy Rule 2002, and (f) any known parties that assert a lien on the Debtors' assets. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## VII.

## **CONCLUSION**

Based upon the foregoing, the Debtors request entry of the DIP Order under sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rule 4001 and local Bankruptcy Rule 4001-2, (1) approving the Stipulation; (2) authorizing the Debtor to (a) enter into and incur credit under the DIP Loan Agreement with the DIP Lender, (b) use cash collateral, and (c) provide adequate protection to the DIP Lender in accordance with the provisions of this Motion; and (3) providing such other and further relief as is just and proper.

Dated: September 21, 2020

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By      /s/ Ori Katz
ORI KATZ
JEANNIE KIM
GIANNA SEGRETTI

Proposed Attorneys for Debtors and
Debtors in Possession

**<u>Exhibit A</u>**

DIP FINANCING MOTION

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
JEANNIE KIM, Cal. Bar No. 270713
GIANNA SEGRETTI, Cal. Bar No. 323645
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email:      okatz@sheppardmullin.com
          jekim@sheppardmullin.com
          gsegretti@sheppardmullin.com

Proposed Attorneys for Debtors and
Debtors in Possession,

FINESTONE HAYES LLP
Stephen D. Finestone, Cal. Bar No. 125675
Jennifer C. Hayes, Cal. Bar No. 197252
Ryan A. Witthans, Cal. Bar No. 301432
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Telephone:    (415) 421-2624
Facsimile:    (415) 398-2820

Attorneys for Secured Creditor,
Kevin Perkins

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| In re | Case No.: |
|---|---|
| ☐  SIZZLER USA ACQUISITION, INC., a Delaware corporation | Joint Administration Requested with Case Nos. [•] |
| ☐  SIZZLER USA HOLDINGS, INC., a Delaware corporation | Chapter 11 |
| ☐  SIZZLER USA FINANCE, INC., a Delaware corporation | **INTERIM ORDER APPROVING STIPULATION REGARDING USE OF CASH COLLATERAL, PROVISION OF ADEQUATE PROTECTION AND DEBTOR IN POSSESSION FINANCING** |
| ☐  WORLDWIDE RESTAURANT CONCEPTS, INC., a Delaware corporation | |
| ☐  SIZZLER USA, INC., a Delaware corporation | |
| ☐  SIZZLER USA FRANCHISE, INC., a Delaware corporation | Date:        [•] |
| ☐  SIZZLER USA REAL PROPERTY, INC., a Delaware corporation | Time:       [•] |
| ☐  SIZZLER USA RESTAURANTS, INC., a Delaware corporation | Courtroom:    Telephonic/Video Hearing Only |
| ☒  ALL DEBTORS<br>          Debtors and<br>          Debtors in Possession | |

-1-

The *Motion for Order Approving Stipulation Regarding Use of Cash Collateral, Provision of Adequate Protection, and Debtor in Possession Financing* (the "Motion") filed by the above-captioned debtors and debtors in possession Sizzler USA Acquisition, Inc., Sizzler USA Holdings, Inc., Sizzler USA Finance, Inc., Worldwide Restaurant Concepts, Inc., Sizzler USA, Inc., Sizzler USA Franchise, Inc., Sizzler USA Real Property, Inc., and Sizzler USA Restaurants, Inc. (collectively, the "Debtors" or "Sizzler"), came before the Court for an interim hearing on September [•], 2020. Appearances were as noted on the record.

The Court having considered the Debtors' Motion, the declaration and other evidence submitted in support of the Motion, and all papers on file herein, and having heard the argument of counsel and matters presented at the time of hearing, and based upon the Motion, the record before the Court, and the combined consent of the Debtors and Kevin Perkins (the "DIP Lender") to the entry of this Order,

**IT APPEARS TO THE COURT AS FOLLOWS:**

A.      Entry of this Interim Order is necessary to prevent the immediate and irreparable harm to the Debtors and their estates that would otherwise result if the Debtors are prevented from obtaining postpetition financing and using Cash Collateral for the payment of the expenses approved in the Stipulation (defined below).

B.      The Debtors have made reasonable efforts, under the circumstances, to locate financing of the type contemplated by this Interim Order; the Debtors are unable to obtain, in the ordinary course of business or otherwise, financing of the type contemplated herein, either in the form of unsecured credit allowable under section 503(b)(1) of the Code as an administrative expense pursuant to sections 364(a) or (b) of the Code, or unsecured credit allowable under sections 364(a) and 364(b) of the Code; and the Debtors are unable to obtain financing of the type contemplated herein in the form of secured credit pursuant to section 364(c) or 364(d) of the Code on terms more favorable than those offered by the Secured Lender pursuant to this Interim Order and the Stipulation.

C.      The terms and conditions of the DIP Loan and Cash Collateral use have been negotiated in good faith and at arm's length and the Debtors have offered sufficient proof thereof.

Accordingly, it appears to the Court that the terms of the DIP Loans and Cash Collateral use sought to be approved in the Motion have been extended in good faith and that any credit extended, loans to be made, Cash Collateral use permitted, or other financial accommodations granted to the Debtors pursuant to this Order shall be deemed to be extended in good faith as that term is used in section 364(e) of the Code.

D.      Good cause has been shown for the entry of this Interim Order. Among other things, entry of this Order will minimize disruption of the Debtors and permit the Debtors to continue business operations without significant interruption. The terms of the DIP Loan, Cash Collateral use, and other financial accommodations authorized hereby reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis. The *Stipulation Regarding Use of Cash Collateral, Provision of Adequate Protection, and Debtor in Possession Financing* (the "Stipulation") by and between the Debtors and the Secured Lender is hereby APPROVED in all respects on an interim basis. The terms and conditions of the Stipulation are hereby incorporated into this Interim Order by this reference, and the approval of the Motion and Stipulation in this Interim Order constitute approval of all the provisions of the Stipulation as if fully set forth herein. Capitalized terms not defined in this Interim Order shall have the meanings given to them in the Stipulation.

2.      The Debtors are authorized to enter into the Stipulation and all instruments, agreements, and other documents referred to in or implementing the Stipulation, and the terms of the Stipulation shall be binding upon the Debtors and the Debtors' estates.

3.      The Debtors shall be authorized to use Cash Collateral and to borrow under the Debtor in Possession Credit Facility through the Final Hearing (defined below) on the Motion pursuant to the terms and conditions of the Stipulation.

4.      The automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified, without the need for any further action of the Secured Lender or the Court, to the

extent necessary to permit the Secured Lender to give effect to any rights granted in this Interim Order and the Stipulation.

5.      Following entry of this Interim Order, the Debtors shall, on or before September [•], 2020, provide notice of this Interim Order and of the final hearing on the Motion (the "Final Hearing") by first-class mail to the Office of the United States Trustee, the 20 largest unsecured creditors, all parties requesting special notice, and all parties having liens or security interests of record in any of the Debtors' assets.

6.      The Final Hearing shall be held before this Court on [•], 2020 at [•] or as soon as the parties may be heard.

7.      The subject of this Interim Order is a "core" proceeding as defined in 28. U.S.C. § 157(b)(2)(D). This Interim Order shall take effect and be fully enforceable immediately upon its entry, and upon such entry, shall be binding upon and shall inure to the benefit of the DIP Lender, the Debtors, the Debtors' estates, and their respective successors, transferees, and/or assigns, and the terms and provisions of this Interim Order and the Stipulation as well as the liens, claims, and security interests granted in this Interim Order and the Stipulation shall continue in these proceedings and any superseding proceedings under the Bankruptcy Code, and such liens and security interests shall maintain their priority as provided by this Interim Order and the Stipulation, until satisfied and discharged.

8.      The Court has and will retain jurisdiction to enforce this Interim Order and the Stipulation according to their terms.

**\* \* \* \* END OF [PROPOSED] ORDER \* \* \* \***

**Exhibit B**

## POSTPETITION PROMISSORY NOTE AND SECURITY AGREEMENT

$2,000,000                                                    September 21, 2020

THIS POSTPETITION PROMISSORY NOTE AND SECURITY AGREEMENT (the "Note and Security Agreement") is made as of September 21, 2020, (the "Effective Date") by and between (1) Sizzler USA Acquisition, Inc., a Delaware corporation; (2) Sizzler USA Holdings, Inc., a Delaware corporation; (3) Sizzler USA Finance, Inc., a Delaware corporation; (4) Worldwide Restaurant Concepts, Inc., a Delaware corporation; (5) Sizzler USA, Inc., a Delaware corporation; (6) Sizzler USA Franchise, Inc., a Delaware corporation; (7) Sizzler USA Real Property, Inc., a Delaware corporation; and (8) Sizzler USA Restaurants, Inc., a Delaware corporation (collectively, "Debtors") and Kevin Perkins ("Lender") at 205 Sugars Rd., Anstead, QLD 4070, Australia, and his successors, transferees, and/or assigns. Debtors and Lender are referred to, collectively, as the "Parties."

## RECITALS

A.      Debtors are debtors in possession with bankruptcy cases [Case Nos.] pending in the Bankruptcy Court of the Northern District of California.

B.      The Parties entered into a prepetition *Loan and Security Agreement* and a related *Secured Promissory Note* (together, the "Prepetition Loan") as of September 4, 2020.

C.      As of the date of this *Note and Security Agreement*, Debtors are indebted to Lender in the amount of $200,000 plus interest and fees pursuant to the Prepetition Loan, which is due on the later of December 31, 2020, or fourteen calendar days following entry of an order by the Bankruptcy Court authorizing repayment of the Prepetition Loan.

D.      Debtors require a postpetition extension of credit in an amount up to $2,000,000 (the "DIP Loan") to repay the Prepetition Loan and to cover ongoing liabilities associated with operating their business as debtors in possession.

E.      Debtors and Lender entered into a *Stipulation Regarding Use of Cash Collateral, Provision of Adequate Protection and Debtor In Possession Financing* ("DIP Stipulation") as of September 21, 2020.

F.      Pursuant to the DIP Stipulation and this Agreement, Lender has agreed to lend Debtors $2,000,000, and will receive a Security Interest (defined below) to secure repayment. The Parties contemplate Lender advancing funds to Debtors, first, in the amount of $1,000,000 as soon as practicable after the Petition Date, and second, upon Debtors' request but in no event prior to January 1, 2021, if and only if (1) Debtors adhere to the Approved Budget and (2) Debtors' company-operated restaurants have generated sales of at least 50% more than those same company-operated restaurants generated in 2019. The DIP Stipulation further provides that, in the event the company-operated restaurants do not meet the profitability requirements set forth in the DIP Stipulation and related documents, the DIP Lender shall have the discretion, but not be required, to fund the balance of the DIP Loan.

# NOTE AND SECURITY AGREEMENT

The above Recitals are incorporated by reference.

FOR VALUE RECEIVED, Debtors, jointly and severally, unconditionally promise to pay to the order of Lender, and his successors, transferees, and/or assigns, the principal amount of $2,000,000 (or the aggregate unpaid principal amount outstanding of all advances made by Lender to Debtors in accordance with the terms of this Note and Security Agreement, whichever is less) together with interest on so much thereof as is outstanding hereunder from time to time at the Interest Rate (defined below) from the date of this Note and Security Agreement until maturity.

Schedule of Disbursements. The amount of $1,000,000 shall be disbursed to Debtors as soon as practicable after the Petition Date. Disbursements thereafter shall be made upon Debtors' request, but in no event prior to January 1, 2021, if and only if (1) Debtors adhere to the Approved Budget and (2) Debtors' company-operated restaurants have generated sales of at least 50% more than those same company-operated restaurants generated in 2019. In the event the company-operated restaurants do not meet the profitability requirements set forth in the DIP Stipulation and related documents, the DIP Lender shall have the discretion, but not be required to fund the balance of the DIP Loan.

Interest Rate. From and after the date hereof (until maturity or default as hereinafter provided), interest shall accrue at a rate per annum of 5% (the "Interest Rate"), to be computed on each advance from the date of its disbursement as set forth herein.

Maturity Date. The outstanding principal amount of this Note and Security Agreement, the accrued interest thereon, and any other amounts evidenced hereby shall be due and payable in one lump sum five years from the Effective Date of this Note and Security Agreement (*i.e.*, September 21, 2025, the "Maturity Date"), extendable by mutual written agreement of the parties. Any and all payment(s) hereunder received from Debtors by Lender shall be applied first to the payment of late fees and other costs and charges due in connection with this Note and Security Agreement, as Lender determines in its sole discretion, then to the payment of accrued but unpaid interest, and then to reduction of the outstanding principal balance (in inverse order of maturity whether or not then due). All amounts due under this Note and Security Agreement shall be payable without setoff, counterclaim, or any other deduction whatsoever.

Security Interest. As an inducement for Lender to extend the loan as evidenced by this Note and Security Agreement and to secure the complete and timely payment, performance and discharge in full, as the case may be, of all of the obligations hereunder, Debtors hereby unconditionally and irrevocably pledge, grant and hypothecate to Lender a continuing and perfected first-priority security interest in and to, a lien upon and a right of set-off against (the "Security Interest") any and all of their respective right, title, and interest of whatever kind and nature in and to all assets of Debtors and their bankruptcy estates, excluding Causes of Action under Chapter 5 of the Bankruptcy Code (the "Collateral"). This Agreement creates in favor of Lender, without the necessity of executing, filing, or recording any financing statements, security agreements, vehicle lien applications, mortgages or filings with a governmental unit or taking any action whatsoever, a valid first-priority priming and fully perfected security interest in the Collateral securing the payment and performance of the obligations. Debtors hereby authorize Lender to file one or more

financing statements under the UCC, with respect to the Security Interest with the proper filing and recording agencies in any jurisdiction deemed proper by them. No such filing or other action shall be necessary, however, to perfect Lender's Security Interest granted herein.

Representations and Warranties. The Representations and Warranties set forth in the Prepetition Loan, and each of them, are incorporated herein by reference. Each Debtor represents and warrants, as to itself only, that each such Representation and Warranty remains true and accurate as of the Effective Date of this Note and Security Agreement.

Covenants (Affirmative and Negative). The Affirmative Covenants and Negative Covenants set forth in the Prepetition Loan, and each of them, are incorporated herein by reference, and each Debtor makes the same Affirmative Covenants and Negative Covenants, as to itself only, until payment in full of all of the liabilities under this Notice and Security Agreement are satisfied.

Bankruptcy Court Approval. On September 21, 2020, Debtors filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Northern (the "Bankruptcy Court"), Case Nos. _____ (the "Bankruptcy Cases"). Debtors are operating as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108. The term Debtors as used in this Note and Security Agreement shall include the definition "debtor in possession" as that term is defined by, and used in, the Bankruptcy Code. This Note and Security Agreement are subject to final approval of the Bankruptcy Court. Funds under this Note and Security Agreement are to be remitted to Debtors upon Bankruptcy Court approval of the initial order (the "Interim Order") authorizing Debtors to borrow and Lender to advance funds pursuant to this Note and Security Agreement.

Event of Default. The occurrence of any of the following shall constitute an "Event of Default" under this Note and Security Agreement: (i) Debtors' failure to pay amounts due under this Note and Security Agreement as and when due; (ii) dismissal of the Bankruptcy Case; (iii) appointment of a Chapter 11 Trustee; (iv) conversion of the Bankruptcy Case to a case arising under Chapter 7 of the Bankruptcy Code, and the appointment of a Chapter 7 Trustee; (v) if any creditor or party in interest seeks to prime Lender's Security Interest in the Collateral; and/or (vi) any Debtor's breach of any Representation, Warranty, Affirmative Covenant, and/or Negative Covenant.

Remedies. Upon the occurrence of any Event of Default, Lender, at his option, may without further notice, motion or application, order or hearing before the Bankruptcy Court, declare all sums of principal and interest outstanding hereunder to be immediately due and payable without presentment, demand, notice of nonperformance, notice of protest, protest or notice of dishonor, all of which are expressly waived by Debtors and the obligation, if any, of the holder to extend any further credit hereunder shall immediately cease and terminate and Lender shall be entitled to enforce all rights and remedies of a secured creditor against the Collateral. Debtors shall pay to Lender immediately upon demand the full amount of all payments, advances, charges, costs and expenses, including reasonable attorneys' fees expended or incurred by Lender in connection with the enforcement of its rights and/or the collection of any amounts which become due to the holder under this Note and Security Agreement. These charges include the prosecution or defense of any action in any way related to this Note and Security Agreement including, without limitation, any action for relief in the Bankruptcy Case relating to Debtors or any other

person or entity. Debtors agree to pay such charges, which include attorneys' fees related to Lender's enforcement efforts, in an amount not to exceed the maximum amount allowed by law.

Default Rate. Upon the occurrence of an Event of Default and during the continuance thereof, the outstanding principal of this Note and Security Agreement shall bear interest at the higher of a rate which is 4% per annum in excess of the Interest Rate or the highest interest rate permitted by law ("Default Rate"). Interest calculated at the Default Rate shall be added to the indebtedness evidenced by this Note and Security Agreement and shall be secured by the Collateral. This clause, however, shall not be construed as an agreement or privilege to extend the Maturity Date, or as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

Waiver. The undersigned hereby expressly waives diligence, presentment, demand, protest, notice of protest, notice of intent to accelerate, notice of acceleration, and notice of any other kind.

Enforceability. Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by, unenforceable or invalid under any jurisdiction, such provision shall as to such jurisdiction, be severable and be ineffective to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

Governing Law. This Note and Security Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of California.

Prepayment. Debtors may prepay the outstanding principal amount of this Note and Security Agreement in whole or in part at any time without the prior written consent of Lender and without penalty, premium or unearned interest.

Fees for Preparation of Documentation: Lender and Debtors will be separately responsible for each party's own cost of preparation of documentation for this agreement.

Use of Proceeds. Debtors represent and agree that the proceeds of the loan evidenced by this Note and Security Agreement shall be used solely for business purposes as set forth in the DIP Stipulation.

Maximum Rate of Interest. If, at any time, the rate or amount of interest or any other charge payable under this Note and Security Agreement should exceed the maximum rate or amount permitted by applicable law, then for such time as such rate or amount would be excessive, its application shall be suspended and there shall be charged instead the maximum rate or amount permitted under such law, and any excess interest or other charge paid by Debtors or collected by Lender shall be refunded to Debtors or credited against the principal amount of this Note and Security Agreement, at the election of Lender or as required by applicable law.

Provision Regarding Interest. As used is this Note and Security Agreement and for the purposes of the current California Constitution, California Codes, and any successor provision thereto regarding "interest", the term "interest" does not include any fees or other charges imposed on

Debtor in connection with this loan other than the interest described in the provisions with the heading Interest Rate, Default Rate, Maximum Rate of Interest.

Notices. Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Note and Security Agreement shall be given as follows, which the parties contemplate will be further amended in the event that Lender transfers or assigns his interest in this Note and Security Agreement, in whole or in part:

> To Lender:      Kevin Perkins
> 205 Sugars Rd.
> ANSTEAD QLD 4070
> Australia
>
> With a copy to (which shall not constitute notice):
>
> Jennifer C. Hayes
> c/o Finestone Hayes LLP
> 456 Montgomery Street, 20th Floor
> San Francisco, CA 94104
> E-mail: jhayes@fhlawllp.com
>
> To Debtors:      23352 Madero Road, Suite B
> Mission Viejo, CA 92691
> Attention: Chris Perkins, President & Chief Services Officer
>
> With a copy to (which shall not constitute notice):
>
> Ori Katz
> c/o Sheppard Mullin
> Four Embarcadero Center, 17th Fl.
> San Francisco, CA 94111
> E-mail: okatz@sheppardmullin.com

Consent to Jurisdiction. The Parties consent to the jurisdiction of the Bankruptcy Court to enforce this Note and Security Agreement. Notwithstanding the foregoing, Lender shall have the right to bring any action or proceeding against Debtors' or Debtors' property in the courts of any other jurisdiction Lender deems necessary or appropriate in order to enforce the obligations of Debtors under this Note and Security Agreement.

WAIVER OF TRIAL BY JURY. DEBTORS' HEREBY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THIS NOTE AND SECURITY AGREEMENT, THE DEED OR ANY ACTS OR OMISSIONS OF LENDER IN CONNECTION THEREWITH.

Assignability. Lender may at any time assign Lender's rights in this Note and Security Agreement and transfer Lender's rights in any or all of the Collateral and Lender thereafter shall be relieved

from all liability with respect to such Collateral. Lender will give Debtors written notice of any such assignment. Debtors may not sell or assign this Note and Security Agreement, or any other agreement with Lender or any portion thereof, either voluntarily or by operation of law, without the prior written consent of Lender. This Note and Security Agreement shall be binding upon Lender and Debtors and their respective legal representatives and successors.

Headings. The headings of the paragraphs set forth in this Note and Security Agreement are for convenience of reference only, and are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

Time of Essence. Time is of the essence of the payment and performance of this Note and Security Agreement.

[Signature Pages to Follow]

IN WITNESS WHEREOF Debtors have duly caused this Note and Security Agreement to be executed and delivered as of the date first written.

**DEBTOR:**

Sizzler USA Acquisition, Inc.,
a Delaware corporation

By: _____
      Name: Timothy Perkins
      Title: Chief Strategy Office

**DEBTOR:**

Sizzler USA Holdings, Inc.,
a Delaware corporation

By: _____
      Name: Timothy Perkins
      Title: Chief Strategy Office

**DEBTOR:**

Sizzler USA Finance, Inc.,
a Delaware corporation

By: _____
      Name: Timothy Perkins
      Title: Chief Strategy Office

**DEBTOR:**

Worldwide Restaurant Concepts, Inc.,
a Delaware corporation

By: _____
      Name: Timothy Perkins
      Title: Chief Strategy Office

**DEBTOR:**

Sizzler USA, Inc.,
a Delaware corporation

By: _____
        Name: Timothy Perkins
        Title: Chief Strategy Office

**DEBTOR:**

Sizzler USA Franchise, Inc.,
a Delaware corporation

By: _____
        Name: Timothy Perkins
        Title: Chief Strategy Office

**DEBTOR:**

Sizzler USA Real Property, Inc.,
a Delaware corporation

By: _____
        Name: Timothy Perkins
        Title: Chief Strategy Office

**DEBTOR:**

Sizzler USA Restaurants, Inc.,
a Delaware corporation

By: _____
        Name: Timothy Perkins
        Title: Chief Strategy Office

**LENDER:**

By: _____
        Name: Kevin Perkins