SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
JEANNIE KIM, Cal. Bar No. 270713
GIANNA SEGRETTI, Cal. Bar No. 323645
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
E mail       okatz@sheppardmullin.com
             jekim@sheppardmullin.com
             gsegretti@sheppardmullin.com

[Proposed] Attorneys for
Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 20-30748 |
| ☐ SIZZLER USA ACQUISITION, INC., a Delaware corporation <br> ☐ SIZZLER USA HOLDINGS, INC., a Delaware corporation <br> ☐ SIZZLER USA FINANCE, INC., a Delaware corporation. <br> ☐ WORLDWIDE RESTAURANT CONCEPTS, INC., a Delaware corporation <br> ☐ SIZZLER USA, INC., a Delaware corporation <br> ☐ SIZZLER USA FRANCHISE, INC., a Delaware corporation <br> ☐ SIZZLER USA REAL PROPERTY, INC., a Delaware corporation <br> ☐ SIZZLER USA RESTAURANTS, INC., a Delaware corporation <br> ☒ ALL DEBTORS, <br><br>  Debtors and <br>  Debtors in Possession. | Joint Administration Requested with Case Nos. 20-30746, 20-51400, 20-51401, 20-51402, 20-51403 <br><br> Chapter 11 Proceeding <br><br> **DEBTORS' EMERGENCY FIRST DAY MOTION FOR ORDER AUTHORIZING DEBTORS TO HONOR PREPETITION OBLIGATIONS TO EMPLOYEES** <br><br> Judge:   Hon. Elaine Hammond <br> Date:    September 22, 2020 <br> Time:    9:30 a.m. <br> Place:   Tele/Videoconference |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................1

II.   STATEMENT OF FACTS ....................................................................2

      A.    The Debtors' Background ...........................................................2

      B.    Need for Relief ...........................................................................2

      C.    Relief Requested by This Motion ...............................................3

      D.    The Debtors' Employees and Prepetition Employee Obligations ............................4

      E.    SUSAR's Employees are Essential to the Debtors' Continued Operations and to Preserve the Value of their Estates .................................6

      F.    Wages and Salaries .....................................................................7

      G.    Employee Benefits ......................................................................7

            1.    Paid Time Off Benefits ......................................................8

            2.    Medical, Dental, and Vision Benefits ................................8

            3.    Life and Accidental Death and Dismemberment Insurance and Long Term Disability Benefits ...................................9

      H.    Employee Reimbursements .........................................................9

III.  ARGUMENT .......................................................................................10

      A.    SUSAR's Employees Are Essential to the Debtors' Continued Operations ............10

      B.    Honoring the Prepetition Employee Obligations is Just and Necessary to Preserve Employee Morale ..........................................11

      C.    The Prepetition Employee-Related Amounts are Within the Priority Claim Cap of Section 507(a)(4) and would be Paid Ahead of Unsecured Creditors .........11

      D.    Reimbursing Employee Business Expenses and Honoring Employee Benefits Programs are Matters that are Within the Debtors' Business Judgment ..................12

      E.    It is in the Best Interests of the Debtors' Estates that Prepetition Payroll and Reimbursement Payments be Paid and the Benefit Programs be Maintained as to Continuing Employees ...................................................13

IV.   EMERGENCY CONSIDERATION .....................................................14

V.    REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS .................14

VI.   RESERVATION OF RIGHTS ..............................................................15

VII.   NOTICE ........................................................................................................15

VIII.  CONCLUSION .............................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SMRH:4825-9413-8570

EMPLOYEE OBLIGATIONS MOTION

# **TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Burchinal v. Central Washington Bank (In re Adams Apple, Inc.)*
  829 F.2d 1484 (9th Cir. 1987) .................................................................11

*Czyzewski v. Jevic Holding Corp.*
  137 S. Ct. 973 (2016) ...........................................................................10

*Dubuque Packing Co. v. Stonitsch (In re Isis Foods, Inc.)*
  37 B.R. 334 (W.D. Mo. 1984), *appeal dismissed,* 738 F. 2d 445 (8th Cir. 1984) ...................13

*In re Eagle-Picher Indus., Inc.*
  124 B.R. 1021 (Bankr. S.D. Ohio 1991) ....................................................13

*In re Equalnet Comm. Corp.*
  258 B.R. 368 (Bankr. S.D. Tex. 2000) ......................................................10

*In re Gulf Air, Inc.*
  112 B.R. 152 (Bankr. W.D. La. 1989) .............................................10, 12, 13

*LTV Corp. v. Aetna Cas. & Surety Co. (In re Chateaugay Corp.)*
  116 B.R. 887 (Bankr. S.D.N.Y. 1990) .............................................10, 12, 13

Statutes

11 U.S.C. § 363(b) ...............................................................................1

11 U.S.C. § 365 ..................................................................................15

11 U.S.C. § 507 ...................................................................................1

11 U.S.C. § 507(a)(4) .......................................................................11, 12

11 U.S.C. § 507(a)(5) .........................................................................7, 13

11 U.S.C. § 1107(a) ..............................................................................2

11 U.S.C. § 1108 ..................................................................................2

Other Authorities

Bankruptcy Rule 6003 .........................................................................14

Bankruptcy Rule 6004 .........................................................................14

Bankruptcy Rule 6004(a) .....................................................................14

Bankruptcy Rule 6004(h) .....................................................................14

4 *Collier on Bankruptcy* ¶ 507.06 (16th ed. rev. 2019).....................................................................10

SMRH:4825-9413-8570

EMPLOYEE OBLIGATIONS MOTION

# I.

## INTRODUCTION

Sizzler USA Acquisition, Inc. ("SUSAA"), Sizzler USA Holdings, Inc. ("SUSAH"), Sizzler USA Finance, Inc. ("SUSAFI"), Worldwide Restaurant Concepts ("WRC"), Sizzler USA, Inc. ("SUSA"), Sizzler USA Franchise, Inc. ("SUSAFR"), Sizzler USA Real Property, Inc. ("SUSARP"), and Sizzler USA Restaurants, Inc. ("SUSAR," and together with SUSAA, SUSAH, SUSAFI, SUSAFR, SUSARP, WRC, and SUSA, collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned bankruptcy cases (collectively, the "Cases"), move this Court, on an emergency basis, for an interim and final order (1) authorizing – but not requiring – SUSAR, the only Debtor in these Cases that has employees, to: (a) pay prepetition employee wage and salary obligations owed by the Debtors to its employees; (b) reimburse ordinary course prepetition employee business expenses in accordance with the Debtors' existing company policy; (c) maintain and honor its existing employee benefits programs in the ordinary course of business; and (d) honor all prepetition paid leave claims (vacation pay, sick leave, jury duty pay) in the ordinary course, and (2) (x) authorizing and directing all banks and other financing institutions to receive, process, honor, and negotiate any and all checks drawn on, and transfers made from, the Debtors' accounts to the extent the checks or transfers are on account of any of the foregoing; and (y) prohibiting all banks from placing any holds on, or attempting to reverse, any automatic transfers on account of the foregoing; and (3) for such additional relief that the Court deems just and proper.

The Debtors bring this motion (the "Motion") pursuant to sections 105(a), 363(b), and 507 of title 11 of the United States Code (the "Bankruptcy Code").  This motion is based on the within discussion and memorandum of points and authorities, the concurrently filed *Declaration of Christopher Perkins in Support of First Day Motions* (the "Perkins Declaration"), the other papers of record in these cases, and upon such further oral and documentary evidence as may be presented prior to or at the time of the hearing on the Motion.

## II.

## STATEMENT OF FACTS

### A. The Debtors' Background

Each of the Debtors is a Delaware corporation. Since 1958 (first as "Del's Sizzler Family Steak House"), the Debtors (and their predecessors in interest) have been in the business of operating, and then franchising, family restaurants. Originally, the Debtors' menu focused on grilled steaks, but later expanding into other items, including their famed "Salad Bar." The Debtors are operating their respective businesses as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code. Specifically, SUSAR operates fourteen company-owned restaurants (all in California) and approximately 93 franchisee- and licensee-owned restaurants in California, Oregon, Washington, Arizona, Nevada, New Mexico, Utah, Idaho, Florida and Puerto Rico. Only the company-owned restaurants are the subject of these bankruptcy Cases. SUSAR also operates a support center and test kitchen facility in California for the company-owned restaurants and operations related to the other Debtors' franchise businesses.

Many of the company-owned restaurant locations were struggling to maintain profitability prior to the pandemic emergency for a variety of reasons, including recent increases to labor costs and local taxes. Since the emergence of pandemic, multiple local and state-wide orders forced SUSAR to cease all operations at the company-owned restaurant locations for extended periods at least twice, ultimately forcing Debtors to seek chapter 11 relief on September 21, 2020 (the "Petition Date"). The Perkins Declaration contains a detailed discussion of the Debtors' background, structure, and the events leading to their chapter 11 cases. By this reference, the discussion contained in the Perkins Declaration is incorporated in this Motion as though fully set forth here.

### B. Need for Relief

The relief requested by this Motion is necessary and appropriate to ensure a smooth transition into chapter 11, to normalize and maintain the Debtors' existing business operations during the turbulent early stages of this bankruptcy case, and to preserve and maximize value for the benefit of the Debtors' creditors. SUSAR operates a chain of restaurant locations in California

as well as a test kitchen facility and a support center for its business and that of the related Debtors' business operations. As SUSAR intends to continue to operate its business post-petition, it is imperative that it retain the support of its employees. Any delay by SUSAR in honoring its prepetition employee obligations will destroy its relationship with its Employees, irreparably impair employee morale, and may cause a mass exodus of Employees. Indeed, the Debtors believe that any failure to honor certain of SUSAR's employee-related obligations in the ordinary course of its business would create hardship and discontent among SUSAR's employees, which would in turn decrease productivity and undermine SUSAR's ability to retain employees and the ability of all of the Debtors to continue normal operations, and ultimately, to preserve and maximize the value of their estates, including the restaurant operations. Without employee support, the Debtors face the imminent risk that their operations will be severely impaired.

If SUSAR cannot assure its employees that it will promptly pay and honor employment-related payments and benefits, employee morale and the Debtors' operations, already severely impacted by the ongoing pandemic emergency, will suffer even further. The Debtors believe that the livelihood of many of SUSAR's employees depends on the income provided through their work for SUSAR. Many of them rely on their wages as their only source of income, and the loss of this income for even a few days may result in a severe financial hardship for them. SUSAR also seeks to honor post-petition (but not pay out), its prepetition paid time off obligations to employees. Additionally, prepetition, a few of SUSAR's employees have incurred a relatively small amount of reimbursable business expenses and allowances in the course of their employment. SUSAR seeks to reimburse these amounts, as the applicable employees would be otherwise personally obligated to pay company expenses. Lastly, SUSAR's employees and their dependents would unduly suffer if they were to be unable to utilize SUSAR's medical benefits, which are particularly essential during the current coronavirus pandemic.

## C.     **Relief Requested by This Motion**

By way of this Motion, the Debtors seek an interim and final order from the Court, substantially in the form attached hereto as Exhibit A. Specifically, the Debtors request an order:

1            1.      Authorizing – but not requiring – SUSAR, the only Debtor in these Cases

2    that has employees, to:

3               a.      Pay prepetition employee wage and salary obligations owed by the

4    Debtors to its employees;

5               b.      Reimburse ordinary course prepetition employee business expenses

6    in accordance with the Debtors' existing company policy;

7               c.      Maintain and honor its existing employee benefits programs in the

8    ordinary course of business; and

9               d.      Honor all prepetition paid leave claims (vacation pay, sick leave,

10   jury duty pay) in the ordinary course, and

11           2.      Authorizing and directing all banks and other financing institutions to

12   receive, process, honor, and negotiate any and all checks drawn on, and transfers made

13   from, the Debtors' accounts to the extent the checks or transfers are on account of any of

14   the foregoing;

15           3.      Prohibiting all banks from placing any holds on, or attempting to reverse,

16   any automatic transfers on account of the foregoing; and

17           4.      For such additional relief that the Court deems just and proper.

18   The relief requested by this Motion therefore is in the best interest of the Debtors'

19   bankruptcy estates and should be approved.

20   **D.**      **The Debtors' Employees and Prepetition Employee Obligations**

21           In total, SUSAR has 481 employees and provides medical and dental benefits to an

22   additional 26 individuals employed by Carson Sizz, LLC (collectively with the 481 SUSAR

23   employees, the "Employees") under a franchise management agreement with that franchisee

24   ("Carson Sizz"). Of these Employees, 203 are "active" and 183 work full time, while 278 are on

25   leave or furlough. Of the employees on leave or furlough, SUSAR continues to provide medical

26   and other benefits to 35 furloughed employees and eight who are on leave. Of the total 481

27   SUSAR employees, 27 full-time Employees work at the Support Center, which runs corporate

28   operations for each of the Debtors and for all of the company-owned restaurants. The Support

SMRH:4825-9413-8570                         EMPLOYEE OBLIGATIONS MOTION

Center staff also provides assistance to other franchise restaurants that the Debtors do not own. The rest of SUSAR's Employees work at the 14 company-owned restaurant locations in California. Of these, 27 are active full-time restaurant managers, while another three managers presently are on leave and two are on furlough. The other Debtors do not currently have any employees.

As of the Petition Date, various amounts of prepetition employee obligations had accrued or were owed but unpaid because, among other things:

1. The Debtors filed these Cases in the midst of SUSAR's customary payroll periods (paychecks are normally distributed every two weeks). As such, various amounts in prepetition payroll liabilities were due and owing as of the Petition Date. SUSAR filed its chapter 11 petition mid-way through one of its regular and customary payroll periods (and the next payroll is due September 25, 2020, and must be funded by September 23, 2020);

2. There is a short "lag" between the time employees are paid and the pay period covered by their paychecks. Paychecks are issued on every other Friday, on account of services rendered to the Debtors through the previous Sunday. The last payday was September 11, 2020, which covered the period August 24, 2020, through September 6, 2020;

3. Some payroll and expense reimbursement checks issued to employees prior to the Petition Date have not yet been presented for payment or have not yet cleared the banking systems and, accordingly, were not honored and paid as of the Petition Date; and

4. Certain other forms of compensation (including sick pay, paid time off, and withholdings for benefit plan contributions) related to services rendered prepetition have not yet been honored because such benefits, although accrued before the Petition Date, were not payable but rather will become payable in the ordinary course of the SUSAR's business.

5

For the reasons discussed below, it is crucial that the Court authorize SUSAR to pay to their employees prepetition wages and salaries and expense reimbursements earned and incurred in the ordinary course, and to honor but not pay certain prepetition benefits.

**E.      SUSAR's Employees are Essential to the Debtors' Continued Operations and to Preserve the Value of their Estates**

SUSAR's Employees are essential to the Debtors' continued operation and viability, as well as the Debtors' ability to fulfill their duties as debtors in possession.  Certain of SUSAR's Support Center Employees are and will be involved in preparing the Debtors' schedules of liabilities and assets and statements of financial affairs in the cases, preparing financial analyses and budgets, preparing monthly operating reports, and overseeing the Debtors' operations.

The filing of this Case has disrupted the Debtors' normal operations.  Unless SUSAR can promptly honor its prepetition employee obligations, the Debtors believe that employee morale will suffer, and many Employees may be unable to meet their own personal obligations in these already trying times.  If that happens, it will lead to the risk that Employees will find employment elsewhere, and the Debtors' business operations will be interrupted in the midst of this critical period.  SUSAR's Support Center Employees are intimately knowledgeable about all of the Debtors' operations and business affairs, as well as about operations at the company-owned restaurants, and their retention is necessary to ensure a timely and efficient bankruptcy process.  Moreover, the SUSAR Employees who are employed at the company-owned restaurants, particularly the restaurant managers, are critical to maintaining restaurant operations necessary to maintain an income stream for the Debtors.  Without SUSAR's Employees, none of the  Debtors will be able to continue to effectively operate its business, and the ability of the Debtors to preserve and maximize the value of their assets – including restaurant operations at the company-owned restaurant locations – will be jeopardized.  Therefore, all major constituencies, including creditors, Employees, and Employee dependents will benefit from SUSAR's ability to pay certain prepetition benefits and expenses to its Employees.

**F.** **Wages and Salaries**

SUSAR administers its payroll obligations through third parties, and its Employees are paid every two weeks (every other Friday) for the work period ending the prior Sunday. The Debtor's average gross payroll for its Employees is approximately $200,000 per two-week period. The total amount of the prepetition wages and salaries owed is collectively approximately $200,000, and no single employee is entitled to an amount in excess of $13,650.

In the ordinary course of business, Automatic Data Processing, Inc. ("ADP") processes and disburses SUSAR's payroll based on data that it receives from SUSAR. ADP calculates the amounts necessary to fund payroll (including payroll taxes, withholdings, and other deductions), and debits SUSAR's account accordingly in advance of payroll and disburses the funds to the Employees and third parties, as applicable, by electronic transfers or by checks.

No employee has received, or will receive, post-petition payment on account of his or her prepetition wages in excess of $13,650, consistent with the statutory cap in Section 507(a)(5) of the Bankruptcy Code.

Failure to approve payment for prepetition employee wages would be a blow to employee morale and could undermine SUSAR's ability to retain its Employees at this critical time period. Many of the Employees are reliant on the timely payment of their wages to cover their monthly living expenses. The Employees' commitment and loyalty to the Debtors is critical to the Debtors' successful navigation of the bankruptcy process.

**G.** **Employee Benefits**

SUSAR's business practice has been to supplement the wages and salaries of its full-time Employees by providing them with certain employee benefit programs. These programs include such standard benefits as paid time off and medical, dental, and vision insurance. SUSAR is continuing these programs in the ordinary course of its business operations, subject to Court approval. The relief sought in this Motion relates only to those unpaid prepetition benefits that were earned in connection with certain of SUSAR's benefit programs as more fully described below.

1.    Paid Time Off Benefits

SUSAR's employees accrue paid time off at the following rates according to the below chart:

| Completed Length of Service | Accrual Rate Per Pay Period | Annual Paid Time Off | Max Accrual |
|---|---|---|---|
| Hire – 1 year* | 3.08 hours* | 80 hours | 80 hours |
| 1 – 4 years | 4.62 hours | 120 hours | 160 hours |
| 5 – 9 years | 5.54 hours | 144 hours | 184 hours |
| 10 years and above | 6.15 hours | 160 hours | 200 hours |

*Managers-in-Training, Restaurant Managers, and General Managers accrue 3.33 hours for their first year of employment.

Upon termination, SUSAR pays all Employees for any accrued but unused paid time off, pursuant to applicable law. By this Motion, the Debtors seek authority, in their sole discretion, to continue to honor SUSAR's paid time off policies in the ordinary course, including to allow Employees post-petition to take paid time off earned prepetition. The Debtors' outstanding PTO liability as of September 20, 2020, was estimated to total $178,664.42. The Debtors are not seeking authority now to compensate Employees for accrued and unused paid time off in the event of a termination. Rather, the Debtors request that any Employees either terminated as a result of this bankruptcy or in the ordinary course of business will retain a claim for such prepetition accrued and unused paid time off.

2.    Medical, Dental, and Vision Benefits

Employees are also entitled to certain medical and dental benefits. SUSAR presently owes $400,651.00 in outstanding medical benefits premiums through the end of 2020; $23,908.00 for dental benefits premiums through the end of 2020; and $4,547.00 in vision benefits premiums through the end of 2020 for its Employees. By this Motion, the Debtors seek authority, in their sole discretion, to continue to honor SUSAR's medical, dental, and vision benefits policies in the ordinary course, including allowing Employees post-petition to utilize such benefits. The Employees' continued ability to utilize SUSAR's medical benefits is particularly crucial given the need for affordable access to healthcare and testing during the global COVID-19 pandemic.

3. <u>Life and Accidental Death and Dismemberment Insurance and Long Term Disability Benefits</u>

SUSAR also provides life and accidental death and dismemberment insurance and long term disability insurance benefits to a few of its key Employees. SUSAR presently owes $5,783.00 in outstanding premiums for its life and accidental death and dismemberment insurance policy through the end of 2020, and $7,709.00 in outstanding premiums for its long term disability insurance policy through the end of 2020. SUSAR likewise seeks the authority to maintain these benefits in the ordinary course, including allowing Employees post-petition to utilize such benefits.

**H.  Employee Reimbursements**

From time to time, the Employees incur miscellaneous expenses related to their jobs, including mileage costs, car allowances, cell phone costs, and other expenses for certain Employees. In particular, eleven employees are reimbursed up to $27.50 each every two weeks for cell phone plans; three employees are reimbursed up to $1,000 each per month for mileage, and five employees are reimbursed on average up to $465 each every two weeks for additional car allowances. Prepetition, SUSAR routinely reimbursed these expenses. Employees generally submit expense reports, including receipts or other backup documentation, in order to receive reimbursement for their business expenses. After receiving approvals, SUSAR would remit payment to the employee.

Based on current information, SUSAR estimates that approximately $302.50 in reimbursements for cell phone plans, $1,500 in reimbursements for mileage, and $2,324 in reimbursements for additional car allowances are outstanding and have not been honored and paid as of the Petition Date. The Debtors are not aware of other reimbursable employee expenses that have not been presented for payment yet or have not cleared the banking systems yet as of the Petition Date. By this Motion, the Debtors seek authority to reimburse Employees for the outstanding prepetition expenses expenses, in order to avoid hardship for the Employees who would otherwise be independently obligated to pay such amounts.

**III.**

**ARGUMENT**

**A.      SUSAR's Employees Are Essential to the Debtors' Continued Operations**

It is generally recognized that the continuation of a stable employee base and harmonious employee relations in operating chapter 11 cases is critical to preserving the value of the bankruptcy estate.[1]  As noted by one court, "the need to pay pre-petition employee wage claims in an ordinary course of business time frame is simple common sense.  Employees are more likely to stay in place and to refrain from actions which could be detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted."  *In re Equalnet Comm. Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000).  The Debtors believe that any failure by SUSAR to pay its prepetition employee-related obligations and otherwise honor such obligations in the ordinary course of business would create great concern and discontent among its Employees and undermine morale, and would therefore endanger SUSAR's ability to retain its Employees.  As discussed above, the Debtors require the services of these Employees to operate their businesses and preserve the value of the bankruptcy estate for creditors.  Due to the Employees' familiarity with the Debtors' business operations, SUSAR's current Employees are crucial to the Debtors' operations on a day-to-day basis, and ultimately, to a successful outcome for creditors.

Courts have often permitted debtors to pay prepetition wage claims in the ordinary course of business in response to a motion filed by the debtor in possession near the beginning of the case.[2]  Furthermore, the relief requested herein is routinely granted in chapter 11 cases that

---

[1] *See, e.g., LTV Corp. v. Aetna Cas. & Surety Co. (In re Chateaugay Corp.)*, 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990); *In re Gulf Air, Inc.*, 112 B.R. 152, 154 (Bankr. W.D. La. 1989) ("[R]etention of skills, organization, and reputation . . . must be considered valuable assets contributing to going concern value and aiding rehabilitation . . . .").

[2] *See e.g., Czyzewski v. Jevic Holding Corp.,* 137 S. Ct. 973, 985 (2016) (recognizing that "'first-day' wage orders" serve "significant Code-related [] objectives"); *see also*, 4 *Collier on Bankruptcy* ¶ 507.06 (16th ed. rev. 2019).

involve a workforce that is critical to the debtor's business operations.[3]  The Debtors cannot afford to lose the services of the Employees during this critical time period.  The Debtors' business cannot continue without SUSAR's workforce.  If the Debtors cannot promptly assure the Employees that SUSAR will honor employment benefits as described above, the Debtors' operations likely will suffer immediate and irreparable harm, due to resulting employee resentment, loss of employee goodwill, and possible attrition, all at this critical time for the Debtors.

**B.** **Honoring the Prepetition Employee Obligations is Just and Necessary to Preserve Employee Morale**

The prepetition employee obligations are critical to the Employees' livelihood.  Many of these Employees rely on their wages as their only source of income.  To them, the loss of this income for even a few days may result in a financial hardship.  Allowing SUSAR to honor its prepetition employee obligations is just under the circumstances because it would reassure the Employees that these essential benefits will not be disrupted.  This would ameliorate the financial difficulties of SUSAR's Employees, which is recognized as one of the reasons for the priority status that the Bankruptcy Code affords the wages of debtors' employees.

The Debtors believe that any failure by SUSAR to honor its prepetition employee obligations would cause hardship to its Employees.  Granting the requested relief and approving these obligations contributes to alleviating the financial hardship of the employees and should be approved.

**C.** **The Prepetition Employee-Related Amounts are Within the Priority Claim Cap of Section 507(a)(4) and would be Paid Ahead of Unsecured Creditors**

Section 507(a) provides fourth priority for:

> (4) allowed unsecured claims, but only to the extent of $13,650 for each individual or corporation, as the case may be, earned within

---

[3] *See, e.g., Burchinal v. Central Washington Bank (In re Adams Apple, Inc.),* 829 F.2d 1484, 1490 (9th Cir. 1987) (courts have permitted the payment of employee prepetition debts when necessary for rehabilitation).

> 180 days before the date of the filing of the petition or the date of
> the cessation of the debtor's business, whichever occurs first, for —
>
> (A) wages, salaries, or commissions, including vacation,
> severance, and sick leave pay earned by an individual…[4]

The wages and other prepetition employee-related obligations accrued within the 180-day period prior to the Petition Date are well within the priority claim cap under section 507(a)(4). The Employees owed these obligations may file claims for these amounts against SUSAR's estate. Such claims would be entitled to section 507(a)(4) priority status and, thus, would be paid ahead of other unsecured claims. As such, the Debtors maintain that the payment of the prepetition employee-related amounts is appropriate and should be approved.

**D.**     **Reimbursing Employee Business Expenses and Honoring Employee Benefits Programs are Matters that are Within the Debtors' Business Judgment**

It is generally recognized that the continuation of a stable employee base and harmonious employee relations in operating chapter 11 cases is critical. As the court stated in *In re Chateaugay Corp.*:

> [E]mployee good will and contentment is an asset which is vital to the continuation of a debtor's business operation and its ability to effectively reorganize during the Chapter 11 process. [citation omitted] In granting Debtors' applications for permission to provide hardship payments to injured workers, this Court determined that the uninterrupted payment of LTV Steel workers' compensation obligations is essential to employee morale and industrial tranquility which, in turn, are critical to a successful reorganization.[5]

The relief requested to make payroll and reimbursement payments for the prepetition period and to honor employee benefit programs in the ordinary course of business is necessary to preserve employee morale and ensure that the Debtors can retain the valuable and experienced employees that are the backbone of their business and will preserve the value of their estates. The

---

[4] 11 U.S.C. § 507(a)(4).

[5] *LTV Corp. v. Aetna Casualty & Surety Co. (In re Chateaugay Corp.),* 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990); *see also In re Gulf Air, Inc.*, 112 B.R. 152, 154 (Bankr. W.D. La. 1989) ("[R]etention of skills, organization, and reputation . . . must be considered valuable assets contributing to going concern value and aiding rehabilitation. . . .").

relief requested will also provide an incentive for employees to continue to provide quality services to SUSAR and its customers and franchisees.

The employee benefit plan payments are further justified because they are within the priority claim cap under Section 507(a)(5) and thus would be paid ahead of other unsecured claims in any event.

**E.      It is in the Best Interests of the Debtors' Estates that Prepetition Payroll and Reimbursement Payments be Paid and the Benefit Programs be Maintained as to Continuing Employees**

As described above, failure to honor payroll payments for the prepetition period and to maintain the benefit programs would be detrimental to SUSAR's employee base and diminish the Debtors' prospects for maximizing the return to their creditors.

Courts frequently have allowed debtors in possession to engage in transactions that encourage employee stability for the good of the debtor's estate and creditors.  In *In re Gulf Air, Inc.*,[6] the court authorized the payment of all prepetition amounts due to the debtor's employees, including salary, expenses, and the payment of prepetition health, life, and workers' compensation premiums.  The court stated:

> While prepetition claims are normally disposed of in a plan of reorganization and in accordance with statutory priorities, there are well-established "necessity of payment" and similar exceptions.
>
> * * * *
>
> The Court finds and concludes that grant of the Debtor's Motion in its entirety is in the best interest of creditors, the Debtor, and its employees, and is "necessary", in fact, indispensable at this time for any successful reorganization.  An air carrier, no less than a rail carrier, is more than the sum of its parts. Despite the capital-intensive nature of the railroad industry, and to a lesser extent, the airline industry, retention of skills, organization, and reputation for performance must be considered valuable assets contributing to going concern value and aiding rehabilitation where that is possible.[7]

---

[6] *In re Gulf Air, Inc.,* 112 B.R. 152 (Bankr. W.D. La. 1989).

[7] *Id.* at 153-54.  *In re Chateaugay Corp.*, 116 B.R. at 898 ("In granting Debtors' applications for permission to provide hardship payments to injured workers, this Court determined that the . . . payment . . . is essential to employee morale . . . ."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (debtor may pay prepetition debt due employees to avert serious threat to continued operations); *Dubuque Packing Co. v. Stonitsch (In re Isis Foods, Inc.)*,

Likewise here, SUSAR's Employees should be allowed their regular benefits and paid time off accruals. These are important components of their compensation. As to paid time off, it would be unfair to penalize those Employees with substantially earned paid time off accruals, which result from Employees' decisions to provide service to the Debtors instead of taking vacation time. The Debtors propose to honor such paid time off and to allow Employees to use it until terminated, in order to reward loyalty to the Debtors.

## IV.

## EMERGENCY CONSIDERATION

The Debtors respectfully request emergency consideration of this Motion pursuant to Rule 6003 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." As previously discussed throughout, the Employees are critical to maintaining the Debtors' business operations and their ability to meet their financial and operational reporting and other obligations in bankruptcy. If the Debtors do not receive the requested relief immediately, their business operations would be severely disrupted at this critical juncture in the chapter 11 cases. Accordingly, the Debtors respectfully submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## V.

## REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

The Debtors respectfully request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above and in the Perkins Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample

---

37 B.R. 334, 336 n.3 (W.D. Mo. 1984), *appeal dismissed,* 738 F. 2d 445 (8th Cir. 1984) ("It would appear that the proposed transfers could be presented in advance to a bankruptcy court for its approval and would thereafter be insulated from attack under section 549 . . . .").

cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## VI.

## RESERVATION OF RIGHTS

Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim of any creditor or interest of any interest holder under applicable bankruptcy or non-bankruptcy law; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an assumption, adoption, or rejection of any agreement, contract, or lease between the Debtors and any third party under section 365 of the Bankruptcy Code. The Debtors reserve all of their rights under the Bankruptcy Code.

## VII.

## NOTICE

Notice of this Motion has been provided by email, phone, or first class mail to: (i) the Office of the U.S. Trustee Region 17, and (ii) the holders of the top twenty largest unsecured claims against each of the Debtors.

No prior request for the relief sought in this Motion has been made by the Debtors to this Court or any other court.

## VIII.

## CONCLUSION

WHEREFORE the Debtors respectfully request entry of an order, substantially in the form attached as **Exhibit A**, granting the relief requested, and providing such other and further relief as is just and proper.

Dated:  September 21, 2020

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____/s/ Ori Katz_____
ORI KATZ
JEANNIE KIM
GIANNA SEGRETTI

Proposed Attorneys for Debtors and Debtors in
Possession

SMRH:4825-9413-8570

-16-

EMPLOYEE OBLIGATIONS MOTION

**EXHIBIT A**

**(Proposed Order)**

SMRH:4825-9413-8570

EMPLOYEE OBLIGATIONS MOTION

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
JEANNIE KIM, Cal. Bar No. 270713
GIANNA SEGRETTI, Cal. Bar No. 323645
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:     415.434.9100
Facsimile:      415.434.3947
E mail          okatz@sheppardmullin.com
                 jekim@sheppardmullin.com
                 gsegretti@sheppardmullin.com

[Proposed] Attorneys for
Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 20-30748 |
| ☐ SIZZLER USA ACQUISITION, INC., a Delaware corporation | Joint Administration Requested with Case Nos. 20-30746 |
| ☐ SIZZLER USA HOLDINGS, INC., a Delaware corporation | Chapter 11 |
| ☐ SIZZLER USA FINANCE, INC., a Delaware corporation. | **[PROPOSED] ORDER APPROVING DEBTORS' EMERGENCY MOTION FOR AN ORDER AUTHORIZING DEBTOR TO HONOR PREPETITION OBLIGATIONS TO EMPLOYEES** |
| ☐ WORLDWIDE RESTAURANT CONCEPTS, INC., a Delaware corporation | |
| ☐ SIZZLER USA, INC., a Delaware corporation | |
| ☐ SIZZLER USA FRANCHISE, INC., a Delaware corporation | Judge:     Hon. Elaine Hammond |
| ☐ SIZZLER USA REAL PROPERTY, INC., a Delaware corporation | Date:      September 22, 2020 |
| ☐ SIZZLER USA RESTAURANTS, INC., a Delaware corporation | |
| ☒ ALL DEBTORS, | |
| Debtors and Debtors in Possession. | |
| Time:     9:30 a.m. Place:    Tele/Videoconference | |

The *Debtors' Emergency First Day Motion for Order Authorizing Debtors to Honor*

*Prepetition Obligations to Employees* (the "Motion"), filed by Sizzler USA Acquisition, Inc.

-1-

("SUSAA"), Sizzler USA Holdings, Inc. ("SUSAH"), Sizzler USA Finance, Inc. ("SUSAFI"),

Worldwide Restaurant Concepts ("WRC"), Sizzler USA Inc. ("SUSA"), Sizzler USA Franchise,

Inc. ("SUSAFR"), Sizzler USA Real Property, Inc. ("SUSARP"), and Sizzler USA Restaurants,

Inc. ("SUSAR," collectively the "Debtors"), on September 21, 2020 as Docket No. __, came

before the Court for hearing on _____, 2020 at [ : ] [a.m]/[p.m.]. Appearances were as

noted on the record. Based upon the Court's review of the Motion, the declarations and other

pleadings filed in support of the Motion, the arguments of counsel at the hearing on the Motion,

and all pleadings and evidence of record in this case,

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED. Capitalized terms not defined in this Order shall have the meanings given to them in the Motion.

2. SUSAR is authorized, but not required, in its sole discretion:

(a) to pay the prepetition wages and salaries owed to its Employees, including payroll and reimbursement requests in an amount up to the cap of $13,650 per Employee under section 507(a)(4) of the Bankruptcy Code (except as otherwise noted in the Motion); and

(b) to pay any prepetition claims arising from SUSAR's employee benefit plans and programs and otherwise honor, in the ordinary course of business, existing employee benefit plans and programs and paid time off accruals, including medical and dental benefits and all related costs and expenses, as such policies were in effect as of the commencement of this Case, even if so doing involves honoring prepetition claims.

3. All Banks and other financial institutions are authorized and directed to receive, process, honor, and negotiate all checks drawn on, and transfers made from, the Debtors' accounts and presented for payment on account of the Debtors' wage, salary, expense reimbursement, and employee benefit plan or program obligations. The Banks shall not be liable to any party on account of: (a) following the Debtors' representations, instructions, or presentations as to any order of the Court (without any duty of further inquiry); (b) the honoring of any prepetition checks, drafts, wires, or ACH Payments in a good faith belief or upon a representation by the

-2-

1 Debtors that the Court has authorized such prepetition check, draft, wire, or ACH Payments; or (c)

2 an innocent mistake made despite implementation of reasonable handling procedures.

3        4.      Nothing in this Order: (i) is intended or shall be deemed to constitute an

4 assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as

5 to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive,

6 or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or

7 amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or

8 otherwise affect the rights of the Debtors or their estates with respect to any and all claims or

9 causes of action against any third party; or (iv) shall be construed as a promise to pay a claim or

10 continue any applicable program post-petition, which decision shall be in the discretion of the

11 Debtors. Any payment made pursuant to this Order is not intended to be nor should it be

12 construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to

13 subsequently dispute such claim.

14        5.      Notwithstanding anything to the contrary contained in this Order, any payment

15 made or other action taken by the Debtors pursuant to the authority granted herein, as well as the

16 exercise of any and all other rights and authorizations granted or approved hereunder, shall be

17 subject in all respects to any final orders regarding the Debtors' use of cash collateral approved by

18 this Court in these Chapter 11 Cases (the "Cash Collateral Order").

19        6.      In the event of any inconsistency between the terms or conditions of this Order and

20 the terms or conditions of the Cash Collateral Order, the provisions of the Cash Collateral Order

21 shall govern and control.

22        7.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

23        8.      Notice of the Motion as provided therein shall be deemed good and sufficient

24 notice of such Motion under the circumstances, and the requirements of Bankruptcy Rule 6004(a)

25 and the Local Rules are satisfied by such notice.

26        9.      Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and

27 conditions of this Order shall be immediately effective and enforceable upon its entry.

28

1         10.     The Debtors are authorized to take all such actions as are necessary or appropriate

2  to implement the terms of this Order.

3         11.     A final hearing to consider the relief requested in the Motion shall be held on

4  [_____] at [_____] (prevailing Pacific Time) and any objections or responses

5  to the Motion shall be filed and served so as to be actually received on or prior to

6  [_____] at [_____] (prevailing Pacific Time).

7         12.     This Court shall retain jurisdiction to hear and determine all matters arising from or

8  related to the implementation, interpretation, or enforcement of this [Interim] Order.

**\*\*\*END OF PROPOSED ORDER\*\*\***

Case: 20-30748   Doc# 8   Filed: 09/21/20   Entered: 09/21/20 16:45:04   Page 26 of 27

FIRST DAY EMPLOYEE OBLIGATIONS MOTION
Exhibit A

Case: 20-30748  Doc# 8  Filed: 09/21/20  Entered: 09/21/20 16:45:04  Page 27 of 27

EMPLOYEE BENEFITS MOTION

Exhibit A