1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2  Including Professional Corporations
   ORI KATZ, Cal. Bar No. 209561
3  JEANNIE KIM, Cal. Bar No. 270713
   GIANNA SEGRETTI, Cal. Bar No. 323645
4  Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4109
5  Telephone:    415.434.9100
   Facsimile:    415.434.3947
6  E mail       okatz@sheppardmullin.com
                jekim@sheppardmullin.com
7               gsegretti@sheppardmullin.com

8  Attorneys for Debtors and Debtors in Possession

9              UNITED STATES BANKRUPTCY COURT

10       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

11

12
   In re                                    Case No. 20-30748
13
   ☐ SIZZLER USA ACQUISITION, INC., a       Jointly Administered with Case Nos.
14    Delaware corporation                  20-30746, 20-51400, 20-51401, 20-51402,
   ☐ SIZZLER USA HOLDINGS, INC., a          20-51403, 20-51404, 20-51405
15    Delaware corporation
   ☐ SIZZLER USA FINANCE, INC., a           Chapter 11 Proceeding
16    Delaware corporation.
   ☐ WORLDWIDE RESTAURANT                   **MEMORANDUM OF POINTS AND**
17    CONCEPTS, INC., a Delaware            **AUTHORITIES IN SUPPORT OF**
      corporation                           **DEBTORS' SECOND AMENDED PLAN**
18 ☐ SIZZLER USA, INC., a Delaware          **OF REORGANIZATION, DATED**
      corporation                           **JANUARY 2, 2021**
19 ☐ SIZZLER USA FRANCHISE, INC., a
      Delaware corporation                  Plan Confirmation Hearing:
20 ☐ SIZZLER USA REAL PROPERTY, INC.,       Date:   January 5, 2021
      a Delaware corporation                Time:   10:15 a.m.
21 ☐ SIZZLER USA RESTAURANTS, INC., a       Place:  Videoconference via Zoom
      Delaware corporation                  Judge:  Hon. M. Elaine Hammond
22 ☒ ALL DEBTORS,

23              Debtors and
                Debtors in Possession.
24

25

26

27

28

SMRH:4845-4309-7045.3                                        PLAN CONFIRMATION BRIEF

# **TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ........................................................................................................ 1

II. FACTUAL BACKGROUND ...................................................................................... 2

III. ARGUMENT ............................................................................................................. 4

    A.    The Plan is Fair and Equitable Pursuant to Section 1191(c). ........................ 5

        1.    The Plan is Fair and Equitable with Respect to Secured Claims. ........ 5

        2.    The Plan is Fair and Equitable with Respect to Unsecured Claims. ............ 5

        3.    The Plan Satisfies Section 1191(c)(3). ................................................ 6

    B.    The Plan Complies With Bankruptcy Code Section 1129(a)(1). ........................... 6

        1.    The Plan Complies With The Classification Requirements Of Bankruptcy Code Section 1122. ................................................... 7

        2.    The Plan Contains All Mandatory Provisions And Certain Permissive Provisions Set Forth In Bankruptcy Code Section 1123. ........... 8

            a.    Compliance With Bankruptcy Code Section 1123(a)(1) (Classification of Claims)................................................. 8

            b.    Compliance With Bankruptcy Code Section 1123(a)(2) (Specification of Unimpaired Classes and Interests). ...................... 9

            c.    Compliance With Bankruptcy Code Section 1123(a)(3) (Specification of Treatment of Impaired Classes and Interests). ....................................................................... 9

            d.    Compliance With Bankruptcy Code Section 1123(a)(4) (Provide Same Treatment For Each Claim or Interest Within a Class). ............................................................... 10

            e.    Compliance With Bankruptcy Code Section 1123(a)(5) (Adequate Means for Implementation of Plan)............................. 10

            f.    Compliance With Bankruptcy Code Section 1123(a)(6) (Amendment to Corporate Charter). ................................. 11

            g.    Compliance With Bankruptcy Code Section 1123(a)(7) (Selection of Trustee). ...................................................... 11

            h.    Section 1123(a)(8) Does Not Apply............................................. 12

            i.    Compliance With Bankruptcy Code Section 1123(b) (Permissive Plan Provisions)........................................... 12

    C.    The Plan Proponents Have Complied With The Requirements Of Bankruptcy Code Section 1129(a)(2) (Compliance With Applicable

SMRH:4845-4309-7045.3

PLAN CONFIRMATION BRIEF

| | | | Provisions of Title 11). .............................................. 13 |
|---|---|---|---|
| | D. | | The Plan Satisfies the Other Plan Requirements of Section 1129(a), with the Exception of Section 1129(a)(8). .............................................. 13 |
| | | 1. | The Plan Has Been Proposed In Good Faith In Compliance With Bankruptcy Code Section 1129(a)(3). .............................................. 13 |
| | | 2. | The Plan Complies With The Requirements Of Bankruptcy Code Section 1129(a)(4) (Payment for Services or Costs in Connection With the Case). .............................................. 15 |
| | | 3. | The Plan Complies With Bankruptcy Code Section 1129(a)(5) Regarding the Identity of Officers, Directors, and Insiders. ............ 16 |
| | | 4. | The Plan Complies With Bankruptcy Code Section 1129(a)(6) Regarding Governmental Regulatory Approval of Rates. ............ 16 |
| | | 5. | The Plan Satisfies the Requirements Of Bankruptcy Code Section 1129(a)(7) ("Best Interest" Test). .............................................. 16 |
| | | 6. | Under Section 1191(b) the Plan is Confirmable Not Withstanding Section 1129(a)(8) Requiring Each Class of Claims and Interests to Be Either Unimpaired or to Have Accepted the Plan. ............ 17 |
| | | 7. | The Plan Complies With Bankruptcy Code Section 1129(a)(9). ............ 18 |
| | | 8. | The Plan Has Been Accepted by at Least One Impaired Class in Compliance With Bankruptcy Code Section 1129(a)(10). ............ 18 |
| | | 9. | The Plan is Feasible and in Compliance with Bankruptcy Code Section 1129(a)(11). .............................................. 18 |
| | | 10. | The Debtor Will Pay on or Before the Effective Date All Fees Payable Under 28 U.S.C. § 1930 in Compliance With Bankruptcy Code Section 1129(a)(12). .............................................. 20 |
| | | 11. | Section 1129(a)(13) Regarding Retiree Benefits Does Not Apply. ............ 20 |
| | | 12. | Section 1129(a)(14) Regarding Domestic Support Obligations Does Not Apply. .............................................. 20 |
| | | 13. | Section 1129(a)(15) Does Not Apply. .............................................. 21 |
| | E. | | The Plan Complies With Bankruptcy Code Section 1129(d) Because The Principal Purpose Of The Plan Is Not To Avoid Taxes Or Applicable Securities Laws. .............................................. 21 |
| IV. CONCLUSION | | | .............................................. 21 |

-ii-

SMRH:4845-4309-7045.3

PLAN CONFIRMATION BRIEF

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*In re Acequia, Inc.*
787 F.2d 1352 (9th Cir. 1986) ................................................................. 18

*Brady v. Andrew (In re Commercial Western Fin. Corp.)*
761 F.2d 1329 (9th Cir. 1985) ................................................................. 4, 8

*In re Corey*
892 F.2d 829 (9th Cir. 1989) ................................................................. 13

*In re Drexel Burnham Lambert Group*
138 B.R. 723 (Bankr. S.D.N.Y. 1992) ................................................................. 16

*In re Eagle-Picher Indus., Inc.*
203 B.R. 256 (Bankr. S.D. Ohio 1996) ................................................................. 14

*In re Elsinore Shore Assocs.*
91 B.R. 238 (Bankr. N.J. 1988) ................................................................. 15

*Fla. Partners Corp. v. Southeast Co. (In re Southeast Co.)*
868 F.2d 335 (9th Cir. 1989) ................................................................. 10

*In re Future Energy Corp.*
83 B.R. 470 (Bankr. S.D. Ohio 1988) ................................................................. 15

*In re Haardt*
65 B.R. 697 (Bankr. E.D. Pa. 1986) ................................................................. 8

*Hanson v. First Bank of South Dakota*
828 F.2d 1310 (8th Cir. 1987) ................................................................. 13

*In re Jeppson*
66 B.R. 269 (Bankr. D. Utah 1986) ................................................................. 13

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*
843 F.2d 636 (2d Cir. 1988) ................................................................. 6

*In re Montclair Retail Ctr., L.P.*
177 B.R. 663 (B.A.P. 9th Cir. 1995) ................................................................. 7

*In re Patrician St. Joseph Partners*
169 B.R. 669 (Bankr. D. Ariz. 1994) ................................................................. 18

*Resorts Int'l., Inc. v. Lowenschuss (In re Lowenschuss)*
67 F.3d 1394 (9th Cir. 1995) ................................................................. 6

*In re Rexford Properties LLC*
    558 B.R. 352 (Bankr. C.D. Cal. 2016) ..................................................................7

*In re Smith*
    123 B.R. 863 (Bankr. C.D. Cal. 1991) ..................................................................9

*Steelcase Inc. v. Johnston (In re Johnston)*
    21 F.3d 323 (9th Cir. 1994)....................................................................................7

*In re Stolrow's Inc*
    84 B.R. 167 (B.A.P. 9th Cir. 1988) .....................................................................13

*In re Sylmar Plaza, L.P.*
    314 F.3d 1070 (9th Cir. 2002) .............................................................................14

*In re Texaco Inc.*
    84 B.R. 893 (Bankr. S.D.N.Y. 1988), *appeal dismissed* 92 B.R. 38 (S.D.N.Y. 1988)........................................................................................................................6

*In re Toy & Sports Warehouse, Inc.*
    37 B.R. 141 (Bankr. S.D.N.Y. 1984) .............................................................12, 13

*United States v. Energy Resources Co.*
    495 U.S. 545 (1990) .............................................................................................18

*In re WCI Cable, Inc.*
    282 B.R. 457 (Bankr. D. Or. 2002) .....................................................................18

Federal: Statutes, Rules, Regulations, Constitutional Provisions

11 U.S.C.
    §§ 101 *et seq.*...........................................................................................................2
    § 507(a)(2) ...............................................................................................................8
    § 507(a)(3) ...............................................................................................................8
    § 507(a)(8) ...............................................................................................................8
    § 1121 ....................................................................................................................12
    § 1121(c) ................................................................................................................13
    § 1122 ..................................................................................................................6, 7
    § 1122(a) ..............................................................................................................7, 8
    § 1123 ..................................................................................................................6, 8
    § 1123(a) ..................................................................................................................8
    § 1123(a)(1) ...........................................................................................................8, 9
    § 1123(a)(2) ..............................................................................................................9
    § 1123(a)(3) ..............................................................................................................9
    § 1123(a)(3) ..............................................................................................................9
    § 1123(a)(4) .........................................................................................................9, 10
    § 1123(a)(5) .......................................................................................................10, 11
    § 1123(a)(6) ............................................................................................................11
    § 1123(a)(7) ............................................................................................................11
    § 1123(a)(8) ............................................................................................................11

SMRH:4845-4309-7045.3
              -iv-
              PLAN CONFIRMATION BRIEF

§ 1123(b) ............................................................................................8, 11, 12
§ 1123(b)(1) ..................................................................................................12
§ 1124 ............................................................................................................9
§ 1125 ....................................................................................................12, 13
§ 1125(b) .....................................................................................................13
§ 1126 ..........................................................................................................13
§ 1126(c) ......................................................................................................17
§ 1128(a)(7) .................................................................................................16
§ 1129 ............................................................................................................4
§ 1129(a) ......................................................................................................13
§ 1129(a)(1) ...................................................................................................6
§ 1129(a)(2) .............................................................................................12, 13
§ 1129(a)(3) .............................................................................................13, 14
§ 1129(a)(4) .................................................................................................15
§ 1129(a)(5) .................................................................................................15
§ 1129(a)(5)(A)(i) .........................................................................................15
§ 1129(a)(6) .................................................................................................15
§ 1129(a)(7) ............................................................................................16, 17
§ 1129(a)(8) ......................................................................................4, 13, 17
§ 1129(a)(9) .................................................................................................17
§ 1129(a)(10) .........................................................................................4, 18
§ 1129(a)(11) ...............................................................................................18
§ 1129(a)(12) ...............................................................................................17
§ 1129(a)(13) .........................................................................................19, 20
§ 1129(a)(14) ...............................................................................................20
§ 1129(a)(15) ...............................................................................................20
§ 1129(b) ........................................................................................................4
§ 1129(b)(2)(A) ..............................................................................................5
§ 1129(b)(2)(A)(i) ...........................................................................................5
§ 1129(b)(2)(A)(ii) ..........................................................................................5
§ 1129(c) ........................................................................................................4
§ 1129(d) ................................................................................................20, 21
§ 1191 ....................................................................................................4, 21
§ 1191(b) ...........................................................................................4, 17, 18
§ 1191(c)(1) ......................................................................................4, 5, 17
§ 1191(c)(2)(A) ...............................................................................................5
§ 1191(c)(3) ............................................................................................5, 6
§ 1191(c)(3)(A) .......................................................................................18, 19
§ 1191(c)(3)(B) .......................................................................................18, 19
§ 1191(d)(2) ...................................................................................................5
§ 1193(a) ........................................................................................................3

28 U.S.C.
§ 1930 ..........................................................................................................19
§ 1930 ..........................................................................................................19
§ 1930(a)(6) ..................................................................................................19

Bankruptcy Code

§ 502 .................................................................................................................................7
§ 507(a) ............................................................................................................................7
§ 1107(a) ..........................................................................................................................2
§ 1108 ...............................................................................................................................2
§ 1123(b)(2) ....................................................................................................................12
§ 1181 .............................................................................................................................11
§ 1181(a) ....................................................................................................................4, 13
§ 1189(a) ........................................................................................................................13
§ 1191(a) ....................................................................................................................4, 20
§ 1191(b) ........................................................................................................................20
§ 1191(c)(1) ......................................................................................................................5
§ 1191(d) ...............................................................................................................5, 6, 19
§ 1191(e) ........................................................................................................................17

## I.

## INTRODUCTION

The Plan[1] filed by plan proponents Sizzler USA Acquisition, Inc. ("SUSAA"), Sizzler USA Holdings, Inc. ("SUSAH"), Sizzler USA Finance, Inc. ("SUSAFI"), Worldwide Restaurant Concepts ("WRC"), Sizzler USA, Inc. ("SUSA"), Sizzler USA Franchise, Inc. ("SUSAFR"), Sizzler USA Real Property, Inc. ("SUSARP"), and Sizzler USA Restaurants, Inc. ("SUSAR," and together with SUSAA, SUSAH, SUSAFI, WRC, SUSA, SUSAFR, and SUSARP (collectively, the "Debtors" or "Plan Proponents") seeks to reorganize the Debtors' business under subchapter V of chapter 11 of the Bankruptcy Code[2] ("Subchapter V") by, among other things, infusing much-needed capital into the business through postpetition financing previously approved by this Court, rejecting certain unexpired non-residential real property leases for unprofitable store locations, and assuming the unexpired non-residential real property leases for profitable locations at more favorable terms given the present challenges faced by the domestic restaurant industry.

While only one creditor, the Operating Affiliates of Sysco Corporation ("Sysco"), voted in favor of the Plan, no creditors voted to reject the Plan and the remaining creditors entitled to vote abstained from submitting ballots. Moreover, Sysco's vote represents $956,129.50 or 85.4% of all Class 3(a) claims (totaling $1,119,798.92). Only two objections to confirmation of the Plan were lodged—one from the Subchapter V Trustee, Mark Sharf (the "Trustee"), and another from a landlord, who was unimpaired and not entitled to vote at the time the Plan and ballots were submitted and only asserts its impairment and entitlement to vote after withdrawing its assent to a negotiated agreement with the Debtors. No other plan of reorganization or liquidation has been proposed in this case.

---

[1] The "Plan" or "Second Amended Plan" shall refer to *Sizzler USA Acquisition, Inc., Sizzler USA Holdings, Inc., Sizzler USA Finance, Inc., Worldwide Restaurant Concepts, Sizzler USA Inc., Sizzler USA Franchise, Inc., Sizzler USA Real Property, Inc., and Sizzler USA Restaurants, Inc.'s Second Amended Plan of Reorganization, Dated January 2, 2021* filed on January 2, 2021, as Docket No. 114, and as may be amended and modified from time to time.

[2] Unless otherwise indicated, all section references in this Memorandum shall be to 11 U.S.C. §§ 101 *et seq.*

Most importantly, the Plan satisfies the Bankruptcy Code's fair and equitable standards for Subchapter V cases by providing the impaired classes of general unsecured claimants (the "GUCs") a pro rata distribution of the Debtors' $337,000 in projected disposable income over the course of five years which will result in either a 17% recovery by the GUCs according to the Plan's Scenario A or 8.5% under Scenario B. Under either scenario, the GUCs will fare better under the Plan than in a liquidation where they would receive nothing. The Plan Proponents therefore request that the Court issue an order confirming the Plan.

By this Memorandum, which is supported by the *Declaration of Christopher Perkins in Support of Confirmation of the Second Amended Plan and Omnibus Reply to Objections to Plan Confirmation* (the "Perkins Declaration") filed concurrently herewith, as well as the facts, evidence, and pleadings of record in this case, the Debtors respectfully request that the Court find that the Plan meets all of the requirements of the Bankruptcy Code and enter an order confirming the Plan over the Objections (defined herein) filed by the Trustee and the Kwak Family Trust (defined herein).

## II.

## FACTUAL BACKGROUND[3]

The Debtors have been in the business of operating and franchising family restaurants focused on grilled steaks and their famous "Salad Bar" since 1958. On September 21, 2020 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their business as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

On November 16, 2020, the Debtors jointly filed *Sizzler USA Acquisition, Inc., Sizzler USA Holdings, Inc., Sizzler USA Finance, Inc., Worldwide Restaurant Concepts, Sizzler USA Inc., Sizzler USA Franchise, Inc., Sizzler USA Real Property, Inc., and Sizzler USA Restaurants, Inc.'s*

---

[3] The background of the Debtors is described in greater detail *Declaration of Christopher Perkins in Support of First Day Motions* filed on September 21, 2020, as Docket No. 13, and incorporated herein by this reference.

Case: 20-30748   Doc# 116   Filed: 01/02/21   Entered: 01/02/21 22:38:50   Page 9 of 28

1  *Plan of Reorganization, Dated November 16, 2020* as Docket No. 81 (the "Original Plan").  On

2  November 19, 2020, the Court held a Plan Review Conference and considered the form of the

3  Original Plan and whether it contains the mandatory provisions required by the Bankruptcy Code.

4  At the Plan Review Conference, the Court noted minor comments on the Original Plan and

5  directed the Debtors to amend and revise the Original Plan to incorporate such comments.  The

6  Court further determined that, subject to amendment to incorporate the Court's comments, the

7  Original Plan contained mandatory provisions required by the Bankruptcy Code and directed that,

8  if the Debtors amended the Original Plan and filed and served such amended plan on or before

9  November 30, 2020, the Court would set a confirmation hearing for January 5, 2021, and related

10  deadlines.

11         Thereafter, on November 25, 2020, the Court entered the *Order Setting Confirmation*

12  *Hearing and Related Deadlines* as Docket No. 91 (the "Confirmation Hearing Order") and set a

13  confirmation hearing for January 5, 2021, at 10:15 a.m. via Zoom videoconference.  The

14  Confirmation Hearing Order set 4:00 p.m. prevailing Pacific Time on December 29, 2020, as the

15  deadline for creditors and parties in interest to submit ballots accepting or rejecting the Debtors'

16  plan and objections to confirmation of the Debtors' plan.  In accordance with the Confirmation

17  Hearing Order, the Debtors filed *Sizzler USA Acquisition, Inc., Sizzler USA Holdings, Inc., Sizzler*

18  *USA Finance, Inc., Worldwide Restaurant Concepts, Sizzler USA Inc., Sizzler USA Franchise,*

19  *Inc., Sizzler USA Real Property, Inc., and Sizzler USA Restaurants, Inc.'s Amended Plan of*

20  *Reorganization, Dated November 30, 2020* on November 30, 2020, as Docket No. 92 (the "First

21  Amended Plan").

22         Subsequently, the Debtors realized that the First Amended Plan inadvertently did not

23  provide for treatment of a contingent claim in favor of JP Morgan Chase Bank, N.A. or its

24  subsidiaries ("JPMC") on account of that certain Note entered into by and between SUSAR and

25  JPMC on or about April 9, 2020 (the "PPP Loan"), under the Paycheck Protection Program

26  ("PPP") administered by the U.S. Small Business Administration in accordance with the

27  Coronavirus Aid, Relief, and Economic Security Act.  To address the PPP Loan, the Debtors

28  further amended the First Amended Plan and filed the *Notice of Modification of Debtors'*

Case: 20-30748   Doc# 116   Filed: 01/02/21   Entered: 01/02/21 22:38:50   Page 10 of 28

*Amended Plan of Reorganization Under Section 1193(a) for Small Business Under Chapter 11* on December 11, 2020, as Docket No. 97 and attached thereto as Exhibit 1 a redlined version of the First Amended Plan (the "Plan Modification"), which provides for treatment of JPMC's contingent claim in connection with the PPP Loan.

On December 29, 2020, Trustee filed the Trustee's Objections to Debtors' First Amended Chapter 11 Plan as Docket No. 108 (the "Trustee Objection") and thereby objected to the First Amended Plan, as modified by the Plan Modification. On the same date, Steve N. Kwak and Sook Hyan Kwak, Trustees of the 2010 Kwak Family Trust filed the *Notice of Objection by Steve N. Kwak and Sook Hyan Kwak, Trustees of the 2010 Kwak Family Trust to Debtors' Plan of Reorganization* as Docket No. 111 (the "Kwak Objection," and together with the Trustee Objection, collectively, the "Objections"). In response, the Debtors are filing concurrently herewith: (a) the Second Amended Plan[4]; (b) the *Debtors' Omnibus Reply to: (1) Trustee's Objections to Debtors' First Amended Chapter 11 Plan; and (2) Notice of Objection by Steve N. Kwak and Sook Hyan Kwak, Trustees of the 2010 Kwak Family Trust to Debtors' Plan of Reorganization* (the "Reply"); and (c) the Perkins Declaration. As discussed in greater detail in the Reply, the Debtors respectfully request that the Court overrule the Objections and confirm the Plan on the grounds set forth in the Reply and this Memorandum.

**III.**

**ARGUMENT**

Under Bankruptcy Code section 1191(a), the Court "shall" confirm a plan filed under Subchapter V of chapter 11 of the Bankruptcy Code if all of the applicable confirmation requirements set forth in Bankruptcy Code section 1129 are satisfied. 11 U.S.C. § 1191; *see Brady v. Andrew (In re Commercial Western Fin. Corp.)*, 761 F.2d 1329, 1338 (9th Cir. 1985). Pursuant to Bankruptcy Code section 1181(a), however, sections 1129(b), (c), and (e) do not apply to Subchapter V cases. Additionally, pursuant to section 1191(b), a plan is entitled to

---

[4] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan.

4

SMRH:4845-4309-7045.3                                                                 PLAN CONFIRMATION BRIEF

confirmation notwithstanding satisfaction of sections 1129(a)(8), (10), and (15), if the plan "is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1191(b). As discussed below, the Plan meets the fair and equitable standard as set forth in section 1191(c) and satisfies all of the applicable confirmation requirements of section 1129. Therefore, the Plan is entitled to confirmation.

**A.** **The Plan is Fair and Equitable Pursuant to Section 1191(c).**

In a Subchapter V case, the Plan is entitled to confirmation even without cram down or acceptance from all impaired classes as long as the Plan is "fair and equitable" as defined in Section 1191(c).

1.    The Plan is Fair and Equitable with Respect to Secured Claims.

Under Bankruptcy Code section 1191(c)(1), the Plan is fair and equitable with respect to secured claims if the Plan satisfies section 1129(b)(2)(A) which, in relevant part, requires under the plan that the holder of a secured claim retain its liens securing its claim and receive on account of such claim deferred cash payments totaling at least the amount of the allowed claim as of the effective date of the plan, or the realization by the holder of such claim of the indubitable equivalent of its claim. *See* 11 U.S.C. §§ 1191(c)(1), 1129(b)(2)(A)(i) & (ii).

Here, Classes 2(a), 2(b), and 2(c) account for all holders of secured claims. Each such class is unimpaired under the Plan. The holders of such claims will retain their interests under the relevant agreements between the Debtors and the secured claimants, and the security agreements will remain unchanged. The Plan is therefore fair and equitable with respect to the classes of holders of secured claims.

2.    The Plan is Fair and Equitable with Respect to Unsecured Claims.

With respect to unsecured claims in a Subchapter V case, the Plan is fair and equitable if "all of the projected disposable income of the debtor to be received in the … period … will be applied to make payments under the plan …" 11 U.S.C. § 1191(c)(2)(A). Section 1191(d), as relevant here, defines disposable income as "income … that is not reasonably necessary to be expended … for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor." 11 U.S.C. § 1191(d)(2).

Case: 20-30748    Doc# 116    Filed: 01/02/21    Entered: 01/02/21 22:38:50    Page 12 of
28

Here, the Plan Proponents have projected the Debtors' projected disposable income according to section 1191(d) will be $337,000 over the five-year term of the Plan. Under the Plan, the entire $337,000 of projected disposable income will be used to make pro rata payments over the life of the Plan to the impaired Classes of general unsecured claimants. The Plan therefore is fair and equitable within the meaning of section 1191(c)(2)(A) with respect to the treatment of the Classes of unsecured claims.

### 3. The Plan Satisfies Section 1191(c)(3).

Pursuant to section 1191(c)(3) there must be a reasonable likelihood that the debtor will be able to make all payments under the plan and the plan must provide an appropriate remedy to protect the holders of claims and interests in the event payments are not made. *See* 11 U.S.C. § 1191(c)(3).

As discussed further below and in the Plan, the Plan Proponents project that they will have $337,000 in disposable income as defined in section 1191(d) over the five-year life of the Plan. In the event that the Debtors fall short of that amount, Kevin Perkins (the "DIP Lender") has pledged to provide the Debtors with $1,000,000 in immediately available cash (the "Exit Financing") as necessary to use for both operational costs and the satisfaction of any payments under the Plan. Pursuant to the Plan Proponents' projections as set forth in the Plan, there is a reasonable likelihood that the Debtors will be able to make all payments under the Plan, and the Plan provides for an appropriate remedy in the form of the Exit Financing in the event the Debtors' actual disposable income falls short of the projected disposable income. The Plan therefore satisfies section 1191(c)(3).

## B. The Plan Complies With Bankruptcy Code Section 1129(a)(1).

Bankruptcy Code section 1129(a)(1) requires that a plan comply with the "applicable provisions of this title." *See* 11 U.S.C. § 1129(a)(1); *Resorts Int'l., Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401 (9th Cir. 1995). "[T]he legislative history of Subsection 1129(a)(1) suggests that Congress intended the phrase 'applicable provisions' in this Subsection to mean provisions of Chapter 11 that concern the *form* and *content* of reorganization plans..." *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 648-49 (2d

Case: 20-30748   Doc# 116   Filed: 01/02/21   Entered: 01/02/21 22:38:50   Page 13 of 28

Cir. 1988) (emphasis added). The two applicable provisions relating to the form and content of a plan of reorganization are Bankruptcy Code sections 1122 and 1123, which govern classification of claims and interests and the contents of a plan, respectively. *See In re Texaco Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988), *appeal dismissed* 92 B.R. 38 (S.D.N.Y. 1988) ("In determining whether a plan complies with section 1129(a)(1), reference must be made to Code §§ 1122 and 1123 with respect to classification of claims and the contents of a plan of reorganization."). As demonstrated below, the Plan complies with both Bankruptcy Code sections 1122 and 1123, and thus satisfies the requirements of Subsection 1129(a)(1).

1. The Plan Complies With The Classification Requirements Of Bankruptcy Code Section 1122.

Section 1122(a) of the Bankruptcy Code requires that each claim or interest within a class be substantially similar to all other claims or interests within that class. *See* 11 U.S.C. § 1122(a). Courts are afforded broad discretion to decide the propriety of classification in plans in light of the facts of each case. *See Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994). A plan proponent is afforded significant flexibility in classifying claims under § 1122(a) provided there is a reasonable, non-discriminatory basis for the classification scheme and all claims within a particular class are substantially similar. *In re Montclair Retail Ctr., L.P.*, 177 B.R. 663, 665 (B.A.P. 9th Cir. 1995) (citing *In re Johnston, supra*); *In re Rexford Properties LLC*, 558 B.R. 352, 361 (Bankr. C.D. Cal. 2016).

Here, the Plan's classification of Claims satisfies the requirements of Bankruptcy Code section 1122. In total, there are sixteen classes of claims in the Plan which are divided into one class of priority claims, three classes of secured claims, ten classes of non-priority unsecured claims, and two classes of equity security holders. More specifically, Class 1 consists of allowed claims entitled to priority under Bankruptcy Code section 507(a) for accrued but unliquidated employee wages, salaries, commissions, and benefits. Class 2, consisting of secured claims of lenders, is divided into the subclasses for loans made by (a) Kevin Perkins ("Class 2(a)"), (b) U.S. Bank ("Class 2(b)"), and (c) Royal Bank America Leasing, L.P., fka Harbour Capital ("Class 2(c)"). Class 3, consisting of non-priority unsecured claims allowed under Bankruptcy Code

SMRH:4845-4309-7045.3                                                          PLAN CONFIRMATION BRIEF

section 502, is divided into subclasses for (a) unsecured claims held by essential trade vendors Sysco Corporation, P & R Paper Supply Co., Inc., and Worldwide Produce ("Class 3(a)"); (b) unsecured claims held by general trade creditors ("Class 3(b)"); (c) unsecured claims held by counterparties to contracts to be assumed through the Plan ("Class 3(c)"); (d) unsecured claims for rejection damages ("Class 3(d)"); (e) the unsecured claims of certain beneficiaries under the Debtors' Senior Executive Retirement Plan ("Class 3(e)"); (f) the unsecured claim of James A. Collins in his individual capacity as a Beneficiary under the Senior Executive Retirement Plan ("Class 3(f)"); (g) the claim of James A. and Carol L. Collins, as trustees for the Collins Family Trust ("Class 3(g)"); (h) unsecured claims held by insiders ("Class 3(h)"); (i) the unsecured claim of Carson Sizz LLC ("Class 3(i)"); and (j) the unsecured, unliquidated, and contingent claim of lender JPMorgan Chase Bank, N.A. for the loan SUSA obtained through the Payment Protection Program under the CARES Act ("Class 3(j)").  Class 4, consisting of equity interests in SUSAA, is divided into subclasses for (a) Perkins US Financial Service Pty Ltd as trustee for the KPUS Trust ("Class 4(a)"), and (b) James A. & Carol Collins, as trustees of the Collins Family Trust ("Class 4(b)").  Accordingly, all claims or interests grouped together in the same class are substantially similar to the other claims or interests in that particular class and are subject to the same treatment under the Plan.  Thus, all claims in Classes 3(a), 3(d), 3(f), 3(g), 3(h), 3(j), 4(a), and 4(b) are impaired under the Plan, while claims grouped in the other classes are unimpaired. The Plan therefore meets the requirements of Bankruptcy Code section 1122(a).

      2.   <u>The Plan Contains All Mandatory Provisions And Certain Permissive Provisions Set Forth In Bankruptcy Code Section 1123.</u>

Bankruptcy Code section 1123(a) sets forth mandatory requirements for a plan, and section 1123(b) identifies various permissive provisions that may be included in a plan, but which are not required.  The Plan proposed in this case complies with both section 1123(a) and (b).

      a.   *Compliance With Bankruptcy Code Section 1123(a)(1) (Classification of Claims).*

Bankruptcy Code section 1123(a)(1) requires that a plan designate classes of claims and interests, other than claims of a kind specified in Bankruptcy Code section 507(a)(2)

Case: 20-30748   Doc# 116   Filed: 01/02/21   Entered: 01/02/21 22:38:50   Page 15 of 28

1   (administrative expense claims), Bankruptcy Code section 507(a)(3) (claims arising during the

2   "gap" period in an involuntary case), and Bankruptcy Code section 507(a)(8) (priority tax claims).

3   *See* 11 U.S.C. § 1123(a)(1); *see also In re Haardt*, 65 B.R. 697, 700 (Bankr. E.D. Pa. 1986);

4   *accord In re Commercial W. Fin. Corp.*, 761 F.2d 1329, 1334 (9th Cir. 1985).

5          Article 2 of the Plan classifies the broad classes and more narrowed subclasses of claims in

6   the case as described above in Section 2(a) of this brief, and Article 4.01 of the Plan further

7   describes each Class of claims and its treatment under the Plan.  The Debtors' Second Amended

8   Plan of Reorganization, Dated January 2, 2021, filed on January 2, 2020, as Docket No. 114, does

9   not classify administrative or priority tax claims.  Moreover, Article 3 describes the treatment of

10  administrative expense claims, priority tax clams, and quarterly and court fees under the Plan, and

11  Article 3.01 reiterates that administrative expense claims and priority tax claims are not included

12  in the classes under the Plan.  Thus, the Plan satisfies the requirements of Bankruptcy Code

13  section 1123(a)(1).

14              b.     *Compliance With Bankruptcy Code Section 1123(a)(2) (Specification of
                       Unimpaired Classes and Interests).*
15

16         Bankruptcy Code section 1123(a)(2) requires that a plan "specify any class of claims or

17  interests that is not impaired under the plan."  11 U.S.C. § 1123(a)(2); *see also In re Smith*, 123

18  B.R. 863, 865 (Bankr. C.D. Cal. 1991).  Under Bankruptcy Code section 1124, a class of claims or

19  interests is impaired unless each claim in that class is treated in either of the following ways:

20  (1) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or

21  interest is entitled; or (2) the plan cures any default, reinstates the maturity, compensates the

22  holder for damages and does not otherwise alter the legal, equitable, or contractual rights to which

23  such claim or interest entitles the holder.  *See* 11 U.S.C. § 1124.

24         Article 4.01 of the Plan specifies the claims in Class 1, Class 2(a), Class 2(b), Class 2(c),

25  Class 3(b), Class 3(c), Class 3(e), and Class 3(i) as unimpaired under the Plan.  The Plan thus

26  satisfies Bankruptcy Code section 1123(a)(2).

27              c.     *Compliance With Bankruptcy Code Section 1123(a)(3) (Specification of
                       Treatment of Impaired Classes and Interests).*
28

SMRH:4845-4309-7045.3

PLAN CONFIRMATION BRIEF

Bankruptcy Code section 1123(a)(3) requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3). In accordance with Bankruptcy Code section 1123(a)(3), Article 4.01 of the Plan specifies the treatment of Class 3(a), Class 3(d), Class 3(f), Class 3(g), Class 3(h), Class 3(j), and Class 4(a), all of which impaired under the Plan.

        d.    *Compliance With Bankruptcy Code Section 1123(a)(4) (Provide Same Treatment For Each Claim or Interest Within a Class).*

Bankruptcy Code section 1123(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). As set forth in Article 4 of the Plan, the same treatment is provided for each allowed claim or interest in each of Classes 1, 2(a), 2(b), 2(c), 3(b), 3(d), 3(e), 3(f), 3(g), 3(h), 3(i), 3(j), 4(a), and 4(b). In addition, each of the essential trade creditors comprising Class 3(a) have agreed to accept cure of their prepetition claims over time, and certain landlords included in Class 3(c) who are counterparties to unexpired leases to be assumed by the Debtors have agreed to amend the assumption of their leases. The Plan therefore satisfies section 1123(a)(4).

        e.    *Compliance With Bankruptcy Code Section 1123(a)(5) (Adequate Means for Implementation of Plan).*

Bankruptcy Code section 1123(a)(5) requires that a plan "provide adequate means for the plan's implementation" and sets forth several examples of such adequate means. 11 U.S.C. § 1123(a)(5); *see also Fla. Partners Corp. v. Southeast Co. (In re Southeast Co.)*, 868 F.2d 335 (9th Cir. 1989).

The means for implementing the Plan are set forth throughout the Plan, but are primarily described in Article 7 of the Plan. As described therein, the DIP Lender already provided the Debtors with $1,000,000 in financing which includes a rollup of $200,000 in pre-petition financing (the "Pre-Petition Loan") and $800,000 post-petition financing (the "Post-Petition Loan"), as authorized by the Court, in exchange for a security interest in the Debtors' personal property assets. The DIP Lender has also pledged to provide the Debtors with up to an additional

PLAN CONFIRMATION BRIEF

$1,000,000 in Exit Financing (together with the Pre-Petition Loan and the Post-Petition Loan, the "Debtor in Possession Credit Facility"), as necessary through the life of the Plan, to effectuate its terms and obligations. The Debtors have been and will continue to be authorized to use the Debtor in Possession Credit Facility as cash collateral by the Debtors through confirmation of the Plan and as necessary to carry out business operations and the terms of the Plan. In exchange, the DIP Lender, or an entity affiliated with the DIP Lender, will own 100% of the shares of a new parent entity of the Debtors to be formed. In addition, the senior executives of the Debtors will continue to receive a reduced annual salary unless the Debtors satisfy certain EBITDA milestones which would provide the opportunity for increased compensation for the executives.

Thus, based on the means for implementation of the Plan described above and elsewhere in the Plan, the Plan provides adequate means for its implementation in satisfaction of section 1123(a)(5).

        f.    *Compliance With Bankruptcy Code Section 1123(a)(6) (Amendment to Corporate Charter).*

Section 1123(a)(6) requires a reorganizing debtor to amend its corporate charter to prohibit the issuance of nonvoting securities. Article 8.07 of the Plan provides for such an amendment.

        g.    *Compliance With Bankruptcy Code Section 1123(a)(7) (Selection of Trustee).*

Bankruptcy Code section 1123(a)(7) requires that a plan:

> contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee.

11 U.S.C. § 1123(a)(7). In Article 7 of the Plan, the Plan Proponents disclose that Kevin Perkins, the DIP Lender, will chair a newly constituted board and will be joined on the board by Christopher Perkins, the Debtors' President and Chief Services Officer, and Timothy Perkins, the Debtors' Chief Strategy Officer. No trustee is appointed in the Plan. The proposed board members' relationships to each other and the Debtors have been fully disclosed to the Court and all parties, creditors, and claimants, and any objections regarding the involvement of Kevin

PLAN CONFIRMATION BRIEF

Perkins, Christopher Perkins, and Timothy Perkins in the continued management of the Debtors have been resolved.

> h.  *Section 1123(a)(8) Does Not Apply.*

Pursuant to Bankruptcy Code section 1181, Bankruptcy Code section 1123(a)(8), which contains requirements applicable to individual debtor cases, is inapplicable in Subchapter V cases as the Debtors are corporations.

> i.  *Compliance With Bankruptcy Code Section 1123(b) (Permissive Plan Provisions).*

Bankruptcy Code section 1123(b) describes various other provisions that are permitted in a plan. The Plan contains a number of these provisions, all of which are intended to facilitate the reorganization of the Debtor and payment to creditors. These include the following:

- Article 4.01 of the Plan leaves Classes 1, 2(a), 2(b), 2(c), 3(b), 3(c), 3(e), and Class 3(i) unimpaired, but provides that Classes 3(a), 3(d), 3(f), 3(g), 3(h), 3(j), 4(a), and 4(b) are impaired, all as permitted by section 1123(b)(1).

- Article 4.01 of the Plan provides for the assumption of all executory contracts and unexpired leases of all members of Class 3(c), identified in Exhibit C to the Plan, as well as Classes 3(e) and 3(i), as permitted by section 1123(b)(2) of the Bankruptcy Code. As discussed in the Perkins Declaration, the Debtors have established the appropriate cure amounts for all assumed contracts under the Plan and will pay those cure amounts on or before the Effective Date. Perkins Decl., ¶ 32. The Debtors are confident they can operate in a manner that will allow them to continue to perform their contractual obligations. Perkins Decl., ¶ 34. The Debtors are not aware of any objection to the cure amounts, either formal or informal, other than the Kwak Objection. Perkins Decl., ¶ 33.

- Article 6.01 of the Plan deems all executory contracts and unexpired leases that not explicitly included in the list attached as Exhibit C to the Plan of contracts and leases to be assumed by the Plan as conclusively rejected, as also permitted by section 1123(b)(2) of the Bankruptcy Code. All non-priority unsecured creditors that are counterparties to executory

12

SMRH:4845-4309-7045.3

PLAN CONFIRMATION BRIEF

contracts to be rejected by the Plan are included in Class 3(d) as described in Article 4.01 of the Plan.

**C.**     **The Plan Proponents Have Complied With The Requirements Of Bankruptcy Code Section 1129(a)(2) (Compliance With Applicable Provisions of Title 11).**

Bankruptcy Code section 1129(a)(2) requires that the proponent of the plan also comply with "the applicable provisions" of title 11. 11 U.S.C. § 1129(a)(2). The "applicable provisions" of title 11 are Bankruptcy Code section 1121 (dealing with who may file a plan) and Bankruptcy Code section 1125 (dealing with the solicitation of acceptances of a plan). *See In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).

While Bankruptcy Code section 1121 which determines who may file a plan in a typical Chapter 11 bankruptcy is inapplicable to Subchapter V cases pursuant to Bankruptcy Code section 1181(a), Bankruptcy Code section 1189(a) provides that only the debtors in a Subchapter V case may file the Plan. Accordingly, the Plan has been proposed by the Debtors.

Additionally, one of the principal purposes of Bankruptcy Code section 1129(a)(2) is to ensure that plan proponents have complied with the requirements of Bankruptcy Code section 1125 in the solicitation of acceptances of a plan of reorganization. *See, e.g., In re Jeppson*, 66 B.R. 269, 296-97 (Bankr. D. Utah 1986); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. at 149 ("the Proponent must comply with the ban on post-petition solicitation of the plan unaccompanied by a written disclosure statement approved by the court in accordance with §§ 1125 and 1126"). Bankruptcy Code section 1181(b) provides that no disclosure statement is required unless the Court order otherwise. The Court did not order otherwise. Thus, the requirements of section 1129(a)(2) have been met.

**D.**     **The Plan Satisfies the Other Plan Requirements of Section 1129(a), with the Exception of Section 1129(a)(8).**

        1.     **The Plan Has Been Proposed In Good Faith In Compliance With Bankruptcy Code Section 1129(a)(3).**

Bankruptcy Code section 1129(a)(3) requires a plan to be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Although the term "good faith" is left

13

SMRH:4845-4309-7045.3

PLAN CONFIRMATION BRIEF

Case: 20-30748    Doc# 116    Filed: 01/02/21    Entered: 01/02/21 22:38:50    Page 20 of 28

undefined by the Bankruptcy Code, "[i]n the context of a chapter 11 reorganization . . . a plan is considered proposed in good faith 'if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Code.'" *Hanson v. First Bank of South Dakota*, 828 F.2d 1310, 1315 (8th Cir. 1987) (quoting *In re Toy & Sports Warehouse, Inc.,* 37 B.R. at 149 (Bankr. S.D.N.Y. 1984)). For a plan to be proposed in good faith, it "must be intended to achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Corey,* 892 F.2d 829, 835 (9th Cir. 1989); *In re Stolrow's Inc,* 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988) ("Good faith requires that a plan will achieve a result consistent with the objectives and purposes of the Code."). Additionally, courts have generally held that the "good faith" requirement should be considered in light of the totality of circumstances. *In re Sylmar Plaza, L.P.,* 314 F.3d 1070, 1074 (9th Cir. 2002) ("The requisite good faith determination is based on the totality of the circumstances"), citing *In re Stolrow's, Inc.*, 84 B.R. at 172. Finally, good faith for purposes of section 1129(a)(3) of the Bankruptcy Code also may be found where the plan is supported by key creditor constituencies, or was the result of extensive arm's-length negotiations with creditors. *In re Eagle-Picher Indus., Inc.*, 203 B.R. 256, 274 (Bankr. S.D. Ohio 1996). From the facts and the circumstances of this case, it is evident that the Plan Proponents have proposed the Plan in good faith.

Here, the Debtors faced with the unprecedented financial stress caused in large part by the ongoing pandemic emergency which repeatedly caused their restaurants to shut down or limit service have sought reorganization under Subchapter V to renegotiate leases and reject leases for unprofitable restaurant locations so that they move forward in operating a profitable business. As a result, the Debtors have conducted an in-depth financial analysis to forecast which store locations are likely to be successful and which locations will not be profitable. As part of this analysis and Plan preparation, the Debtors have engaged in extensive negotiations with their essential trade creditors and landlords to settle cure amounts on unexpired executory contracts and leases and agree to more favorable contract and lease terms going forward. Several landlords have reached agreements with the Debtors regarding cure amounts and lease amendments. As a result, the Plan provides for a ratable distribution among the unsecured creditors.

SMRH:4845-4309-7045.3                                                      PLAN CONFIRMATION BRIEF

Sysco, which holds one of the largest unsecured claims against the Debtors' estates, voted in favor of the Plan. Additionally, no creditors or interest holders have voted against the Plan. Though the Debtors did receive two objections to the Plan, they have amended their Plan accordingly to address many of the points raised by the Trustee in his objection and have amended their Plan to remove the lease for Store No. 214 from the list of leases to be assumed, and the lease will be included in the Class of claimants with rejection damages claims. By filing their objection to the Plan on December 29, 2020, as Docket No. 111, the landlords to the lease for Store No. 214 have had the opportunity to voice their concerns which the Plan Proponents will address in their reply brief. The Plan therefore was proposed in good faith under Bankruptcy Code section 1129(a)(3).

2. <u>The Plan Complies With The Requirements Of Bankruptcy Code Section 1129(a)(4) (Payment for Services or Costs in Connection With the Case).</u>

Bankruptcy Code section 1129(a)(4) requires payments to estate professionals to be approved by the Bankruptcy Court or subject to the Bankruptcy Court's approval. 11 U.S.C. § 1129(a)(4). The Official Form Plan implies a requirement for Court review of all applications for final compensation of professionals for services rendered and for reimbursement of expenses incurred during the pendency of bankruptcy case. *See* Article 3.02; *see also In re Future Energy Corp.,* 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988) ("Court approval of payments for services and expenses is governed by various Code provisions -- *e.g.,* §§ 328, 329, 330, 331 and 503(b) -- and need not be explicitly provided for in a Chapter 11 plan."); *In re Elsinore Shore Assocs.,* 91 B.R. 238, 268 (Bankr. N.J. 1988) (holding that requirements of § 1129(a)(4) were satisfied where plan provided for payment of only "allowed" administrative expenses). The Plan complies with section 1129(a)(4) because it calls for the payment of allowed administrative expenses in Article 3.02, and Article 8.08(h) confirms that the Court shall retain jurisdiction "to hear and determine all applications for compensation and reimbursement of expenses of Professionals."

SMRH:4845-4309-7045.3                                                      PLAN CONFIRMATION BRIEF

3.  **The Plan Complies With Bankruptcy Code Section 1129(a)(5) Regarding the Identity of Officers, Directors, and Insiders.**

Pursuant to Bankruptcy Code section 1129(a)(5)(A)(i), a proponent of a plan must disclose the identity of the debtor's management post-effective date. As discussed above, the Plan Proponents disclose in Article 7 of the Plan that Kevin Perkins, the DIP Lender, will chair a newly constituted board and will be joined on the board by Christopher Perkins, the Debtors' President and Chief Services Officer, and Timothy Perkins, the Debtors' Chief Strategy Officer. Section 1129(a)(5) is thus satisfied.

4.  **The Plan Complies With Bankruptcy Code Section 1129(a)(6) Regarding Governmental Regulatory Approval of Rates.**

Section 1129(a)(6) requires that any regulatory commission with jurisdiction over the rates of the debtor approve any changes in rates provided in the plan. *See* 11 U.S.C. § 1129(a)(6). This is not applicable here; no such regulatory commission exists.

5.  **The Plan Satisfies the Requirements Of Bankruptcy Code Section 1129(a)(7) ("Best Interest" Test).**

The "best interests" test set forth in section 1129(a)(7) requires that the plan proponent demonstrate that:

with respect to each impaired class of claims or interests –

(A) each holder of a claim or interest of such class –

(i) has accepted the plan, or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date . . . .

11 U.S.C. § 1128(a)(7). The "best interests" test focuses on individual dissenting creditors rather than classes of claims. *See, In re Drexel Burnham Lambert Group*, 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992). On its face, section 1129(a)(7) only applies to impaired and classified claims or interests. It does not, therefore, apply to unimpaired or unclassified claims.

In this case, Sysco, a member of the impaired Class 3(a), was the only creditor or interest holder entitled to vote on the Plan to cast a ballot. *See Declaration of Jeannie Kim Regarding Summary of Tabulation of Ballots for Accepting or Rejecting Chapter 11 Plan of Reorganization*, Docket No. 113. However, no other members of Class 3(a) or the other impaired Classes or interest holders voted. Thus, the best interests test needs to be satisfied under subpart (A)(ii) above – the impaired creditors and interest holders have to do just as well under the Plan as they would in a hypothetical chapter 7.

Here, the Debtors project that the impaired general unsecured creditors would receive no return at all (if the Debtors are not substantively consolidated) or, at most, 3% on account of their claims if the Debtors are substantively consolidated. Under the two projected scenarios for reorganization under the Plan, the impaired creditors are projected to recover 17% under Scenario A if the entirety of their $3.9 million loan obtained under the Payment Protection Program (the "PPP Loan") is forgiven, or 8.3% under Scenario B if $2.1 million of the PPP Loan is not forgiven in what the Debtors believe would be the worst case scenario. In both a liquidation scenario and under the Plan, Classes 4(a) and 4(b) have agreed to have their equity interests cancelled. As a result, the impaired Classes of unsecured claimants will fare better under either plan scenario as compared to a Chapter 7 liquidation. Section 1129(a)(7) is therefore satisfied.

6. <u>Under Section 1191(b) the Plan is Confirmable Not Withstanding Section 1129(a)(8) Requiring Each Class of Claims and Interests to Be Either Unimpaired or to Have Accepted the Plan.</u>

Bankruptcy Code section 1129(a)(8) requires that each class of claims and interests has either accepted the plan or is not impaired under the plan. *See* 11 U.S.C. § 1129(a)(8). A class of claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of claims of that class vote to accept the plan, counting only those claims whose holders actually vote on the plan. *See* 11 U.S.C. § 1126(c). Bankruptcy Code section 1191(b), however, provides that the Plan shall be confirmed notwithstanding the failure to comply with section 1129(a)(8) as long as "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1191(b).

While there has not been unanimous consent from the impaired classes, the Plan is fair and equitable within the meaning of section 1191(c) as discussed above and is therefore entitled to confirmation as provided by section 1191(b).

7.     <u>The Plan Complies With Bankruptcy Code Section 1129(a)(9).</u>

Bankruptcy Code section 1129(a)(9) provides generally that administrative and non-priority tax claims must be paid in full on the effective date of a plan, and that priority tax claims may be paid in installments over a period not greater than five years. *See* 11 U.S.C. § 1129(a)(9). However Bankruptcy Code section 1191(e) allows for the payment of administrative expense claims to be paid through the life of the Plan.

The Plan satisfies the requirements of sections 1129(a)(9) and 1191(e). Article 3.02 of the Plan requires that allowed administrative expense claims be paid in full on the Effective Date or upon terms as may be agreed upon by the holder of the claim and the Debtor. Article 3.03 of the Plan provides for priority tax claims to be paid in regular installments consistent with section 1129(a)(9)(C). Thus, the Plan complies with sections 1129(a)(9) and 1191(e).

8.     <u>The Plan Has Been Accepted by at Least One Impaired Class in Compliance With Bankruptcy Code Section 1129(a)(10).</u>

Bankruptcy Code section 1129(a)(10) requires at least one class of impaired claims to have accepted the plan, determined without including any acceptance of the plan by an insider holding a claim in such class. *See* 11 U.S.C. § 1129(a)(10). Although Sysco voted to accept the Plan and no creditors voted to the reject the Plan, there is presently no impaired accepting class of claims.

Nonetheless, section 1191(b) provides that the Plan shall be confirmed notwithstanding failure to comply with 1129(a)(10).

9.     <u>The Plan is Feasible and in Compliance with Bankruptcy Code Section 1129(a)(11).</u>

Bankruptcy Code section 1129(a)(11) requires that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation is proposed in the plan." 11 U.S.C. § 1129(a)(11). This is sometimes referred to as the "feasibility test," and requires the Court to

SMRH:4845-4309-7045.3

PLAN CONFIRMATION BRIEF

determine whether the Plan is workable and has a reasonable likelihood of success.  *See In re Patrician St. Joseph Partners*, 169 B.R. 669, 674 (Bankr. D. Ariz. 1994).  Feasibility does not, nor can it, require the certainty that a reorganized company will succeed. *See, e.g., United States v. Energy Resources Co.,* 495 U.S. 545, 549 (1990); *In re WCI Cable, Inc.*, 282 B.R. 457, 486 (Bankr. D. Or. 2002) ("Guaranteed success in the stiff winds of commerce without the protection of the Code is not the standard under § 1129(a)(11).").  The feasibility standard merely requires the Court to determine whether a plan is workable and has a reasonable likelihood (*i.e.*, more likely than not) of success.  *In re Acequia, Inc.*, 787 F.2d 1352, 1364-1365 (9th Cir. 1986).  In the Subchapter V context, the Court must find either that the "debtor will be able to make all payments under the plan" or that "there is a reasonable likelihood that the debtor will be able to make all payments under the plan."  11 U.S.C. § 1191(c)(3)(A).  Section 1191(c)(3)(B) further requires remedies in the event that payments are not made.

Here, as discussed in the Perkins Declaration, the Plan Proponents are confident in their forecast of the Debtors' finances and revenue over the course of the Plan and do not believe that confirmation of the Plan will be followed by the need for further reorganization.  Perkins Decl., ¶ 34.  The Debtors have the funds necessary to make all required payments necessary to be paid by the Effective Date.  The Debtors have also reached agreements with many of the holders of unexpired executory contracts and unexpired leases to be assumed regarding the payment of cure amounts over time.  For purposes of section 1191(c)(3)(A), the Plan Proponents' financial projections show that the Debtors will have a projected disposable income (as defined by Bankruptcy Code section 1191(d)) of $337,000 for the projected five-year life of the Plan which they propose to pay to the classes of unsecured claimants.  The Plan is therefore feasible.  In accordance with section 1191(c)(3)(B), the DIP Lender has also pledged to provide the Debtors with up to an additional $1,000,000 in immediately available Exit Funding as needed to satisfy the Debtors' obligations under the Plan if the Debtors' projections regarding projected disposable income fall short.

Thus, confirmation of the Plan is feasible and not likely to be followed by the need for further reorganization.

PLAN CONFIRMATION BRIEF

10. <u>The Debtor Will Pay on or Before the Effective Date All Fees Payable Under 28 U.S.C. § 1930 in Compliance With Bankruptcy Code Section 1129(a)(12).</u>

Bankruptcy Code section 1129(a)(12) requires the payment of "[a]ll fees payable under section 1930 of title 28 [of the United States Code], as determined by the court at the hearing on confirmation of the plan." 11 U.S.C. § 1129(a)(12). However, a debtor in a Subchapter V case is exempted from paying quarterly fees to the U.S. Trustee under 28 U.S.C. section 1930(a)(6). The Plan complies with section 1129(a)(12) by providing in Article 3.04 that all required statutory fees that are owed on or before the Effective Date have already been paid or will be paid on or before the Effective Date, and according to Article 3.05, prospective quarterly fees required to be paid to the U.S. Trustee will be timely paid.

11. <u>Section 1129(a)(13) Regarding Retiree Benefits Does Not Apply.</u>

Bankruptcy Code section 1129(a)(13) requires a corporate debtor with a retirement plan to continue funding retiree benefits. Article 4 of the Plan discusses the treatment of each class of claims including Class 3(e), which includes all of the participants in the Senior Executive Retirement Plan (the "<u>SERP</u>") other than James A. Collins, and Class 3(f) comprised of James A. Collins' claims as a SERP participant. Pursuant to the Plan, James A. Collins as the sole member of Class 3(f) has agreed to forego his claims under the SERP in exchange for WRC assuming the SERP agreement. The remaining participants in the SERP all are members of Class 3(e). At present SERP payments are suspended in accordance with the terms of the SERP. Under the Plan, WRC will assume the SERP and each holder of an allowed Class 3(e) SERP claim will retain his or her interest in the SERP. Further in accordance with the SERP terms, and upon expiration of the suspension period, WRC will resume SERP payments beginning on or before June 17, 2021. The Plan therefore satisfies the requirements of section 1129(a)(13).

12. <u>Section 1129(a)(14) Regarding Domestic Support Obligations Does Not Apply.</u>

Bankruptcy Code section 1129(a)(14) sets forth certain requirements with respect to the payment of domestic support obligations by individual debtors. This does not apply here as the Debtor is a corporate debtor.

Case: 20-30748    Doc# 116    Filed: 01/02/21    Entered: 01/02/21 22:38:50    Page 27 of 28

13. Section 1129(a)(15) Does Not Apply.

Pursuant to Bankruptcy Code sections 1191(a) and (b), the Plan is excepted from satisfying section 1129(a)(15) in Subchapter V cases.

**E. The Plan Complies With Bankruptcy Code Section 1129(d) Because The Principal Purpose Of The Plan Is Not To Avoid Taxes Or Applicable Securities Laws.**

Bankruptcy Code section 1129(d) provides:

> Notwithstanding any other provision of this section, on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

11 U.S.C. § 1129(d). Here, the principal purpose of the Plan is not to avoid taxes or the securities laws. No governmental party in interest has requested the denial of confirmation on any of the foregoing grounds. Accordingly, the Plan satisfies section 1129(d).

## IV.

## CONCLUSION

For the reasons stated above, the Plan meets the requirements of Bankruptcy Code section 1191 and should be confirmed. The Plan Proponents request the Court to issue an order confirming the Plan.

Dated: January 2, 2021

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
            */s/ Ori Katz*
            ORI KATZ

Attorneys for Debtors and Debtors in Possession

SMRH:4845-4309-7045.3

PLAN CONFIRMATION BRIEF