SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
JEANNIE KIM, Cal. Bar No. 270713
GIANNA SEGRETTI, Cal. Bar No. 323645
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:     415.434.9100
Facsimile:     415.434.3947
E mail      okatz@sheppardmullin.com
            jekim@sheppardmullin.com
            gsegretti@sheppardmullin.com

Attorneys for Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 20-30748 |
| ☐ SIZZLER USA ACQUISITION, INC., a Delaware corporation | Jointly Administered with Case Nos. 20-30746, 20-51400, 20-51401, 20-51402, 20-51403, 20-51404, 20-51405 |
| ☐ SIZZLER USA HOLDINGS, INC., a Delaware corporation | |
| ☐ SIZZLER USA FINANCE, INC., a Delaware corporation. | Chapter 11 Proceeding |
| ☐ WORLDWIDE RESTAURANT CONCEPTS, INC., a Delaware corporation | **DECLARATION OF CHRISTOPHER PERKINS IN SUPPORT OF (A) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION DATED JANUARY 2, 2021; AND (B) DEBTORS' OMNIBUS REPLY TO: (1) TRUSTEE'S OBJECTIONS TO DEBTORS' FIRST AMENDED CHAPTER 11 PLAN; AND (2) NOTICE OF OBJECTION BY STEVE N. KWAK AND SOOK HYAN KWAK, TRUSTEES OF THE 2010 KWAK FAMILY TRUST TO DEBTORS' PLAN OF REORGANIZATION** |
| ☐ SIZZLER USA, INC., a Delaware corporation | |
| ☐ SIZZLER USA FRANCHISE, INC., a Delaware corporation | |
| ☐ SIZZLER USA REAL PROPERTY, INC., a Delaware corporation | |
| ☐ SIZZLER USA RESTAURANTS, INC., a Delaware corporation | |
| ☒ ALL DEBTORS, | |
|     Debtors and Debtors in Possession. | Plan Confirmation Hearing: Date:  January 5, 2021 Time:  10:15 a.m. Place:  Videoconference via Zoom Judge:  Hon. M. Elaine Hammond |

I, Christopher Perkins, declare as follows:

1. I am the President and Chief Services Officer of Sizzler USA Acquisition, Inc. ("SUSAA"), Sizzler USA Holdings, Inc. ("SUSAH"), Sizzler USA Finance, Inc. ("SUSAFI"), Worldwide Restaurant Concepts ("WRC"), Sizzler USA Inc. ("SUSA"), Sizzler USA Franchise, Inc. ("SUSAFR"), Sizzler USA Real Property, Inc. ("SUSARP"), and Sizzler USA Restaurants, Inc. ("SUSAR," and together with SUSAA, SUSAH, SUSAFI, SUSAFR, SUSARP, collectively, the "Debtors"), debtors and debtors in possession in the above-captioned chapter 11 proceedings. I became President of the Debtors in January 2020 and have been serving as Chief Services Officer since May 2019. Previously, I served as Director and General Counsel of the Debtors from February to May 2019.

2. I am the officer with primary responsibility for the business and financial affairs of the Debtors. I am familiar with the Debtors' operations and books and records, which I personally know are made and maintained in the ordinary course of business. On this basis, I have personal knowledge of the facts stated herein or knowledge based on the business records that are made and maintained in the Debtors' ordinary course of business, the information supplied to me by (a) my colleagues who report directly to me or (b) the Debtors' general bankruptcy counsel and other legal and professional advisors. If asked to do so, I could and would testify competently under oath to the following matters.

3. This declaration is submitted in support of the: (a) *Memorandum of Points and Authorities in Support of Debtors' Second Amended Plan of Reorganization Dated January 2, 2021* (the "Memorandum"); and (b) *Debtors' Omnibus Reply to: (1) Trustee's Objections to Debtors' First Amended Chapter 11 Plan; and (2) Notice of Objection by Steve N. Kwak and Sook Hyan Kwak, Trustees of the 2010 Kwak Family Trust to Debtors' Plan of Reorganization* (the "Reply" to the "Objections"). I have reviewed the foregoing documents, am familiar with the form and substance of their contents, and am authorized to make this supporting declaration on behalf of the Debtors. I give capitalized terms not otherwise defined herein the same meanings ascribed to them in the Memorandum, Reply, Objections, and *Sizzler USA Acquisition, Inc.,*

Case: 20-30748   Doc# 117   Filed: 01/02/21   Entered: 01/02/21 22:42:47   Page 2 of 39

*Sizzler USA Holdings, Inc., Sizzler USA Finance, Inc., Worldwide Restaurant Concepts, Sizzler USA Inc., Sizzler USA Franchise, Inc., Sizzler USA Real Property, Inc., and Sizzler USA Restaurants, Inc.'s Second Amended Plan of Reorganization, Dated January 2, 2021* (the "Plan").

4.  I was intimately involved with the preparation of the Plan and all of the supporting data and documents filed in support of the Plan, including Exhibits A-1, A-2, B, and C thereof. I am very familiar with the terms of the Plan, the Debtors' books and records, and the Debtors' current and projected financials.

5.  I am advised by the Debtors' general bankruptcy counsel (Sheppard, Mullin, Richter & Hampton LLP) that only one creditor, the Operating Affiliates of Sysco Corporation ("Sysco"), voted in favor of the Plan, that no creditors voted to reject the Plan, and that the remaining creditors entitled to vote appear to have abstained from submitting ballots. I am familiar with the claims of Sysco and other Class 3(a) claimants and confirm that Sysco's vote represents $956,129.50 or 85.4% of all Class 3(a) claims, which total $1,119,798.92.

6.  I am not aware of any plan of reorganization or liquidation other than the Plan having been proposed in the Debtors' Bankruptcy Cases.

7.  Based on my understanding of the requirements of Subchapter V of the Bankruptcy Code as explained to me by the Debtors' bankruptcy counsel, I firmly believe that the Plan satisfies the Bankruptcy Code's standards for Subchapter V cases by providing impaired classes of general unsecured creditors a pro rata distribution of the Debtors' projected disposable income over the course of five years, which amount is $337,000. I am very familiar with the Debtors' financial affairs, books and records, and based thereon confirm that the proposed pro rata distribution of the Debtors' projected disposable income over five years will result in either a 17% recovery by the GUCs under liquidation analysis Scenario A or 8.5% under liquidation analysis Scenario B. Under either scenario, I believe that the GUCs will fare better under the Plan than in a chapter 7 liquidation.

8.  The Debtors have been in the business of operating and franchising family restaurants focused on grilled steaks and their famous "Salad Bar" since 1958. On September 21,

CHRISTOPHER PERKINS DECLARATION IN SUPPORT OF
CONFIRMATION BRIEF AND OMNIBUS REPLY TO PLAN OBJECTIONS

2020 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their business as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

9. On or about November 16, 2020, I authorized and directed the Debtors' bankruptcy counsel to file on behalf of SUSAA, SUSAH, SUSAF, WRC, SUSA, SUSAFR, SUSARP, and SUSAR the Original Plan. Thereafter, I was advised by the Debtors' bankruptcy counsel that on November 19, 2020, the Court held a Plan Review Conference, considered the form of the Original Plan and whether it contains the mandatory provisions required by the Bankruptcy Code, noted minor comments on the Original Plan and directed the Debtors to amend and revise the Original Plan to incorporate such comments. I further was informed and understood that, subject to amendment to incorporate the Court's comments, the Original Plan contained mandatory provisions required by the Bankruptcy Code and that, if the Debtors amended the Original Plan and filed and served such amended plan on or before November 30, 2020, the Court would set a confirmation hearing for January 5, 2021, and related deadlines.

10. On or about November 30, 2020, I authorized and directed the Debtors' bankruptcy counsel to file on behalf of SUSAA, SUSAH, SUSAF, WRC, SUSA, SUSAFR, SUSARP, and SUSAR the First Amended Plan in accordance with the Confirmation Hearing Order.

11. Subsequently, I learned that, due to inadvertence, the First Amended Plan did not provide for treatment of a contingent claim in favor of JPMC on account of the PPP Loan. To address the PPP Loan, my staff and I worked with the Debtors' bankruptcy counsel to amend further the First Amended Plan and to prepare liquidation analysis Scenario B.

12. On or about December 11, 2020, I authorized and directed the Debtors' bankruptcy counsel to file on behalf of SUSAA, SUSAH, SUSAF, WRC, SUSA, SUSAFR, SUSARP, and SUSAR the Plan Modification, which provides for treatment of JPMC's contingent claim in connection with the PPP Loan.

-4-

13.     The Second Amended Plan addresses and incorporates certain of the Trustee's comments as set forth in the Trustee Objection and amends Exhibit C to the First Amended Plan to account for rejection of the 7th & Western Lease between SUSARP and the Kwak Family Trust in accordance with Article 6.01(b) of the Plan.  *See* Plan at p. 14.

14.     The Debtors agree to include the "marketing period" provisions set forth in paragraphs 4, 6, 7 and 8 of the *Final Order Approving Stipulation Regarding Use of Cash Collateral, Provision of Adequate Protection and Debtor in Possession Financing* entered by the Court on November 24, 2020, as Docket No. 85 in the Plan and confirmation order.  The Debtors have revised the Plan to reflect inclusion of the "marketing period" provisions.  *See* Plan at pp. 15-16.  A redline of the Second Amended Plan marked against the First Amended Plan is attached as **Exhibit A** hereto and highlights these changes.

15.     Notwithstanding the Trustee's suggestion that the Debtors' five-year projections contain "mathematical inconsistencies" regarding the franchisee fees paid to the Debtors because there are 98 franchisee stores whereas the Debtors' financial projections anticipate payment of franchisee fees from only 63 such stores, I stand by the Debtors' financial projections as filed (i.e., based on future revenues from 63 franchisee owned stores).

a.     Although SUSAFR was party to approximately 98 total franchise agreements on the Petition Date, that does not mean that SUSAFR will receive franchise royalty and other fee income from 98 franchisee owned stores over the course of the next five years. At least 33 such stores are closed (either permanently or temporarily) and not generating royalty revenue for the Debtors.  An additional seven restaurants are being operated by the Debtors either pursuant to a purchase agreement or management agreement, six of which are not currently generating royalty income and will not generate royalty income in the future, as they will become Debtor-owned-and-operated restaurants.  These six restaurants are included in the Debtors' financial projections as Debtor-owned restaurants.  Therefore, there are 59 franchise owned restaurants currently producing royalty income for the Debtors. Attached hereto as **Exhibit B** is a schedule of all of the Sizzler-branded restaurants located in North America and Puerto Rico that

SMRH:4834-9996-7190.2

Case: 20-30748   Doc# 117   Filed: 01/02/21   Entered: 01/02/21 22:42:47   Page 5 of 39

1    are subject to a franchise agreement with the Debtors or are currently operated by the Debtors

2    under a management or purchase agreement (the "Store Directory").

3            b.      The Store Directory shows the location of each restaurant, the franchise

4    owner of each location, the current operating status of each location, and whether the location has

5    adapted to the local mandates restricting restaurants from operating at full capacity. The Store

6    Directory also shows which restaurant locations have temporarily and permanently closed. While

7    some of these stores may reopen during 2021, I believe it is equally or more likely that the

8    challenges facing the restaurant industry will result in additional store closures that outnumber any

9    reopenings. Therefore, I believe that the Debtors' assumption that it will only receive franchise

10   fees from 63 franchisee stores resulted in accurate financial projections.

11           16.     The Debtors disagree with the Trustee's assertion that the Plan does not provide

12   "appropriate remedies" in the event plan payments are not made. The Trustee overlooks the exit

13   funding of an additional $1 million in immediately available funds that the DIP Lender is

14   providing to support the Debtors' operations. That funding exceeds the $337,000 in projected

15   disposable income by a factor of nearly three times. Further, I believe that the injection of an

16   additional $1 million in cash to the Debtors' businesses represents a far more tangible remedy to

17   protect the holders of allowed claims in these Bankruptcy Cases than the very uncertain remedy of

18   each of the Debtors' maintaining corporate separateness.

19           17.     I believe that if the Court were to prohibit the Debtors from having the option of

20   substantively consolidating their estates, creditors would be no better off. Further, I believe that if

21   the Debtors are not permitted to substantively consolidate their estates, at their option, trade

22   creditors, JPMC, the franchisees and the SERP Beneficiaries would engage in protracted litigation

23   over their respective rights to recoveries from the Debtors' assets.

24           18.     The Trustee further requests that any order confirming the Plan includes a

25   provision prohibiting the Debtors from encumbering their intellectual property post-confirmation.

26   The Debtors will not agree with such request. The Plan provides appropriate remedies and

27

28

Case: 20-30748    Doc# 117    Filed: 01/02/21    Entered: 01/02/21 22:42:47    Page 6 of
39

protections to their creditors, and the Debtors must be free to conduct their business as they see fit, including obtaining financing on a secured basis as necessary.

19.     The Debtors are agreeable to the confirmation order including language that makes clear that post-confirmation, the Debtors shall make payments to creditors under the Plan.

20.     The Debtors also request and intend to include in the confirmation order that post-confirmation, the Trustee shall have no further role in the Debtors' business or cases so long as there is no default under the Plan.

21.     The Debtors will not agree to pay the greater of their projected disposable income or their actual disposable income as requested by the Trustee.

22.     The Debtors' financial projections provide that in year 5 of their forecast they will be operating a business with $49.5 million in projected income and $47.5 million of total operating expenses. I believe that over the next five years, the Debtors will be operating in an environment filled with significant uncertainty for most of the global economy, but especially so for restaurants. If the cash position of $909,000 projected for the end of year 5 is inaccurate, I believe that the inaccuracy will be because the figure is too low in relation to the scale of the Debtors' business. At the end of the term of the Plan, the Debtors will need the full amount of the projected $909,000 of ending cash to continue, preserve, and operate their business. I believe it would be inappropriate and a violation of my fiduciary duties as an officer and director of the Debtors to leave the Debtors with any less cash.

23.     The Debtors do not agree to cooperate with the Trustee and provide bank statements and financials on a regular basis post-confirmation to him. It is absolutely critical that post-confirmation the Debtors be able to run their business free from the Trustee unless a default under the payment provisions of the Plan occurs. The Debtors must be free to focus on and run their business without any distraction or interference from the Trustee so long as they continue to make their payments to creditors.

Case: 20-30748   Doc# 117   Filed: 01/02/21   Entered: 01/02/21 22:42:47   Page 7 of 39

24.     As of the Petition Date, SUSARP was in default under the 7th & Western Lease for non-payment of rent in the aggregate amount of $70,018.45 and unpaid real property taxes in the amount of $13,875.75, or $83,894.20 (the "Prepetition Default").

25.     Postpetition, SUSARP and the Kwak Family Trust negotiated the terms of an amendment to the 7th & Western Lease, which amendment provided for: (a) forgiveness, by the Kwak Family Trust, of all rent, taxes and common area maintenance charges due and owing by SUSARP as of the Petition Date, or the Prepetition Default; (b) reduction of Base Rent (as defined in the 7th & Western Lease) such that, effective as of October 1, 2020, the total amount of Base Rent due from SUSARP to the Kwak Family Trust is 7% of variable net sales, to be paid in arrears (the "Percentage Rent"); (c) the elimination of SUSARP's liability for common area maintenance charges and real property taxes effective as of October 1, 2020; and (d) effective as of October 1, 2020, termination of the 7th & Western Lease by either SUSARP or the Kwak Family Trust on 30 days' written notice.

26.     I understood that SUSARP and the Kwak Family Trust had come to an agreement, which agreement is evidenced by the Debtors' payment of the Percentage Rent as and for Base Rent for October and November 2020 and the Kwak Family Trust's acceptance of such Base Rent as agreed. Further, based on this understanding, I ensured that Exhibit C to the First Amended Plan expressly included the 7th & Western Lease in accordance with Article 4.01 of the Plan, which provides for assumption of the 7th & Western Lease and treatment of the Prepetition Default.

27.     The Debtors disagree with the Kwak Family Trust's assertion that the Plan incorrectly provides for assumption of the 7th & Western Lease at the agreed cure amount of $0, as the $0 cure amount is based on paragraph 1 of Lease Amendment.

28.     I understand that Mr. Kwak originally threatened to withdraw his agreement to the Lease Amendment, but "… then agreed to wait for bankruptcy court approval [of the Lease Amendment]." *See* Kwak Decl. at 3:19-20. Based on such representation by Mr. Kwak, the acceptance and negotiation by Mr. Kwak on behalf of the Kwak Family Trust of checks issued by

the Debtors in the amount of the agreed upon Percentage Rent as and for Base Rent for October and November 2020, the express inclusion of the 7th & Western Lease on Exhibit C to the Plan, I directed my staff to proceed with the understanding that assumption of the 7th & Western Lease, as amended by the Lease Amendment, would be effectuated pursuant to the pending confirmation of the Plan.

29. I have instructed the Debtors' bankruptcy counsel to meet and confer with the Kwak Family Trust, by and through their counsel, to resolve the Kwak Objection but understand that counsel for the Kwak Family Trust advised that he is unable to engage in discussions on behalf of the Kwak Family Trust to resolve the Kwak Objection. As a result, I have determined to exercise my business judgment on behalf of the Debtors and exercise SUSARP's right to reject the 7th & Western Lease, retroactive to the Petition Date.

30. Post-confirmation, the Debtors intend to use their available cash on hand to make those payments due to creditors on the effective date of the Plan as set forth in the Plan. Thereafter, the Debtors intend to continue in the ordinary course to work to maximize profitability and ensure that they meet the financial projections set forth in the Plan.

31. Notwithstanding that post-confirmation, the Debtors will continue to operate in an era and environment filled with uncertainty as the impact of the coronavirus pandemic continues to wreak havoc on the restaurant industry, the Plan provides for the elimination of significant obligations of the Debtors. As a result, I have confidence in the Debtors' financial projections adequately factor in these uncertainties and believe it is highly unlikely that the reorganized Debtors would need to liquidate or seek bankruptcy protection after confirmation of the Plan.

32. My team and I have thoroughly reviewed the Debtors' books and records to ensure that the cure amounts established on Exhibit C to the Plan are accurate and appropriate cure amounts to be paid. Together, the Debtors' current cash on hand and the availability of the exit financing of $1 million demonstrate the Debtors' financial wherewithal to satisfy the cure amounts required under the Plan and provide creditors and parties in interest with adequate assurance of the Debtors' future performance. Except as otherwise agreed, the Debtors will satisfy all cure

SMRH:4834-9996-7190.2

amounts listed on Exhibit C to the Plan on the effective date of the Plan or as soon thereafter as is practicable.

33.     I am not aware of any objection to the cure amounts listed on Exhibit C to the Plan, either formal or informal, other than the Kwak Objection.

34.     As stated above, I am confident in the Debtors' financial projections and forecast as filed in support of the Plan.  I also have high confidence in the Debtors' management team and staff, and believe that the Debtors can operate in a manner that will allow us to continue to perform our contractual obligations.

35.     Post-confirmation, the Debtors intend to effectuate the following transactions to restructure the Debtors' corporate structure and governance:

a.     The shares in SUSAA held by Perkins US Financial Services Pty Ltd as trustee for the KPUS Trust will be cancelled along with the shares held by James A. & Carol L. Collins as trustees of the Collins Family Trust.

b.     WRC will assume and assign to SUSA all of its rights, interests, and obligations under the SERP, and SUSA will assume all of WRC's rights, interests, and obligations under the SERP.  For the avoidance of doubt, all of the terms and conditions of the SERP other than the responsible Debtor shall remain in full force and effect, and the SERP shall not otherwise be amended, modified, or revised in any way without written consent of the parties thereto, including James A. & Carol L. Collins, individually and as co-trustees of The Collins Family Trust, as the guarantors of WRC's performance obligations under the SERP.

c.     After the occurrence of the transactions described in paragraphs 34(a) and (b) hereof, Debtors SUSAA, SUSAH, SUSAF, and WRC shall dissolve in accordance with their respective stockholder agreements.

d.     The new parent entity shall be Sizzler USA, Inc, which will be wholly owned by Perkins US Investment Corporation Pty Ltd as trustees for the KPUS Trust.  SUSA will continue to own 100% of the shares of SUSAFR, SUSARP, and SUSAR.

e.     The following represents the Debtors' current corporate structure:



f.     The following represents the Debtors' anticipated corporate structure upon emergence from chapter 11 and the effectuation of the transactions described in paragraphs 34(a), (b), (c), and (d) hereof:

g.     The Board of Directors of each of SUSA, SUSAFR, SUSARP, and SUSAR will be comprised of Timothy Perkins and me.  Kevin Perkins will not be appointed to a senior position on the board of any reorganized Debtor.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 2nd day of January, 2021, at Orange County, California.

*/s/ Christopher Perkins*
Christopher Perkins

-11-

Case: 20-30748   Doc# 117   Filed: 01/02/21   Entered: 01/02/21 22:42:47   Page 11 of 39

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit A**

☒ Check if this is an amended filing

Official Form 425A

## Plan of Reorganization for Small Business Under Chapter 11    02/20

# Sizzler USA Acquisition, Inc., Sizzler USA Holdings, Inc., Sizzler USA Finance, Inc., Worldwide Restaurant Concepts, Sizzler USA Inc., Sizzler USA Franchise, Inc., Sizzler USA Real Property, Inc., and Sizzler USA Restaurants, Inc.'s[1] Second Amended Plan of Reorganization, Dated ~~November 30~~January 2, ~~2020~~2021

**Background for Cases Filed Under Subchapter V**

**A. Description and History of the Debtor's Business**

1. <u>Executive Summary.</u>  Under this Amended Plan of Reorganization (the "Plan"), the Debtors present two possible scenarios.  Under the first scenario ("Scenario A") it is estimated that just over $1.9 million of general unsecured claims are impaired, primarily consisting of a handful of landlords, an equipment supplier, and certain essential trade vendors (collectively, the "Impaired GUCs").

At a projected recovery of 17% under ~~the Plan~~Scenario A, the Impaired GUCs fare **significantly** better than they would if the Debtors' cases converted to ones under chapter 7 of the Bankruptcy Code[2] and required liquidation of all of their assets.  Indeed, in a chapter 7 scenario, the Impaired GUCs can expect to ~~either~~ receive either no return at all (if the Debtors are not substantively consolidated) or, at most, 3% on account of their claims if the Debtors are substantively consolidated.  ~~All other creditors are either unimpaired or have consented to the treatment afforded to them under the Plan.~~

The second scenario presented in this Plan ("Scenario B") takes into account a "worst case scenario" situation, which the Debtors contemplate would include a determination that $2.1 million of the $3.9 million loan (the "PPP Loan") SUSAR obtained through the federal Payment Protection Program not be forgiven.  Under such Scenario B, the Plan provides for treatment of

---

[1] Sizzler USA Acquisition, Inc. ("SUSAA"), Sizzler USA Holdings, Inc. ("SUSAH"), Sizzler USA Finance, Inc. ("SUSAFI"), Worldwide Restaurant Concepts ("WRC"), Sizzler USA Inc. ("SUSA"), Sizzler USA Franchise, Inc. ("SUSAFR"), Sizzler USA Real Property, Inc. ("SUSARP"), and Sizzler USA Restaurants, Inc. ("SUSAR") are collectively referred to in this Plan as the "Debtors").

[2] Unless otherwise indicated, all section references in this Plan shall be to title 11 of the United States Code (the "Bankruptcy Code").

the bank lender for the PPP Loan as an Impaired GUC and anticipates that all Impaired GUCs would receive a recovery of 8.3% of their allowed non-priority unsecured claims. Impaired GUCs still fare better under Scenario B than they would in a liquidation under chapter 7. All other creditors are either unimpaired or have consented to the treatment afforded to them under the Plan.

2. <u>Introduction.</u> The Debtors, as debtors and debtors in possession, propose this joint plan of reorganization under subchapter V of chapter 11 of the Bankruptcy Code (the "Plan"). Pursuant to an order of the Bankruptcy Court, the Debtors' cases are jointly administered only for procedural purposes. This Plan constitutes a separate subchapter V, chapter 11 plan for each Debtor and, unless otherwise indicated herein, the classification and treatment of Claims and Interests apply to each individual Debtor.

Pursuant to General Order 37 issued on January 30, 2020, by the Hon. Charles Novack, Chief Bankruptcy Judge for the United States Bankruptcy Court for the Northern District of California, and the Court's *Order Setting (A) Status Conference; (B) Claims Bar Date; (C) Deadline for Election Under 11 U.S.C. § 1111(b)(2); and (D) Other Deadlines (For Use Only in Cases under Subchapter V of Chapter 11)* [Docket No. 38], the Debtors have prepared and submit this Plan and provide the below description and history of their business operations, liquidation analysis, and projections in accordance with section 1190 of the Bankruptcy Code.

3. <u>Brief History of the ~~Debtor's~~Debtors' Business.</u> Through several separate entities, SUSAA operates its business of franchising and operating "Sizzler" branded family-style restaurants throughout the United States, including in Puerto Rico (the "Business"). In 1958, the Debtors (through their respective predecessors in interest) first opened as "Del's Sizzler Family Steak House," with a menu focused on grilled steaks. Later, as the company grew, the restaurant menu expanded to include other items, including ~~its~~Sizzler's famed "Salad Bar."

The Debtors' current corporate structure in both graphic and narrative form is as follows:



a. <u>Sizzler USA Acquisition, Inc.</u>  SUSAA is the ultimate parent company.  It was incorporated as a Delaware corporation on May 27, 2011.  On June 7, 2011, SUSAA purchased a predecessor entity, Sizzler Holdings, Inc., which formerly was called US Holdco, Inc., until a name change took place on August 23, 2011.

b. <u>Sizzler USA Holdings, Inc.</u>  SUSAH was incorporated in Delaware on May 11, 2005.  Sizzler USA Holdings, Inc., owns 100% of the shares in Sizzler USA Finance, Inc.

c. <u>Sizzler USA Finance, Inc.</u>  SUSAFI was incorporated in Delaware on May 11, 2005, as Bidco, Inc.  It changed its name to Sizzler USA Finance, Inc., on February 17, 2006.  SUSAFI is the owner of 100% of the shares in Worldwide Restaurant Concepts, Inc.

d. <u>Worldwide Restaurant Concepts, Inc.</u>  WRC was incorporated in Delaware as Collins Foods, Inc., on January 18, 1991.  WRC changed its name to Sizzler International, Inc., on May 6, 1991, and then to Worldwide Restaurant Concepts, Inc., on August 31, 2001.  On September 21, 2005, WRC merged with US Mergeco, Inc., a Delaware corporation, leaving WRC as the sole surviving entity of that merger.  The prior owner of US Mergeco was Aus Bidco Pty Limited (an Australian company), which in turn was owned by Aus Holdco Pty Limited (also an Australian company).  As a result of the merger, the new owner of WRC was Aus Bidco Pty Limited.

i.  In September and October 2005, transactions occurred whereby:

(1)  the shares in WRC were transferred from Aus Bidco Pty Limited to SUSAFI (f/k/a US Bidco, Inc.);

(2)  all assets previously held by WRC were transferred to Australian-owned entities, including shares of all other subsidiary entities except for those in Sizzler USA, Inc. (f/k/a Sizzler USA Holdings, Inc.); and

(3)  certain liabilities were retained by WRC, including certain contingent and unliquidated liabilities for a supplemental executive retirement plan ("SERP") described below.

~~By virtue of these transactions, ultimate ownership of the Business and SERP liabilities transferred to SUSAH.~~ WRC owns 100% of the shares in Sizzler USA, Inc.

ii.  <u>Supplemental Executive Retirement Plan (SERP).</u>

(1)  <u>Contingent and Unliquidated Liability.</u>  The Debtors – through WRC – maintain a SERP, pursuant to which the Debtors' liability is contingent and unliquidated. WRC is responsible for payments to certain former employees (the "SERP Beneficiaries") until such time that each of the Beneficiaries dies.  Prepetition, the Debtors obtained an actuarial valuation of the SERP liability, which valued the liability at $7,801,001.  The SERP liability valuation is inversely correlated to the prevailing market interest rate, which means that as interest decreases, the value of the liability increases.

(2)  <u>Payments to SERP Beneficiaries.</u> Under the SERP, the Debtors currently are liable to seven SERP Beneficiaries.  Prepetition, the Debtors made biweekly payments in the aggregate amount of $33,173.46 to the Beneficiaries.  Early in the

coronavirus pandemic, the Debtors suspended those biweekly payments but recommenced them after receipt of a Paycheck Protection Program (SBA) loan. As of July 16, 2020, the Debtors were current on their SERP liability; however, the Debtors again suspended payments on July 17, 2020.

(3)     _Guaranty of the SERP._  On June 7, 2011, James A. and Carol L. Collins, individually and as co-trustees of The Collins Family Trust, entered into that certain Guaranty dated June 7, 2011 (the "Guaranty"), pursuant to which the Collinses and The Collins Family Trust agreed to guarantee to each of the SERP Beneficiaries all obligations and liabilities under the SERP for the payment of monthly retirement benefits, in the form of joint and survivor annuities.  Accordingly, in the event that WRC is ever unable to fulfill its obligations under the SERP, the SERP Beneficiaries may seek to enforce the Guaranty against the Collinses and The Collins Family Trust.

e.  _Sizzler USA, Inc._  SUSA is a Delaware corporation that was incorporated as Sizzler USA Holdings, Inc., on May 6, 1997.  That entity changed its name on May 29, 1997, to "Sizzler USA, Inc."  SUSA owns all shares in Sizzler USA Franchise, Inc.; Sizzler USA Real Property, Inc.; and Sizzler USA Restaurants, Inc.

f.  _Sizzler USA Franchise, Inc._  SUSAFR is a Delaware corporation formed on May 6, 1997, as Sizzler USA Restaurants, Inc.  It later changed its name to Sizzler USA Franchise, Inc.  This entity holds all of the franchise agreements of the Business.  SUSAFR also is the registered owner of Sizzler trademarks and other intellectual property.

g.  _Sizzler USA Real Property, Inc._  SUSARP is a Delaware corporation incorporated on May 6, 1997.  This entity is the party to all current unexpired, nonresidential real property leases of the Business except for Store 1233 in Santa Clarita, California.

h.  _Sizzler USA Restaurants, Inc._  SUSAR is a Delaware corporation incorporated on August 13, 1985, as Sizzler Restaurants International, Inc.  This is the operating entity for all company-owned restaurants.  SUSAR also operates a support center and test kitchen facility in California for the company-owned restaurants and operations related to the other Debtors' franchise businesses.  It employs all of the Debtors' employees, including support center staff (collectively, the "Employees").  In 1997, it changed its name to Sizzler USA Restaurants, Inc.

i.  _Carson Sizz, LLC ("Carson Sizz")._

i.  _Ownership._  Carson Sizz, LLC, was specially formed to facilitate a "partnership" franchise operating model for one store in Carson, California.  Initially, the owners of this company were Kevin W. Perkins, James A. Collins and a former Sizzler CEO, Kerry Kramp, in equal shares.  As part of the restructure of the company following the conclusion of Kerry Kramp's employment in May 2019, Kevin Perkins purchased Mr. Kramp's 1/3⅓ share in the company.  On October 3, 2019, Kevin Perkins transferred three units of Carson Sizz to the Debtors' current President and Chief Strategy Officer, Christopher Perkins.  Carson Sizz is _not_ a Debtor.

Case 20-30748    Doc# 117    Filed 01/02/21    Entered 01/02/21 22:42:47    Page 17 of 39
Official Form 425A Plan of Reorganization for Small Business Under Chapter 11    page 5

ii. <u>Franchise Agreement.</u>  SUSAFR has a franchise agreement with Carson Sizz. SUSAFR charges Carson Sizz a 2% management fee (in addition to standard royalties) in consideration for handling all operations of the store.

iii. <u>Employees.</u>  Carson Sizz employs 26 employees, ten of whom work full time. SUSAR pays for certain employee benefits, including medical and dental benefits, for these individuals.

iv. <u>~~Loan.~~</u>  Carson Sizz <u>Loan.  SUSAA</u> is the borrower under a revolving credit facility with ~~SUSAA~~<u>Carson Sizz</u>.  Currently, <u>SUSAA owes to</u> Carson Sizz ~~owes to SUSAA~~ $200,000.

4.  <u>The Debtors' Ownership</u>.  The current shareholders of SUSAA are:

a.  Perkins US Financial Services Pty Ltd ATF and KPUS Trust, which, together, own 1,229,722 shares of Common Stock (75.46%); and

b.  James A. & Carol Collins as trustees of the Collins Family trust, which owns 400,000 shares of Common Stock (24.54%).

5.  <u>The Debtors' Outstanding Loan Obligations</u>.  The Debtors' outstanding loan obligations are as follows:

| <u>Borrower</u> | <u>Payee</u> | <u>Principal Amount Owed</u> | <u>Maturity</u> | <u>Main Payment Terms</u> |
|---|---|---|---|---|
| Sizzler USA Acquisition, Inc. | James A. Collins, as trustee for Collins Family Trust | $300,000 | On demand | Interest only – 1% (quarterly payments) |
| Sizzler USA Acquisition, Inc. | James A. Collins, as trustee for Collins Family Trust | $800,000 | On demand | Interest only – 1% (quarterly payments) |
| Sizzler USA Acquisition, Inc. | Perkins US Investment Corporation Pty Ltd | $600,000 | April 1, 2020 | Interest only – 6% (quarterly payments) *Unpaid interest forgiven* |
| Sizzler USA Acquisition, Inc. | Perkins US Investment Corporation Pty Ltd | $547,500 | April 1, 2020 | Interest only – 6% (quarterly payments) *Unpaid interest forgiven* |
| Sizzler USA Acquisition, Inc. | Perkins US Investment Corporation Pty Ltd | $200,000 | April 1, 2020 | Interest only – 6% (quarterly payments) |

|  |  |  |  | *Unpaid interest forgiven* |
|---|---|---|---|---|
| **Borrower** | **Payee** | **Principal Amount Owed** | **Maturity** | **Main Payment Terms** |
| Sizzler USA Acquisition, Inc. | Kevin Perkins and Laura Perkins, as trustees for The K&L Perkins Super Fund | $385,000 | On Demand |  |
| Sizzler USA Acquisition, Inc. | Carson Sizz, LLC | $200,000 | 14 days after written notice of termination |  |

| ~~**Borrower**~~ | ~~**Payee**~~ | ~~**Principal Amount Owed**~~ | ~~**Maturity**~~ | ~~**Main Payment Terms**~~ |
|---|---|---|---|---|
| Sizzler USA Acquisition, Inc. | Kevin Perkins, an individual | $52,000 | On ~~demand~~Demand |  |
| All Debtors | Kevin Perkins, an individual* | $200,000 | December 31, 2020 or 14 days after entry of Bankruptcy Court order authorizing repayment |  |
| Sizzler USA Restaurants, Inc. | JPMorgan Chase Bank, N.A. | $2,100,000** | 2 years, provided that payments will be deferred while SUSAR applies for loan forgiveness | 24 monthly payments at 1% interest, or monthly payments of $164,677.11, commencing after denial of forgiveness |
|  | **Total** | $~~3,284,500.00~~5,384,500.00 |  |  |

*This is the only secured loan obligation of any of the Debtors.

**This is the outstanding principal amount for which the Debtors forecast they would be responsible under the worst case scenario should they not receive forgiveness of their original PPP Loan of $3,911,377 in full. The Debtors believe that they have met all requirements for total forgiveness of the PPP Loan, and as a result, the $2,100,000 listed as outstanding principal owed is contingent.

6.   PPP Loan. On April 13, 2020, SUSAR obtained a loan of $3,911,377 from JPMorgan Chase Bank, N.A. ("Chase"), with whom it regularly banks, through the Payment Protection Program (the "PPP"), which was part of the Coronavirus Aid, Relief, and Economic Security Act.  Throughout the first 16 weeks of the 24-week loan period, the Debtors spent approximately $2,865,925 of its PPP Loan proceeds on eligible liabilities, 94% of which ($2,696,077.17) the Debtors spent on payroll-related expenses.  Prior to the Petition Date, the Debtors spent the balance of the PPP Loan proceeds.  The Debtors believe they have complied with all PPP requirements and expect that SUSAR will obtain full forgiveness of the PPP Loan.  The Debtors are currently working with Chase to process their application for forgiveness of the PPP Loan.  The Debtors believe that under a "worst case scenario" as related to the disposition of the PPP Loan, there would be a determination that $2.1 million of the PPP Loan is ineligible for forgiveness and due and owing to Chase.  The PPP Loan therefore is a contingent liability, which is reflected in the Scenario B liquidation analysis treating Chase as a non-priority unsecured claimant, and which Scenario B would be implemented only if the PPP Loan is not fully forgiven.

67. Events Precipitating the Debtors' Chapter 11 Petitions.  The events precipitating the Debtors' cases are now a familiar story.  The global coronavirus pandemic and resulting orders issued by state, county, and city officials prohibiting restaurants from providing customers with dine-in services has decimated the Debtors' retail dining operations.  Due to the pandemic, SUSAR has had to cease operating its company-owned restaurant locations at least twice.  Thereafter, once authorized to resume retail dining services, the Debtors have tried to adapt and provide dining services that range from take-out to outdoor dining to third-party delivery services.  However, as Sizzler's menu, and in particular its famed self-service Salad Bar (from which Sizzler restaurants derive upwards of 40% of their revenue), is neither targeted toward nor as adaptable to carry-out and delivery as other restaurants' menus, both company- and franchisee-owned restaurant locations have been struggling.

Indeed, the COVID-19 crisis has blighted the restaurant sector of the economy, especially restaurants like Sizzler that rely on serving guests primarily indoors.  For the past six months, the Debtors have implemented drastic cost-cutting measures while making every effort to maximize sales as permitted by state and local authorities.  Nevertheless, these unprecedented times and the resulting economic damage to the American restaurant and hospitality industry have not spared the Debtors.

In addition to the current challenges to the Debtors' traditional fare, however, many of the company-owned restaurant locations were struggling pre-pandemic.  A variety of reasons, including recent increases to labor costs and local taxes have made it difficult for the Debtors to maintain profitability.  Unable to operate at full capacity and subject to uncertainty for the foreseeable future, the Debtors have been unable to maintain cash flow sufficient to meet all of their financial obligations.  Ultimately, the dramatic decline in revenues forced the Debtors to seek relief under subchapter V of chapter 11 of the Bankruptcy Code.  The Debtors must now reorganize their liabilities and obtain an infusion of new operating funds, either in the form of loans, equity or both.  The liabilities to restructure under this Plan include business loans, real property leases, certain obligations to former executive employees, and trade debt.  The Debtors also intend to close some company-owned restaurants and already have rejected or intend to reject through this Plan real property leases related to the company-owned restaurants.

7. <u>The Debtors' Franchise Business.</u>  SUSAFR, as franchisor, is party to certain franchise, license, and sublicense agreements (collectively, the "Franchise Agreements") with 34 franchisees and sublicensees, which Franchise Agreements govern the operation of 98 franchisee-owned and operated restaurants.  Pursuant to the Franchise Agreements, the franchisees collectively owe to SUSAFR approximately $617,716 for outstanding royalties and Production & Marketing Fund fees.

The Debtors do not have any monetary obligations to any franchisee.  Pursuant to the Plan, the Debtors will assume all of the Franchise Agreements and continue performing all of their obligations thereunder.  Thus, no franchisee, licensee, or sublicensee is a creditor of SUSAFR or any other Debtor.  Accordingly, this Plan neither classifies nor provides for the treatment of franchisees, licensees, or sublicensees, except for the assumption of the Franchise Agreements. The franchisees are unimpaired under the Plan.

## B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  As noted above, the Debtors have prepared two liquidation analyses to account for (1) the scenario in which the PPP Loan is forgiven in full and (2) what the Debtors believe would be the "worst case scenario," wherein $2.1 million of the PPP Loan is not forgiven.  The Scenario A liquidation analysis is attached to the Plan as Exhibit  A-1  and the Scenario B liquidation analysis is attached to the Plan as Exhibit A-2.

## C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information applicable under both Scenario A and Scenario B as Exhibit  B.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $337,000.

The final Plan payment is expected to be paid on **December 31, 2025**.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## Article 1: Summary

This Plan under chapter 11 of the Bankruptcy Code proposes to pay creditors of each Debtor from the second tranche of the DIP Loan and cash flow and future income from operations**.**

This Plan provides for:

| 21 |
|---|

classesclass of priority claims; classes of secured claims;

SMRH:4816-9870-4085.2                                    -9-

Case: 20-30748    Doc# 147    Filed: 01/02/21    Entered: 01/02/21 22:42:47    Page 21 of 39
Official Form 425A Plan of Reorganization for Small Business Under Chapter 11    page 9

| | |
|---|---|
| 3 | ~~classes of priority claims;~~ classes of secured claims; |
| ~~9~~10 | classes of non-priority unsecured clams; and |
| 2 | ~~clams; and~~ classes of equity security holders. |

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately **seventeen cents** on the dollar for Scenario A, and approximately **eight cents** on the dollar for Scenario B. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

## Article 2: Classification of Claims and Interests

| 2.01 | **Class 1** | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)). |
|---|---|---|
| | | ~~(a)~~ Accrued but unliquidated employee wages, salaries, commissions, and benefits $250,930.74 |
| | | ~~(b) Priority tax claims~~ ~~$41,625.62~~ |
| 2.02 | **Class 2** | The secured claims of the following lenders, to the extent allowed as a secured claim under § 506 of the Code. |
| | | (a) Kevin Perkins up to $2,000,000 |
| | | (b) U.S. Bank $119,104.17 |
| | | (c) Royal Bank America Leasing, L.P., fka Harbour Capital $14,891.42 |
| 2.03 | **Class 3** | All non-priority unsecured claims allowed under § 502 of the Code. |
| | | (a) Essential trade vendors (Sysco Corporation, P & R Paper Supply Co., Inc., and Worldwide Produce) $1,119,798.92 |
| | | (b) General Trade Creditors $310,318.79 |
| | | (c) Counterparties to Assumed Contracts $531,986.81 |
| | | (d) Rejection Damages Claims $1,208,040.00 |
| | | (e) Certain Beneficiaries under the Senior Executive Retirement Plan (the "SERP") $199,040.76 |
| | | (f) James A. Collins in his individual capacity as a Beneficiary under the Senior Executive Retirement Plan (the "SERP") $50,787.10 |
| | | (g) James A. and Carol L. Collins, as trustees for the Collins Family Trust $1,108,000 |

SMRH:4816-9870-4085.2

-10-

Case: 20-30748    Doc# 147    Filed: 01/02/21    Entered: 01/02/21 22:42:47    Page 22 of 39
Official Form 425A Plan of Reorganization for Small Business Under Chapter 11    page 10

| | | |
|---|---|---|
| (h) Unsecured Claims of Insiders | | $2,899,500.00 |
| (i) Unsecured Claim of Carson Sizz LLC | | $~~200,000~~200,000.00 |
| (j) Unsecured Claim of JPMorgan Chase Bank, N.A.* | | $2,100,000.00 |

| 2.04 | **Class 4** | Equity interests of the Debtor SUSAA | | |
|---|---|---|---|---|
| | | | Total Shares | Total Percentage Interest |
| | | (a) Perkins US Financial Services Pty Ltd as trustee for the KPUS Trust | 1,229,722 | 75.46% |
| | | (b) James A. & Carol Collins, as trustees of the Collins Family Trust | 400,000 | 24.54% |

*Class 3(j)'s claim of $2,100,000 is contingent upon whether the PPP Loan is forgiven in full.

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
|---|---|---|
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| 3.03 | **Priority tax claims** | Each holder of a priority tax claim will be paid on account of their allowed claim regular installment payments consistent with section 1129(a)(9)(C). |
| 3.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of this Plan have been paid or will be paid on the Effective Date. |
| 3.05 | **Prospective quarterly fees** | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. |

## Article 4: Treatment of Claims and Interests Under the Plan

**4.01   Claims and interests shall be treated as follows under this Plan:**

Official Form 425A Plan of Reorganization for Small Business Under Chapter 11

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1**~~(a)~~ **- Priority Claims excluding those in Article 3** | Unimpaired | Class 1~~(a)~~ is unimpaired by this Plan, and each holder of an allowed Class 1~~(a)~~ Priority Claim will retain ~~their~~its interests in the unliquidated value of ~~their~~its claims as set forth in the Debtors' standard employment practices on the date on which such claim is allowed by a final non-appealable order.<br><br>Holders of allowed Class 1~~(a)~~ Priority Claims are unimpaired and deemed to accept the Plan. |
| ~~**Class 1(b) - Priority Claims excluding those in Article 3**~~ | ~~Unimpaired~~ | ~~Class 1(b) is unimpaired by this Plan, and each holder of an allowed Class 1(b) Priority Claim will be paid in full, in cash, upon the later of the Effective Date of this Plan, or the date on which such claim is allowed by a final non-appealable order.~~<br><br>~~Holders of allowed Class 1(b) Priority Claims are unimpaired and deemed to accept the Plan.~~ |
| Class 2(a) – **Secured Claim of Kevin Perkins.** | Unimpaired | Class 2(a) is unimpaired by this Plan, and each holder of an allowed Class 2(a) Secured Claim will retain its interests under the relevant agreements, including security agreements, by and between the Debtors and Kevin Perkins.<br><br>Holders of allowed Class 2(a) Secured Claims are unimpaired and deemed to accept the Plan. |
| Class 2(b) – **Secured Claim of U.S. Bank.** | Unimpaired | Class 2(b) is unimpaired by this Plan, and each holder of an allowed Class 2(b) Secured Claim will retain its interests under the relevant agreements, including security agreements, by and between the Debtors and U.S. Bank.<br><br>Holders of allowed Class 2(b) Secured Claims are unimpaired and deemed to accept the Plan. |
| Class 2(c) – **Secured Claim of Royal Bank America Leasing, L.P.** | Unimpaired | Class 2(c) is unimpaired by this Plan, and each holder of an allowed Class 2(c) Secured Claim will retain its interests under the relevant agreements, including security agreements, by and between the Debtors and Royal Bank America Leasing, L.P.<br><br>Holders of allowed Class 2(c) Secured Claims are unimpaired and deemed to accept the Plan. |
| Class 3(a) – **Non-Priority Unsecured** | Impaired | Class 3(a) is impaired by this Plan. Each holder of an allowed Class 3(a) Non-Priority Unsecured Essential Trade Claim will retain its claim as holders of allowed Class 3(a) Non-Priority Unsecured Essential Trade |

| Class | Impairment | Treatment |
| --- | --- | --- |
| **Essential Trade Creditors** | | Claims will receive payment of their claims in full over the term of the Plan or as agreed.<br><br>Holders of allowed Class 3(a) Non-Priority Unsecured Essential Trade Claims are impaired and entitled to vote on the Plan. |
| Class 3(b) – **Non-Priority Unsecured Trade Creditors** | Unimpaired | Class 3(b) is unimpaired by this Plan, and each holder of an allowed Class 3(b) Non-Priority Unsecured Trade Claim will be paid in full, in cash, upon the later of the Effective Date of this Plan, or the date on which such claim is allowed by a final non-appealable order.<br><br>Holders of allowed Class 3(b) Non-Priority Unsecured Trade Claims are unimpaired and deemed to accept the Plan. |
| Class 3(c) – **Non-Priority Unsecured Creditors that are counterparties to executory contracts to be assumed by this Plan or in the Debtors' bankruptcy cases** | Unimpaired | Class 3(c) is unimpaired by this Plan, and each holder of an allowed Class 3(c) Non-Priority Unsecured Cure Claim will be paid its agreed upon cure claim, as set forth on the schedule attached hereto as **Exhibit C,** in full, in cash, upon the later of the Effective Date of this Plan, or the date on which such claim is allowed by a final non-appealable order. Notwithstanding the foregoing, the Debtors reserve their rights to (1) modify Exhibit C and remove contracts until the Effective Date of the Plan and (2) file a separate motion to assume or reject certain unexpired executory contracts until the Effective Date of the Plan. To the extent that the Debtors modify Exhibit C, they will file an appropriate notice of modification prior to the Effective Date.<br><br>Holders of allowed Class 3(c) Non-Priority Unsecured Cure Claims are unimpaired and deemed to accept the Plan. |
| Class 3(d) – **Non-Priority Unsecured Creditors that are counterparties to executory contracts to be rejected by this Plan or in the Debtors' bankruptcy cases** | Impaired | Class 3(d) is impaired by this Plan, and each holder of an allowed Class 3(d) Non-Priority Unsecured Rejection Damages Claim will receive a pro rata distribution of the Debtors' Projected Disposable Income over the term of the Plan.<br><br>Holders of allowed Class 3(d) Non-Priority Unsecured Rejection Damages Claims are impaired and entitled to vote on the Plan. |

| Class | Impairment | Treatment |
|---|---|---|
| Class 3(e) – **Non-Priority Unsecured Creditors who are participants in the SERP, other than James A. Collins.** | Unimpaired | Class 3(e) is unimpaired by this Plan, and each holder of an allowed Class 3(e) Non-Priority Unsecured SERP Claim will retain his or her interest in the SERP. WRC will assume the SERP and resume their payment obligations under the SERP beginning on or before June 17, 2021, in accordance with the terms of the SERP.<br><br>Holders of allowed Class 3(e) Non-Priority Unsecured SERP Claims are unimpaired and deemed to accept the Plan. |
| Class 3(f) – **Non-Priority Unsecured Creditor and SERP participant James A. Collins.** | Impaired | Class 3(f) is impaired by this Plan, and each holder of an allowed Class 3(f) Non-Priority Unsecured Claim has agreed to forego his claims under the SERP.<br><br>Holders of allowed Class 3(f) Non-Priority Unsecured SERP Claims are impaired and entitled to vote on the Plan. |
| Class 3(g) – **Non-Priority Unsecured Lender James A. and Carol L. Collins as trustees for The Collins Family Trust** | Impaired | Class 3(g) is impaired by this Plan, and each holder of an allowed Class 3(g) Non-Priority Unsecured Loan Claim has agreed to forgive its respective loan to the Debtors.<br><br>Holders of allowed Class 3(g) Non-Priority Unsecured Loan Claims are impaired and entitled to vote on the Plan. |
| Class 3(h) – **Non-Priority Unsecured Lenders Perkins US Investment Corporation Pty Ltd, Kevin Perkins, in his individual capacity, Kevin Perkins and Laura Perkins, as trustees for The K&L Perkins Super Fund** | Impaired | Class 3(h) is impaired by this Plan. On or before the Effective Date of the Plan, each holder of a Class 3(h) Non-Priority Unsecured Loan Claim against the Debtors pursuant to certain promissory notes will have forgiven all or some of the loans made to the Debtors or converted all or some of the debt into equity interests in the Reorganized Debtors.<br><br>Holders of allowed Class 3(h) Non-Priority Unsecured Loan Claims are impaired and entitled to vote on the Plan. |
| Class 3(i) – **Non-Priority Unsecured Lender Carson Sizz LLC** | Unimpaired | Class 3(i) is unimpaired by this Plan, and each holder of a Class 3(i) Non-Priority Unsecured Carson Sizz Claim will retain its interest in that certain Revolving Loan Agreement, as amended by that Amendment to Revolving Loan Agreement dated March 24, 2020 (as amended, the "Carson Sizz Agreement") as the Debtors intend to assume the Carson Sizz Agreement by this Plan. |

Official Form 425A Plan of Reorganization for Small Business Under Chapter 11 page

| Class | Impairment | Treatment |
|---|---|---|
| | | Holders of allowed Class 3(i) Non-Priority Unsecured Carson Sizz Claims are unimpaired and deemed to accept the Plan. |
| Class 3(j) – **Non-priority Unsecured Lender JPMorgan Chase Bank, N.A.** | Impaired | Class 3(j) is impaired by the Plan.  The Debtors anticipate that the Small Business Administration will forgive SUSAR's PPP Loan in full.  The Debtors forecast that under the "worst case scenario," $2.1 million of the PPP Loan will not be forgiven, in which case they will be required to implement Scenario B and the holders of Class 3(j) claims will only receive a pro-rata return on their claims.  The claims of the holders of Class 3(j) are therefore contingent.

Holders of allowed Class 3(j) Non-Priority Unsecured Loan Claims are impaired and entitled to vote on the Plan. |
| Class 4(a) – **Equity interest of Perkins US Financial Services Pty Ltd as trustee for the KPUS Trust** | Impaired | Class 4(a) is impaired by the Plan.  On the Effective Date of the Plan, all holders of Class 4(a) Interests will have cancelled all or some of its equity interest in SUSAA or converted all or some of its equity interest into equity interests in the Reorganized Debtors.

Holders of allowed Class 4(a) Interests are impaired and entitled to vote on the Plan. |
| Class 4(b) **Equity interests of James A. & Carol L. Collins, as trustees of The Collins Family Trust** | Impaired | Class 4(b) is impaired.  On the Effective Date of the Plan, the Interests of Class 4(b) equity interest holders will be cancelled.  Holders of Class 4(b) interests have agreed to such treatment under the Plan.

Holders of allowed Class 4(a) Interests are impaired and entitled to vote on the Plan. |

SMRH:4816-9870-4085.2

## Article 5: Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed claim** | A *disputed claim* is a claim that has not been allowed or disallowed by a final non- appealable order, and as to which either:<br><br>(i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or<br><br>(ii) no proof of claim has been filed, and the Debtors has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |
| 5.03 | **Settlement of disputed claims** | The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| | | |
|---|---|---|
| 6.01 | **Assumed executory contracts and unexpired leases** | (a) Certain of the Debtors will assume, and if applicable assign, the executory contracts and unexpired leases set forth on Exhibit C as of the Effective Date of the Plan, provided, however, that the Debtors reserve their rights to (i) modify Exhibit C and remove contracts until the Effective Date of the Plan and (ii) file a separate motion to assume or reject certain unexpired executory contracts until the Effective Date of the Plan. To the extent that the Debtors modify Exhibit C, they will file an appropriate notice of modification with the Court prior to the Effective Date of the Plan.<br><br>(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtors will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.<br><br>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than the 45th day after the entry of the order confirming this Plan. |

## Article 7: Means for Implementation of the Plan

Funding for the Plan will be provided by Kevin Perkins (the "DIP Lender"). Prior to the Petition Date the DIP Lender made a loan (the "Pre-Petition Loan") to the Debtors. The Pre-Petition Loan Documents and all liabilities and obligations thereunder are secured by all personal property assets of the Debtors under the terms of the Pre-Petition Loan

Documents (the "Pre-Petition Loan Collateral"). The foregoing security interest has been perfected by the filing of a financial statement with the Delaware Department of State, Initial Filing No. 2020 6183000 (the "Financing Statement").

The DIP Lender has agreed to (1) provide post-petition financing in the amount of up to $2,000,000 under sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code (collectively, the "Debtor in Possession Credit Facility"); and (2) permit use of the DIP Lenders' cash collateral through confirmation of the Debtors' Plan, upon certain terms and conditions, including the provision of adequate protection under section 361 of the Bankruptcy Code subject to final Court approval.

If an Event of Default (as such term is defined in that *Final Order Approving Stipulation Regarding Use of Cash Collateral, Provision of Adequate Protection and Debtor in Possession Financing* entered on November 24, 2020 as Docket No. 85) under the Debtor in Possession Credit Facility occurs that the DIP Lender chooses to enforce (and only if such Event of Default is chosen to be enforced by the DIP Lender), and if the Debtors do not convert their cases to ones under chapter 7 of the Bankruptcy Code, then the Debtors shall consult with Mark Sharf, the duly appointed Subchapter V Trustee in the Debtors' bankruptcy cases, regarding the retention of an investment banker or business broker (the "Investment Banker") to assist the Debtors with the marketing and sale of the within estates' assets (including substantially all of their assets), and if the Trustee consents to the Debtor's selection of such Investment Banker the Debtor shall file an application with this Court for authority to employ such Investment Banker. Subject to Court approval of the employment of the proposed Investment Banker, the Debtors shall market their assets for sale for a period of six months (the "Marketing Period"), during which time the Automatic Stay shall prohibit the DIP Lender from enforcing its rights.

   a. During the Marketing Period, the Debtors shall ensure that the proposed sale process results in a fair, arms'-length transaction, including by providing to the Subchapter V Trustee full and unfettered access to the Investment Banker and all communications between the Debtors and the Investment Banker.

   b. During the Marketing Period and so long as the cases are in chapter 11, the Debtors will continue to operate their business to preserve and maximize the going concern value of the Debtors' estates.

   c. In the event that the Subchapter V Trustee determines that the sale process is not proceeding fairly to result in an arms'-length transaction to be entered into in good faith, the Subchapter V Trustee may seek relief from the Court and raise any concerns on 7 days' notice to the Debtors, the DIP Lender, and all parties on the Court's NEF service list, as well as the United States Trustee.

In the event that the Debtors' bankruptcy cases are converted to chapter 7, either before or after the occurrence of an Event of Default that is enforced by the DIP Lender (and only if the Event of Default is enforced by the DIP Lender), or after the commencement of the Marketing Period, the chapter 7 trustee shall have an opportunity to sell the Debtors' assets for a period of no less than six months (the "Trustee Sale Period") during which time the Automatic Stay shall continue to apply to the DIP Lender. Notwithstanding the foregoing, the chapter 7 trustee shall not be obligated to operate the Debtors' business.

If an agreement for the sale of the Debtors' assets cannot be secured during the Marketing Period or the Trustee Sale Period as applicable, the DIP Lender shall be entitled to seek relief from stay to enforce its rights on 7 days' notice to the Debtors, the Subchapter V Trustee, and all parties on the Court's NEF service list, as well as the United States Trustee.

Upon confirmation of the Plan and the occurrence of the Effective Date, the Debtors' current management will continue in their day-to-day management of the Debtors and also administer the Plan., including, but not limited to, the filing of any objections to proofs of claim filed and asserted against the Debtors. Concurrent with emergence from chapter 11, certain of the Debtors **may** transfer substantially all of their assets to their co-Debtor affiliates, liquidate, and dissolve to consolidate the Debtors' collective assets and restructure their corporate structure. From the Effective Date, the DIP Lender, or an entity affiliated with the DIP Lender, will own 100% of the shares of the new parent entity of the Debtors. Prior to the confirmation hearing on this PlanEffective Date, or as soon thereafter as is practicable, the Debtors will file, as a supplement to this Plan, Amended Organizational Documents as described in greater detail inwith comply with Section 8.07 hereof and amend their respective organizational documents.

The senior executives of the Debtors will remain in place to manage the business of the Debtors, pursuant to an incentive scheme that will reduce their annual salary but provide the opportunity for increased compensation based upon satisfaction of certain EBITDA milestones. The senior executives will work under the supervision of a newly constituted board, chaired by Kevin Perkins, the DIP Lender. Mr. Kevin Perkins is a veteran of the restaurant industry and is extremely experienced. Mr. Kevin Perkins will be joined on the board by Christopher Perkins, the Debtors' President and Chief Services Officer, and Timothy Perkins, the Debtors' Chief Strategy Officer.

The Debtors are confident that the Debtor in Possession Credit Facility will provide sufficient cash collateral to ensure the Debtors can pay their debts as and when they become due and payable, until such time as the Debtors' business generates enough disposable income to do so without external assistance.

Official Form 425A Plan of Reorganization for Small Business Under Chapter 11

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:  N/A |
| 8.02 | **Effective date** | The Effective Date of this Plan shall be the first business day following the date that is 14 days after the entry of the confirmation order.  If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling effects** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Delaware govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.07 | **Corporate governance** | The Debtors shall amend their respective organizational documents ~~(the "Amended Organizational Documents")~~, which shall amend or succeed the certificates or articles of incorporation, by-laws and other organizational documents of the reorganized Debtors to satisfy the provisions of the Plan and the Bankruptcy Code, and will (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code; (ii) authorize the issuance of New Common Stock in an amount not less than the amount necessary to permit the distributions thereof required or contemplated by the Plan; and (iii) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate the Plan and the transactions contemplated herein.  After the Effective Date, the Reorganized Debtors may amend and restate their certificates or articles of incorporation and by-laws, and other applicable organizational documents, as permitted by applicable law. |
| 8.08 | **Retention of Jurisdiction** | Following the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Case, this Plan and the Confirmation Order |

Official Form 425A Plan of Reorganization for Small Business Under Chapter 11

pursuant to, and for the purposes of, §§ 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a) to determine the allowance or classification of Claims and to hear and determine any objections thereto;

(b) to determine any and all motions, adversary proceedings, applications, contested matters and other litigated matters under the Bankruptcy Code or arising in or related to the Chapter 11 Case that may be pending in the Bankruptcy Court on, or initiated after, the Effective Date;

(c) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(d) to issue such orders in aid of the execution, implementation and consummation of this Plan to the extent authorized by § 1142 of the Bankruptcy Code or otherwise;

(e) to construe and take any action to enforce this Plan;

(f) to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g) to modify this Plan pursuant to § 1127 of the Bankruptcy Code, or to remedy any apparent non-material defect or omission in this Plan, or to reconcile any non-material inconsistency in this Plan so as to carry out its intent and purposes;

(h) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under §§ 328(a), 330, 331, 333, 503(b) or 1103 of the Bankruptcy Code;

(i) to determine any requests for payment of Priority Tax Claims, Priority Non-Tax Claims or Administrative Expense Claims;

(j) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

(k) to consider and act on the compromise and settlement or payment of any Claim against the Debtors, the Reorganized Debtors or their Estates;

(l) to recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(m) to hear and determine Causes of Action brought by the Reorganized Debtors; provided, however, that nothing in the retention of jurisdiction under this clause (m) shall be construed as

a determination that the Bankruptcy Court has or does not have jurisdiction to hear and determine any Causes of Action;

(n) to determine all questions and disputes regarding title and/or ownership to the assets of the Debtors, the Reorganized Debtors or the Estate;

(o) to issue injunctions, enter and implement other orders or to take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(p) to remedy any breach or default occurring under this Plan;

(q) to resolve and finally determine all disputes that may relate to, impact on or arise in connection with this Plan;

(r) to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(s) to hear any other matter consistent with the provisions of the Bankruptcy Code; and

(t) to enter a final decree closing the Chapter 11 Case.

## Article 9: Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i)     imposed by this Plan; or
(ii)    to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(iii)   on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192; or
(iv)    excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**Article 10:: Other Provisions**

          N/A

Respectfully submitted

| | |
|---|---|
| _/s/ Christopher Perkins_ | Christopher Perkins |
| Signature of the Plan Proponent | Printed Name |

| | |
|---|---|
| _/s/ Ori Katz_ | Ori Katz |
| Signature of the Attorney for the Plan Proponent | Printed Name |

| Summary report: | |
| --- | --- |
| **Summary report:** | |
| **Litera® Change-Pro for Word 10.10.0.103 Document comparison done on 1/2/2021 9:56:00 PM** | |
| **Style name:** SMRH Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** nd://4816-1500-5902/10/Form B425a - Form SBRA Ch. 11 Plan.docx | |
| **Modified DMS:** nd://4816-9870-4085/2/Second Modified Plan 1-2-2021 Form B425a - Form SBRA Ch. 11 Plan.docx | |
| **Changes:** | |
| Add | 37 |
| Delete | 36 |
| Move From | 1 |
| Move To | 1 |
| Table Insert | 8 |
| Table Delete | 4 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 87 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit B**

| Store No | Franchisee | Store Address | Store City | Store State | Store Zip | Status | Take out 3rd Party | Dine in | Outdoor Dining |
|---|---|---|---|---|---|---|---|---|---|
| 43 | Bengal Tigers International of Orange, Inc | 584 N. Tustin Ave | Orange | CA | 92867 | Closed | - | - | - |
| 69 | BMW Management, Inc. | 900 Real Road | Bakersfield | CA | 93309 | Closed | - | - | - |
| 80 | Sizzling Platter, LLC | 2111 S  1300 Street East (Sugarhouse) | Salt Lake City | UT | 84106 | Closed | - | - | - |
| 91 | K.N.S.P. Corporation | 1501 Trancas St | Napa | CA | 94558 | Closed | - | - | - |
| 250 | Double S Foods, L.L.C. | 3390 Broadway | North Bend | OR | 97459 | Closed | - | - | - |
| 305 | Double S Foods, L.L.C. | 1151 Lancaster Drive NE | Salem | OR | 97301 | Closed | - | - | - |
| 420 | Joe's LLC | 16615 Southcenter Parkway | Tukwila | WA | 98188 | Closed | - | - | - |
| 454 | Double S Foods, L.L.C. | 700 Biddle Road | Medford | OR | 97504 | Closed | - | - | - |
| 585 | Prestige Foods, Inc. | 15900 Monterey Road | Morgan Hill | CA | 95037 | Closed | - | - | - |
| 927 | Double S Foods, L.L.C. | 2506 South 6th Street | Klamath Falls | OR | 97601 | Closed | - | - | - |
| 1060 | Plaza International Restaurant Inc. | 7602 Irlo Bronson Highway | Kissimmee | FL | 34747 | Closed | - | - | - |
| 1146 | Multi Systems Restaurants Inc. | Calle Gautier Benitez & DeGetau Avenue | Caguas | PR | 725 | Closed | - | - | - |
| 1205 | Multi Systems Restaurants Inc. | Carretera #2 Km 50.0 - Local 36 - Bo Bajura Afuera | Manati | PR | 674 | Closed | - | - | - |
| 1206 | Haeng Cho Swartz | 201 Davis Street | San Leandro | CA | 94577 | Closed | - | - | - |
| 1209 | Multi Systems Restaurants Inc. | Carretera #1 Km 56.2 - Bo. Montellano | Cayey | PR | 736 | Closed | - | - | - |
| 1231 | Mc Daniel Restaurant Group, Inc. | 1050 S Country Club Dr | Mesa | AZ | 85210 | Closed | - | - | - |
| 1239 | Best Salad Bar, LLC | 1785 Challenge Way | Sacramento | CA | 95815 | Closed | - | - | - |
| 96 | Double S Foods, L.L.C. | 1010 Postal Way  AKA Gateway | Springfield | OR | 97477 | Temp Closed | - | - | - |
| 124 | Alamo Trust | 1908 W. Beverly Blvd. | Montebello | CA | 90640 | Temp Closed | - | - | - |
| 171 | Imad Boukai | 1101 W  Hobsonway | Blythe | CA | 92225 | Temp Closed | - | - | - |
| 246 | Double S Foods, L.L.C. | 2148 Santiam Highway | Albany | OR | 97322 | Temp Closed | - | - | - |
| 374 | H and R 111 Foods, Inc | 936 Ocean Beach Highway | Longview | WA | 98632 | Temp Closed | - | - | - |
| 431 | Sizzling Platter, LLC | 1240 South State | Orem | UT | 84057 | Temp Closed | - | - | - |
| 442 | El Centro Sizzler, Inc. | 707 North Imperial Avenue | El Centro | CA | 92243 | Temp Closed | - | - | - |
| 552 | Double S Foods, L.L.C. | 1871 N 7th Street | Grants Pass | OR | 97526 | Temp Closed | - | - | - |
| 576 | Five Reese, Inc. | 2121 W Caldwell | Visalia | CA | 93277 | Temp Closed | - | - | - |
| 670 | Sizzling Platter, LLC | 575 West 500 South | Bountiful | UT | 84010 | Temp Closed | - | - | - |
| 687 | Five Reese, Inc. | 402 N Eleventh Ave | Hanford | CA | 93230 | Temp Closed | - | - | - |
| 841 | Five Reese, Inc. | 3121 West Shaw | Fresno | CA | 93711 | Temp Closed | - | - | - |
| 879 | BMW Management, Inc. | 3805 Plaza Dr | Oceanside | CA | 92056 | Temp Closed | - | - | - |
| 1213 | BMW Management, Inc. | 4445 Imperial Avenue | San Diego | CA | 92113 | Temp Closed | - | - | - |
| 1228 | BMW Management, Inc. | 6009 Florin Rd | Sacramento | CA | 95823 | Temp Closed | - | - | - |
| 1236 | AAA Sizzle, Inc. | 3101 Walnut Ave | Fremont | CA | 94538 | Temp Closed | - | - | - |
| 316 | C Food Concepts, Inc | 24107 Hesperian Blvd | Hayward | CA | 94545 | Management Agreement | - | - | - |
| 574 | C Food Concepts, Inc | 2855 Augustine Drive | Santa Clara | CA | 95051 | Management Agreement | - | - | - |
| 657 | C Food Concepts, Inc | 13570 Lincoln Way | Auburn | CA | 95603 | Management Agreement | - | - | - |
| 691 | C Food Concepts, Inc | 5815 Madison Ave | Sacramento | CA | 95814 | Management Agreement | - | - | - |
| 882 | C Food Concepts, Inc | 1515 Fitzgerald Drive | Pinole | CA | 94564 | Management Agreement | - | - | - |
| 6345 | Carson Sizz, LLC | 20755 S Avalon Blvd | Carson | CA | 90746 | Management Agreement | - | - | - |
| 228 | Double S Foods, L.L.C. | 1156 N.W. Garden Valley Blvd. | Roseburg | OR | 97471 | Purchase Agreement | - | - | - |
| 53 | Paramin Corp. | 10315 Lakewood Blvd | Downey | CA | 90241 | Open | X | - | - |
| 83 | BMW Management, Inc. | 10153 Artesia Blvd | Bellflower | CA | 90706 | Open | X | - | - |
| 101 | VMC Enterprises, Inc. | 7902 Orangethorpe Avenue | Buena Park | CA | 90621 | Open | X | - | - |
| 142 | Sizzling Platter, LLC | 3429 S  Redwood Road | Salt Lake City | UT | 84119 | Open | X | X | - |
| 361 | BMW Management, Inc. | 1100 West Covina Parkway | West Covina | CA | 91790 | Open | X | - | - |
| 392 | A.R.R., Inc. | 10471 Los Alamitos Blvd | Los Alamitos | CA | 90720 | Open | X | - | - |

| Store No | Franchisee | Store Address | Store City | Store State | Store Zip | Status | Take out 3rd Party | Dine in | Outdoor Dining |
|---|---|---|---|---|---|---|---|---|---|
| 409 | BMW Management, Inc. | 23501 El Toro Road | Lake Forest | CA | 92630 | Open | X | - | - |
| 425 | AAA Sizzle, Inc. | 2910 Aborn Square | San Jose | CA | 95121 | Open | X | - | - |
| 427 | Joe's LLC | 10204 S. Tacoma Way | Tacoma | WA | 98499 | Open | - | X | - |
| 429 | Brax Management, LLC | 2105 S. Milton Road | Flagstaff | AZ | 86001 | Open | - | X | - |
| 434 | MFM Group, LLC | 501 Caldwell Blvd. | Nampa | ID | 83651 | Open | X | X | - |
| 439 | Sizzling Platter, LLC | 1165 North Main Street | Logan | UT | 84321 | Open | X | X | - |
| 466 | Franchise Investment Corporation | 1401 N Harbor Blvd. | Fullerton | CA | 92835 | Open | X | - | - |
| 517 | GO Family Restaurants, LLC | 9480 Warner Ave | Fountain Valley | CA | 92708 | Open | X | - | - |
| 522 | AAA Sizzle, Inc. | 1011 Veterans Blvd | Redwood City | CA | 94063 | Open | X | - | - |
| 541 | Sizzling Platter, LLC | 20 West 9000 South | Sandy | UT | 84070 | Open | X | X | - |
| 545 | BMW Management, Inc. | 2228 S Mountain Ave | Ontario | CA | 91762 | Open | X | - | - |
| 547 | Sizzling Platter, LLC | 1000 Pocatello Creek Road | Pocatello | ID | 83201 | Open | - | X | - |
| 549 | BMW Management, Inc. | 3416 Dale Road | Modesto | CA | 95356 | Open | X | - | - |
| 556 | KRN Enterprises, Inc. | 42137 Big Bear Blvd. | Big Bear Lake | CA | 92315 | Open | X | - | - |
| 588 | Sizzling Platter, LLC | 1171 North 400 West | Layton | UT | 84041 | Open | X | X | - |
| 596 | BMW Management, Inc. | 2650 Mt. Vernon Ave | Bakersfield | CA | 93306 | Open | X | - | - |
| 609 | Joe's LLC | 615 East Prater Way | Sparks | NV | 89431 | Open | - | X | - |
| 613 | TKM Restaurants, Inc. | 926 N. Highway 491 | Gallup | NM | 87301 | Open | X | - | - |
| 629 | AAA Sizzle, Inc. | 5025 Juniperro Serra Blvd | Colma | CA | 94015 | Open | X | - | - |
| 650 | Sizzling Platter, LLC | 719 Blue Lakes Blvd. North | Twin Falls | ID | 83301 | Open | - | X | - |
| 660 | Sizzling Platter, LLC | 2380 East 17th Street | Idaho Falls | ID | 83404 | Open | - | X | - |
| 671 | BMW Management, Inc. | 25035 Sunnymead Blvd | Moreno Valley | CA | 92553 | Open | X | - | - |
| 679 | BMW Management, Inc. | 1334 West Olive Avenue | Merced | CA | 95348 | Open | X | - | - |
| 682 | AIM Investments, Inc. | 1800 S Waterman Ave | San Bernardino | CA | 92408 | Open | X | - | - |
| 698 | BMW Management, Inc. | 1750 West Ramsey | Banning | CA | 92220 | Open | X | - | - |
| 786 | Dedco, Inc. | 199 North Main Street | Cedar City | UT | 84720 | Open | - | - | - |
| 836 | McDaniel Restaurant Group, Inc | 5060 W Indian School Road | Phoenix | AZ | 85031 | Open | X | X | - |
| 839 | Zaher Services, Inc | 16275 Harbor Blvd | Fountain Valley | CA | 92708 | Open | X | - | - |
| 856 | BMW Management, Inc. | 16988 East Main Street | Hesperia | CA | 92345 | Open | X | - | - |
| 860 | BMW Management, Inc. | 4762 W Florida Ave | Hemet | CA | 92545 | Open | X | - | - |
| 875 | Sizzling Platter, LLC | 1385 S. University Ave | Provo | UT | 84601 | Open | - | X | - |
| 970 | BMW Management, Inc. | 91 West Nuevo Road | Perris | CA | 92571 | Open | X | - | - |
| 989 | BMW Management, Inc. | 40489 Murrieta Hot Springs Road | Murrieta | CA | 92563 | Open | X | - | - |
| 1040 | BMW Management, Inc. | 872 Onstott Road | Yuba City | CA | 95991 | Open | X | - | - |
| 1055 | BMW Management, Inc. | 1862 East Hammer Land | Stockton | CA | 95210 | Open | X | - | - |
| 1092 | Multi Systems Restaurants Inc. | 525 F.D. Roosevelt Avenue - 3er Nivel, Local 311 | Hato Rey | PR | 918 | Open | - | X | - |
| 1147 | Multi Systems Restaurants Inc. | 2050 Ponce by Pass, Suite 207 | Ponce | PR | 731 | Open | - | X | - |
| 1148 | Multi Systems Restaurants Inc. | Local 25-28, Avenida Comerio & Rio Hondo | Bayamon | PR | 922 | Open | - | X | - |
| 1192 | Multi Systems Restaurants Inc. | Fernandez Juncos Avenue, Pda 10.5 | San Juan | PR | 901 | Open | - | X | - |
| 1194 | Multi Systems Restaurants Inc. | 65 de Infanteria Avenue Km 5.4 | Carolina | PR | 985 | Open | - | X | - |
| 1210 | Multi Systems Restaurants Inc. | Barrion Quebrada Fajardo - Fajardo, PR | Fajardo | PR | 738 | Open | - | X | - |
| 1215 | MFM Group, LLC | 3380 North Eagle Road | Meridian | ID | 83642 | Open | - | X | - |
| 1216 | Multi Systems Restaurants Inc. | Rd. #2 KM 158.4 | Mayaguez | PR | 680 | Open | - | X | - |
| 1219 | BMW Management, Inc. | 2901 Advantage Way | Sacramento | CA | 95834 | Open | X | - | - |
| 1222 | BMW Management, Inc. | 3101 Hotel Drive | Turlock | CA | 95380 | Open | X | - | - |
| 1229 | Sizzling Platter, LLC | 11610 S. Main District Dr. | South Jordan | UT | 84095 | Open | - | X | - |

| Store No | Franchisee | Store Address | Store City | Store State | Store Zip | Status | Take out 3rd Party | Dine in | Outdoor Dining |
|---|---|---|---|---|---|---|---|---|---|
| 1230 | Multi Systems Restaurants Inc. | Carretera #693 KM 1.5, Barrio Maguayo | Dorado | PR | 696 | Open | - | X | - |
| 1232 | Multi Systems Restaurants Inc. | Carretera 884, Km 53.7 | Cupey | PR | 926 | Open | - | X | - |
| 1234 | Multi Systems Restaurants Inc. | 17705 Carretera 2, Edificio # 4 | Aguadilla | PR | 603 | Open | - | X | - |
| 1237 | BMW Management, Inc. | 1890 Daniels St | Manteca | CA | 95337 | Open | X | - | - |
| 1238 | Aaksha One, Inc | 20557 Devonshire St | Chatsworth | CA | 91311 | Open | X | - | - |
| 1240 | Multi Systems Restaurants Inc. | | | | | Open | - | X | - |